JAMES M. MANLEY, Ariz. Bar. No. 031820
Pacific Legal Foundation
3241 E Shea Boulevard, # 108
Phoenix, Arizona 85028
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
jmanley@pacificlegal.org

ANTHONY L. FRANÇOIS, Cal. Bar. No. 184100*
CHARLES T. YATES, Cal. Bar No. 327704*
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
afrancois@pacificlegal.org
cyates@pacificlegal.org

*Attorneys for Proposed Defendant-Intervenors
Chantell and Michael Sackett*

**pro hac vice* pending

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pascua Yaqui Tribe, et al., | No. CV-20-00266-TUC-RM |
| Plaintiffs, | |
| v. | **UNOPPOSED MOTION TO INTERVENE; MEMORANDUM IN SUPPORT (FRCP 24)** |
| United States Environmental Protection Agency, et al., | |
| Defendants, | |
| and | |
| Arizona Rock Products Association, et al., | |
| Defendants-Intervenors, | |
| and | |
| Chantell Sackett; Michael Sackett, | |
| Proposed Defendant-Intervenors. | |

1

**MOTION TO INTERVENE**

Chantell and Michael Sackett ("the Sacketts") hereby move this Court for an order to intervene as defendants in this action as a matter of right pursuant to Federal Rule of Civil Procedure 24(a). In the alternative, the Sacketts request leave to intervene by permission pursuant to Federal Rule of Civil Procedure 24(b).

The Sacketts meet the criteria for intervention as of right under Rule 24(a) because: (1) this Motion is timely; (2) the Sacketts have significant property interests in a parcel of private property that relate to the subject of this litigation; (3) disposition of this case may impair the Sacketts' ability to defend those interests; and (4) none of the existing parties adequately represents the Sacketts' interests. This Court may alternatively exercise its discretion to grant the Sacketts permissive intervention pursuant to Rule 24(b) because the Sacketts' defense of the Navigable Waters Protection Rule shares a common question of law or fact with Plaintiffs' challenge, and the Sacketts' intervention will not unduly delay or prejudice the adjudication of this matter.

The motion is based on this motion to intervene; the accompanying memorandum of points and authorities; the declaration submitted with this motion; the documents previously filed in this action; and any other material the Court may consider in the briefing of this matter.

Counsel for the Sacketts contacted the existing parties to determine their positions on this motion and were informed that the Plaintiffs do not oppose the Sacketts' motion to intervene provided it does not delay the existing briefing schedule. The Sacketts agree to be bound by the schedule outlined in ECF Nos. 20 and 24. The Federal Defendants and Defendant-Intervenors take no position on the Sacketts' motion to intervene.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs Pascua Yaqui Tribe, Quinault Indian Nation, Fond Du Lac Band of Lake Superior Chippewa, Menominee Indian Tribe of Wisconsin, Tohono O'odham Nation, and Bad River Band of Lake Superior Chippewa (collectively the "Tribes") have filed a

2

1 complaint challenging the U.S. Environmental Protection Agency (EPA) and the U.S.

2 Department of the Army's (Army) (together the "Agencies") adoption of a final rule called

3 the Navigable Waters Protection Rule ("Navigable Waters Protection Rule" or "Rule"),

4 defining "navigable waters" or "waters of the United States" under the Clean Water Act.

5 *See* 85 Fed. Reg. 22,250 (Apr. 21, 2020); ECF No. 1 ¶¶ 4–5.

6       The Sacketts seek to intervene only to defend the portion of the Rule which defines

7 "adjacent wetlands." *See* 33 C.F.R. § 328.3(c)(1); 40 C.F.R. § 120.2(3)(i).[1] The Sacketts

8 have an interest in the Clean Water Act's regulation of their private property that would be

9 affected by this lawsuit and that interest is not adequately represented by the existing parties.

10 Therefore, they are entitled to intervention as of right. Fed. R. Civ. P. 24(a). Alternatively,

11 the Sacketts move for permissive intervention. Fed. R. Civ. P. 24(b).

12 **APPLICANTS**

13       Chantell and Michael Sackett have fought a fourteen-year battle with EPA over

14 permission to build on their residential lot in Priest Lake, Idaho. And although the

15 Navigable Waters Protection Rule currently affords the Sacketts the ability to build a home

16 on their lot without first obtaining permission from the Army, the Tribes' challenge to the

17 Rule now threatens to deny the Sacketts that long-delayed opportunity. The Sacketts' lot

18 is the subject of an EPA jurisdictional determination and compliance orders issued in 2007

19 and 2008.[2] Declaration of Chantell Sackett ¶¶ 7–9, and Exhs. A & B. EPA asserts that it

20 has Clean Water Act authority over the lot because it contains "adjacent wetlands" under

21 the regulations then in effect. *Id*. EPA's administrative record of the jurisdictional

22 determination establishes that the Sacketts' lot has no surface water connection to any other

23 surface water and is separated from the closest surface water by an impermeable artificial

24

25 [1] Subsequent references to 33 C.F.R. § 328.3 and its subdivisions are, unless indicated otherwise, to the version published in the Federal Register on April 21, 2020, at 85 Fed. Reg. at 22,338–39, and the identical provisions at 40 C.F.R. § 120.2, published the same

26 date at 85 Fed. Reg. at 22,340–41. 40 C.F.R. § 120.2(3)(i) corresponds to 33 C.F.R. § 328.3(c)(1).

27 [2] The compliance order was withdrawn on March 13, 2020, but the jurisdictional

28 determination remains in force. *See* Declaration of Chantell Sackett ¶ 13.

1 │ barrier (a road with no culverts under it). *Id.* ¶¶ 3–4, 9, and Exhs. A & B.

2 │      The Sacketts' challenge to EPA's assertion of Clean Water Act authority over their

3 │ lot was the subject of the Supreme Court of the United States' decision in *Sackett v. EPA*,

4 │ 566 U.S. 120 (2012) (federal district courts have jurisdiction under the Administrative

5 │ Procedure Act to review EPA compliance orders as final agency action). Following remand,

6 │ the District of Idaho upheld EPA's assertion of regulatory authority, and EPA continues to

7 │ maintain that the Sacketts' lot is regulable under the definition of "adjacent wetlands" in

8 │ effect in 2008. Order, *Sackett v. EPA*, No. 2:08-cv-00185-EJL (D. Idaho Mar. 31, 2019),

9 │ ECF No. 120. The Sacketts' appeal of that decision is currently pending in the Ninth Circuit,

10 │ with oral arguments heard on November 19, 2020, and supplemental briefing addressing

11 │ the effect of the Navigable Waters Protection Rule on the appeal completed on April 9,

12 │ 2021. *See* Minute Order Re: Case Argued and Submitted, *Sackett v. EPA*, No. 19-35469

13 │ (9th Cir. Nov. 19, 2020), Dkt. #43; Supplemental Brief of Defendants-Appellees *Sackett v.*

14 │ *EPA*, No. 19-35469 (9th Cir. Apr. 9, 2021), Dkt. #54.

15 │      As a result of their ongoing legal dispute with EPA, the Sacketts have been unable

16 │ to build a home on their residentially-zoned vacant lot for the last fourteen years. Sackett

17 │ Decl. ¶ 10 (explaining that as long as EPA claims authority over their property, the Sacketts

18 │ will be unable to build a house because they cannot afford an Army permit and because

19 │ EPA's administrative record reveals that an Army permit for homebuilding would not be

20 │ issued). However, under the Navigable Waters Protection Rule's revised definition of

21 │ "adjacent wetlands," the Sacketts' property is excluded from agency authority under the

22 │ Clean Water Act. *See* 33 C.F.R. § 328.3(c)(1); Sackett Decl. ¶ 15. The lot's lack of surface

23 │ water connection to any other surface water and its separation from the closest surface water

24 │ by an impermeable artificial barrier (an elevated road) preclude Clean Water Act regulation

25 │ under the new Rule. Sackett Decl. ¶¶ 3–4, 9, and Exhs. A & B; 33 C.F.R. § 328.3(c)(1)(i)–

26 │ (iv). As such, the Sacketts are finally able to build a home on their long-vacant lot without

27 │ first obtaining permission from the Army. The Tribes' challenge to the Rule, if successful,

28 │ would reverse the exclusion of the Sacketts' property from Clean Water Act regulation and

return the Sacketts' property to EPA's asserted regulatory dominion.

## BACKGROUND

### I.        The Clean Water Act and the Definition of "Navigable Waters"

The Clean Water Act, 33 U.S.C. § 1251, *et seq.*, regulates discharges of "pollutants" from "point sources" to "navigable waters." 33 U.S.C. §§ 1311(a), 1362(12). The Act defines "navigable waters" as "waters of the United States, including the territorial seas." *Id.* § 1362(7). Although the Act defines "territorial seas," it does not otherwise define "waters of the United States." *Id.* § 1362(8).

Nonexempt discharges require a permit from either EPA or the Army, such as a "dredge and fill" permit under 33 U.S.C. § 1344. Obtaining a dredge and fill permit from the Army takes an average of more than two years and $250,000 in consulting costs. *See Rapanos v. United States*, 547 U.S. 715, 721 (2006). Once obtained, a dredge and fill permit substantially limits how property encumbered by "navigable waters" can be used by its owner. *See generally* Daniel R. Mandelker, *Practicable Alternatives for Wetlands Development Under the Clean Water Act*, 48 Envtl. L. Rep. News & Analysis 10894 (Oct. 2018).

A person engaged in unpermitted, nonexempt discharges or permit violations faces citizen suits, administrative cease-and-desist and compliance orders, administrative penalties, civil actions for monetary penalties and injunctive relief, and criminal prosecution. *See generally Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 52–53 (1987). These severe burdens make it critically important that the regulated public know what is meant by "navigable waters."

There have been multiple attempts to define that term over the years. In 1986, the Army adopted an updated regulatory definition that stretched the term "navigable waters" to include all non-navigable wetlands "adjacent" (broadly defined as "bordering, contiguous, or neighboring") to regulated waters. *See* 33 C.F.R. § 328.3 (1987) (the 1986 Regulations); *id*. § 328.3(a)(7) & (c) (1987) (defining adjacent wetlands).

1        In 2006, a divided Supreme Court rejected this definition as exceeding the scope of

2   the statutory term "navigable waters." *Rapanos*, 547 U.S. at 739. In assessing the legality

3   of the 1986 Regulations, a four-Justice plurality determined that the language, structure,

4   and purpose of the Clean Water Act restrict federal authority over non-navigable wetlands

5   to only those that physically abut relatively permanent and continuously flowing waters,

6   with an immediate surface water connection making the wetland and water body

7   "indistinguishable." *Id.* at 755.

8        Justice Kennedy provided a fifth vote rejecting the 1986 Regulations defining

9   "adjacent wetlands" as overbroad, joining the plurality in the judgment. But he proposed a

10  broader interpretation of "navigable waters" than the plurality: the "significant nexus" test.

11  *Id.* at 759 (Kennedy, J., concurring). Under this view, the government can regulate a non-

12  abutting wetland if it significantly affects the physical, chemical, and biological integrity

13  of a navigable-in-fact waterway. *Id.* at 779–80 (Kennedy, J., concurring). Justice Kennedy

14  wrote that wetlands could be analyzed under this standard, either standing alone or in

15  combination with features similarly situated within an otherwise undefined "region." *Id.*

16  at 780 (Kennedy, J., concurring).

17       In 2015, after several years of effort to address *Rapanos*, EPA and the Army adopted

18  new regulations redefining "navigable waters." 33 C.F.R. § 328.3 (2016); 80 Fed. Reg.

19  37,054 (June 29, 2015) (the 2015 Rule). Several lawsuits challenged the 2015 Rule. On

20  August 21, 2019, the U.S. District Court for the Southern District of Georgia ruled on

21  summary judgment that the 2015 Rule violated the Clean Water Act and permanently

22  enjoined and remanded it without vacatur. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336,

23  1382–83 (S.D. Ga. 2019). A short time later, partially in response to the decision in

24  *Georgia v. Wheeler*, EPA and the Army published a regulation that repealed the 2015 Rule

25  and readopted the 1986 Regulations. 84 Fed. Reg. 56,626 (Oct. 22, 2019) (the 2019 Repeal

26  Rule).

27       On April 21, 2020, EPA and the Army again redefined "navigable waters" by

28  publishing the Navigable Waters Protection Rule. 85 Fed. Reg. 22,250 (Apr. 21, 2020).

1    Among other things, this Rule—which took effect on June 22, 2020—redefines "adjacent

2    wetlands," 33 C.F.R. § 328.3(a)(4), as wetlands that abut or are flooded by other regulated

3    waters, or are physically separated from such waters only by natural barriers or by

4    permeable artificial barriers. 33 C.F.R. § 328.3(c)(1)(i)–(iv).

5         On January 20, 2021, shortly after taking office, President Biden signed Executive

6    Order 13990. *See* 86 Fed. Reg. 7037, 7037 (Jan. 25, 2021). Executive Order 13990 directs

7    the heads of the Agencies to "review all existing regulations . . . promulgated . . . between

8    January 20, 2017, and January 20, 2021, and "consider suspending, revising, or rescinding"

9    any actions inconsistent with the policies of the new administration. *Id.* The Agencies are

10   currently reviewing the Navigable Waters Protection Rule pursuant to Executive Order

11   13990. *See* ECF No. 25. The Agencies have indicated that this review may lead to

12   modification or withdrawal of the Rule and a new regulatory definition of "navigable

13   waters." *Id*. at 7.

14   **II.    This Lawsuit**

15        On June 22, 2020, the Tribes filed this lawsuit to challenge the Navigable Waters

16   Protection Rule. ECF No. 1 ¶¶ 4–6. In their complaint, the Tribes allege that the Rule

17   violates the Clean Water Act, ignores the best available science, and arbitrarily narrows the

18   scope of federal regulatory authority without considering important factors (in violation of

19   the Administrative Procedure Act). *Id.* The Tribes ask this Court to declare that the

20   Navigable Waters Protection Rule is unlawful and vacate it in its entirety. *Id.* at 37–38.[3]

21        This Court entered an order on October 28, 2020, setting deadlines for the

22   production of the administrative record, the filing of motions to challenge the

23   administrative record, and summary judgment briefing. *See* ECF No. 20. On January 8,

24   2020, in response to a joint motion, the Court set new deadlines for motions to supplement

25

26   [3] In addition to challenging the Navigable Waters Protection Rule, the Tribes' complaint
     challenges and seeks vacatur of the 2019 Repeal Rule, and partially challenges and seeks
27   partial vacatur of the 2015 Rule. *See* ECF No. 1 at 37–38. The Sacketts seek intervention
     only as to the Navigable Waters Protection Rule, and only to defend the Rule's "adjacent
28   wetlands" provisions.

1   or challenge the administrative record, and for summary judgment briefing. ECF No. 24.

2   On February 18, 2021, the Agencies moved to hold this case in abeyance for ninety days,

3   to enable review of the Rule in accordance with E.O. 13990 and a decision regarding their

4   future willingness to defend it. ECF No. 25. That motion was denied on April 12, 2021.

5   ECF No. 32. On May 5, 2021, considering the recent change in administration, this Court

6   granted a group of trade associations led by the Arizona Rock Products Association (the

7   "Business Intervenors"), leave to intervene to defend the interests of their Arizona

8   members. *See* ECF No. 43. Under the current scheduling order, the Tribes' summary

9   judgment motion is due on May 11, 2021, the Agencies and Business Intervenors'

10  responses are due on July 13, 2021, and the case will be fully briefed by October 5, 2021.

11  ECF No. 24.

## ARGUMENT

13  **I.      The Sacketts Satisfy Rule 24(a) and**
14          **Should Be Granted Intervention as of Right**

15         Under Federal Rule of Civil Procedure 24(a), an applicant for intervention has a right

16  to intervene if

17         (1) the intervention application is timely; (2) the applicant has a significant
           protectable interest relating to the property or transaction that is the subject of
18         the action; (3) the disposition of the action may, as a practical matter, impair
           or impede the applicant's ability to protect its interest; and (4) the existing
19         parties may not adequately represent the applicant's interest.

20  *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011)

21  (internal citations omitted); Fed. R. Civ. P. 24(a)(2).

22         In applying this standard, Ninth Circuit courts "normally follow 'practical and

23  equitable considerations' and construe the Rule 'broadly in favor of proposed intervenors.'"

24  *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc)

25  (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)); *Sw. Ctr.*

26  *for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) ("In general, we construe

27  Rule 24(a) liberally in favor of potential intervenors") (internal citations omitted). This is

28  because "'[a] liberal policy in favor of intervention serves both efficient resolution of issues

1    and broadened access to the Courts.'" *Id*. (quoting *City of Los Angeles*, 288 F.3d at 397–

2    98).

3                    **A.      The Sacketts' Motion To Intervene Is Timely**

4            Three factors inform whether a motion to intervene is timely: (1) the stage of the

5    proceedings; (2) prejudice to existing parties; and (3) the reason for any delay in moving

6    to intervene. *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). In

7    evaluating these factors, "[m]ere lapse of time alone is not determinative," and the

8    prejudice to other parties is "the most important consideration in deciding whether a motion

9    for intervention is untimely." *United States v. Oregon*, 745 F.2d 550, 552 (1984) (quoting

10   7A Charles Alan Wright & Arthur R. Miller*, Federal Practice and Procedure* § 1916

11   (1972)).

12           First, regarding the stage of the proceedings, although the complaint was filed on

13   June 20, 2020, this litigation is still in a preliminary posture. No substantive matters have

14   been ruled on, briefing on summary judgment has not yet started, and Defendants' briefs

15   are not due until July 13, 2021. *See* ECF No. 24.

16           Second, because intervention is sought prior to any substantive progress in the case,

17   it will not prejudice the parties nor result in any disruption or delay. The Sacketts have

18   attached their proposed Answer in Intervention as Attachment 1 and agree to participate as

19   defendants on the schedule outlined in ECF Nos. 20 and 24. The Sacketts' participation

20   will not in any way delay the briefing schedule or prejudice any party. Nor do any of the

21   parties oppose the Sacketts' intervention. Under such circumstances, intervention is timely.

22   *Cf. Oregon*, 745 F.2d at 552.

23           Third, regarding delay in moving to intervene, a "basic principle" is that "[t]he

24   crucial date for assessing the timeliness of a motion to intervene is when proposed

25   intervenors should have been aware that their interests would not be adequately protected

26   by the existing parties." *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th

27   Cir. 2016) (quoting *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)). Since

28   January 20, 2021, courts across the country have overwhelmingly granted motions to stay

1    challenges to the Rule while the Agencies review it in accordance with E.O. 13990.[4]  On

2    February 18, 2021, the Agencies likewise moved to hold this case in abeyance for ninety

3    days to permit further deliberations germane to their willingness to defend it. ECF No. 25.

4    However, that motion was denied less than one month ago, on April 12, 2021, making this

5    case an outlier in proceeding to the merits. ECF No. 32. With merits briefing proceeding

6    in this case where it is stayed elsewhere, and the Agencies now indicating that they are

7    reconsidering their willingness to defend the Rule, the Sacketts now face an urgent need

8    for party status in this case. ECF No. 25 at 7 (noting that "the Agencies' review of the 2020

9    Rule may ultimately lead to the modification or withdrawal of the rule"). In granting

10   intervention to the Business Intervenors on May 5, 2021, this Court determined that

11   considering these changed circumstances and the recent change in administration,

12   intervention was timely. ECF No. 43 at 2.

13          This motion is timely.

14          **B.      The Sacketts' Interests Relate to the Subject of This Litigation**

15          To intervene as of right, a party must have an "interest relating to the property or

16   transaction that is the subject of the action . . . ." Fed. R. Civ. P. 24(a)(2). This interest test

17   is not a bright-line rule but is instead met if applicants will "suffer a practical impairment

18   of [their] interests as a result of the pending litigation." *California ex rel. Lockyer v. United*

19   *States*, 450 F.3d 436, 441 (9th Cir. 2006). Accordingly, a court should make a "practical,

20   threshold inquiry," *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993), and

21   "involv[e] as many apparently concerned persons as is compatible with efficiency and due

22   process." *Cty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (quoting *Nuesse v.*

23

24   [4] *See* Order, *California v. Regan*, No. 20-cv-03005 (N.D. Cal. Apr. 16, 2021) ECF No. 241;
     Order, *S.C. Coastal Conservation League v. Regan*, No. 20-cv-01687 (D.S.C. Mar. 2,
25   2021), ECF No. 106; Order, *Waterkeeper All. v. Regan*, No. 18-cv-03521 (N.D. Cal. Feb.
     16, 2021), ECF No. 103; Order Granting Parties' Joint Mot. to Hold Cases in Abeyance,
26   *Chesapeake Bay Found. v. Regan*, Nos. 20-cv-1063, 20-cv-1064 (D. Md. Feb. 2, 2021),
     ECF No. 48; ECF No. 241; Order, *Murray v. Regan*, No. 19-cv-1498 (N.D.N.Y. Feb. 2,
27   2021), ECF No. 42; Minute Order Granting Joint Mot. to Hold in Abeyance, *Env'tl.
28   Integrity Project v. Regan*, No. 20-cv-1734 (D.D.C. Jan. 28, 2021).

*Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). The types of interests protected are interpreted "broadly, in favor of the applicants for intervention." *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993) (quoting *Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States*, 921 F.2d 924, 926 (9th Cir. 1990)).

The Sacketts have a significant interest in this litigation based on their ownership and use of private land, which defendant EPA has claimed since 2007 contains wetlands regulated under the Clean Water Act. As discussed above, the Sacketts own a residential lot in Priest Lake, Idaho, which, prior to the Agencies' adoption of the Navigable Waters Protection Rule, EPA determined is subject to federal permitting authority under the Clean Water Act. Sackett Decl. ¶¶ 7, 9. The Tribes seek nationwide vacatur of the Navigable Waters Protection Rule. ECF No. 1 at 37–38. As such, if Tribes prevail in this litigation, the Agencies' 2020 redefinition of "adjacent wetlands" will be set aside, and the significant regulatory relief afforded the Sacketts by the Navigable Waters Protection Rule would be reversed. Sackett Decl. ¶ 17. The practical outcome of this litigation would be the return of the Sacketts' property to Clean Water Act regulation. *Id.*

For these reasons, the Sacketts have significant protectable interests in this action as private landowners. *See Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir. 1995) ("[W]hen, as here, the injunctive relief sought by plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests, that party satisfies the 'interest' test of Fed. R. Civ. P. 24(a)(2); [it] has a significantly protectable interest that relates to the property or transaction that is the subject of the action."), *abrogated on other grounds*, *Wilderness Soc'y*, 630 F.3d 1173.

### C.     Disposition of This Case May Impair/Impede the Sacketts' Interests

Disposition of this case plainly threatens to impair and impede the Sacketts' interests. The threshold for demonstrating potential impairment of interests is low, as Rule 24(a)'s requirement addresses whether, as a practical matter, a denial of intervention would impede a prospective intervenor's ability to protect its interests. *California ex rel. Lockyer*, 450 F.3d at 442 ("Having found that appellants have a significant protectable interest, we

1    have little difficulty concluding that the disposition of this case may, as a practical matter,

2    affect it.").

3         The interests identified above may be impaired or impeded if the Sacketts are denied

4    intervention. As discussed, if Plaintiffs prevail and the Navigable Waters Protection Rule's

5    definition of "adjacent wetlands" is vacated, it will alter the regulations that govern the

6    Sacketts' use of their property, to their detriment. To wit, if the Rule is set aside, the

7    Sacketts' property will go from being unregulated by the Clean Water Act, to being

8    regulated by it to the degree that they cannot build a home on it. *See Sw. Ctr. for Biological*

9    *Diversity*, 268 F.3d at 822 ("We follow the guidance of Rule 24 advisory committee notes

10   that state that '[i]f an absentee would be substantially affected in a practical sense by the

11   determination made in an action, he should, as a general rule, be entitled to intervene.'")

12   (quoting Fed. R. Civ. P. 24 advisory committee note to 1966 amendment).

13        **D.    No Party Adequately Represents the Sacketts' Interests**

14        The "burden in showing inadequate representation is minimal: it is sufficient to show

15   that representation *may* be inadequate." *Forest Conservation Council*, 66 F.3d at 1498

16   (citations omitted) (emphasis in the original), *abrogated on other grounds by Wilderness*

17   *Soc'y*, 630 F.3d 1173; *see also Citizens for Balanced Use*, 647 F.3d at 898 (same); *Trbovich*

18   *v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) ("[T]he burden of making

19   that showing should be treated as minimal."). The Ninth Circuit examines three factors

20   when evaluating adequacy of representation:

21        (1) whether the interest of a present party is such that it will undoubtedly make
         all of a proposed intervenor's arguments; (2) whether the present party is
22       capable and willing to make such arguments; and (3) whether a proposed
         intervenor would offer any necessary elements to the proceeding that other
23       parties would neglect.

24   *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078,

25   1086 (9th Cir. 2003)).

26        The Sacketts amply meet their "minimal" burden in showing that EPA and the Army

27   do not adequately represent their interests. Indeed, the Agencies are reconsidering their

28   willingness to defend the Rule at all. *See* ECF No. 29 at 7 ("The issuance of Executive

1    Order 13990 could lead to substantial revisions, or even revocation, of the current definition

2    of 'waters of the United States.'"). Given that the Agencies have sought to pause this

3    litigation in contemplation of their potentially abandoning the Rule's defense, it is hard to

4    imagine how they could adequately represent the Sacketts' interests in maintaining the Rule

5    going forward. This is especially true given that merits briefing is scheduled to begin soon.

6    *See* ECF No. 24.

7         Further, even if the Agencies were to resume their defense of the Rule, the Sacketts

8    satisfy each factor of the Ninth Circuit analysis and easily overcome any "assumption" that

9    EPA and the Army might adequately represent their interests. *See Arakaki*, 324 F.3d

10   at 1086.

11

12                    **i.        The Agencies' interests are not such that they will undoubtedly
                                  make all of the Sacketts' arguments**

13        The federal government's interests as a regulator are such that it will not

14   "undoubtedly" make all of the Sacketts' arguments. *Citizens for Balanced Use*, 647 F.3d

15   at 898 (quoting *Arakaki,* 324 F.3d at 1086). The Agencies have a variety of regulatory

16   interests implicated by this case, including maximizing their power and discretion. *See*

17   *Forest Conservation Council*, 66 F.3d at 1499 (noting that the government is more focused

18   on "broad public interests") (collecting cases). That discretion includes the flexibility to

19   revise the regulations following the ongoing review, so as to again include a wider portfolio

20   of wetlands, including those alleged to exist on the Sacketts' property. These interests in

21   flexibility and discretion diverge significantly from the Sacketts' direct interests as private

22   landowners whose ability to develop, use, and enjoy their residential property is protected

23   by the challenged regulations but threatened by the prior and possible future regulations.

24        Further, the Sacketts will defend the Rule's redefinition of "adjacent wetlands" on

25   different grounds than the Agencies will (should the Agencies defend the Rule at all). The

26   Agencies have consistently taken the position that the Navigable Waters Protection Rule's

27   definition of "adjacent wetlands" is an allowable exercise of agency discretion, entitled to

28   deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S.

837 (1984) and *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967 (2005).[5] By contrast, the Sacketts will argue that the Rule's new and narrower definition of "adjacent wetlands" is not a matter of agency discretion, but is *legally compelled* by Supreme Court precedent—namely, by the controlling plurality opinion in *Rapanos*, 54 U.S. 715. The Sacketts will argue that the Clean Water Act and Supreme Court precedent, properly applied, *require* the Agencies' new regulatory definition of "adjacent wetlands," rather than merely permitting it. This is an argument that the Agencies have expressly rejected. *See* 85 Fed. Reg. at 22,273 (rejecting the suggestion that the *Rapanos* plurality controls).

### ii.      The Agencies are not capable and willing to make the Sacketts' arguments

Given the Agencies' institutional interests in preserving their judgment, power, and discretion, they are unlikely to be capable of making, or willing to make, the Sacketts' arguments. *See* 85 Fed. Reg. at 22,263. Indeed, the Agencies' inconsistency on the issues raised in this case creates serious doubts as to their ability to steadfastly advance the Sacketts' interests and arguments. In its redefinition of regulated wetlands, the challenged Rule reverses earlier rules issued by the very same agencies. And these conflicting rules are of a very recent vintage. *See* 84 Fed. Reg. 56,626 (Oct. 22, 2019); 80 Fed. Reg. 37,054 (June 29, 2015). Given the vicissitudes of agency politics, there is considerable doubt that the Agencies will be capable of making, and willing to make, all of the Sacketts' arguments throughout the course of the litigation. This is underscored by the fact that one likely outcome of the Agencies' E.O. 13990 review is the use of their claimed discretion to once

---

[5] *See* Appellants' Opening Brief at 26–35, *Colorado v. EPA*, No. 20-1238 (10th Cir. July 9, 2020), Doc. No. 010110374057 at 38–47 (arguing for *Chevron* deference); Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendants' Cross-Motion for Summary Judgment at 12–17, *Conservation Law Found. v. EPA*, No. 1:20-cv-10820-DPW (D. Mass. Dec. 3, 2020), ECF No. 46 at 22–27 (same). Additionally, throughout the course of the Sacketts' thirteen-year litigation history with EPA, EPA has consistently argued for deference to its interpretations of "navigable waters" and "adjacent wetlands." United States Combined Memorandum at 10, 19, *Sackett v. EPA*, No. 2:08-cv-00185-EJL (D. Idaho Nov. 20, 2015), ECF No. 105-1.

1  again reverse course on how they interpret the term "navigable waters." *See* ECF Nos. 25

2  at 7, 29 at 7.

3

###   iii.   The Sacketts offer necessary elements to the proceeding that the
4   Agencies will neglect

5         In the context of inadequate representation by a government party, where an

6  intervenor's interests are "potentially more narrow and parochial" than those "of the public

7  at large," intervention is favored. *See Californians for Safe & Competitive Dump Truck*

8  *Transp. v. Mendonca*, 152 F.3d 1184, 1189–90 (9th Cir. 1998). The Sacketts' "narrow and

9  parochial" goal is to defend their freedom to build a home on a 2/3-acre residential lot in

10 Idaho. Sackett Decl. ¶ 16. The Agencies by contrast have a number of "broad[]" public

11 interests in the Rule, including to "protect navigable waters from pollution while providing

12 an implementable approach to determining regulatory jurisdiction under the CWA." 85 Fed.

13 Reg. at 22,262. Indeed, as private landowners whose ability to develop, use, and enjoy their

14 residential property is shaped by the challenged regulations, the Sacketts "offer[] a

15 perspective which differs materially from that of the present parties to this litigation."

16 *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983); *see also Forest*

17 *Conservation Council*, 66 F.3d at 1499 ("Inadequate representation is most likely to be

18 found when the applicant asserts a personal interest that does not belong to the general

19 public." (quoting 3B James Wm. Moore et al., *Moore's Federal Practice* ¶ 24.07[4] at 24–

20 78 (2d ed. 1995))). The Sacketts therefore bring important and necessary elements to the

21 litigation.

### iv.   The Business Intervenors will not adequately represent the
22   Sacketts' interests

23        The Business Intervenors—who represent the economic interests of their Arizona

24 industry members—likewise will not adequately represent the Sacketts' interests. *See* ECF

25 No. 33. The Sacketts' interests in this case are not those of business landowners or

26 commercial housing developers. The Sacketts possess a "narrow and parochial" interest in

27 developing a specific plot of land located in Idaho. Sackett Decl. at ¶¶ 3, 6, 16. *See*

28 *Californians for Safe & Competitive Dump Truck Transp.*, 152 F.3d at 1189–90. That

1    narrow and parochial interest is not represented by the Business Intervenors' interest in the

2    application of the Rule to several unrelated industry sectors in the state of Arizona. *See* ECF

3    No. 33 at 11. Furthermore, the Business Intervenors do not indicate any intention to make

4    the Sacketts' arguments that the adjacent wetlands provisions of the Rule are legally

5    compelled. *See* ECF No. 33. Finally, the Sacketts are involved in ongoing litigation with

6    EPA and seek intervention in this matter partially out of a concern that in defending the

7    Rule on discretionary grounds, EPA will be protecting its litigation position against the

8    Sacketts that the prior regulations were also a valid exercise of discretionary agency

9    decision-making. *See supra* note 5. This interest in the Sacketts' ongoing litigation with

10   EPA is not represented by the Business Intervenors.

11         As such, none of the existing parties adequately represent the Sacketts' interests, and

12   the Sacketts have a right to intervene.

13   **II.      In the Alternative, the Sacketts Satisfy the Standard for Permissive
            Intervention**
14

15         If the Court denies the Sacketts' motion to intervene as of right, it should

16   alternatively grant them permission to intervene pursuant to Rule 24(b). On timely motion,

17   the Court may permit anyone to intervene who "has a claim or defense that shares with the

18   main action a common question of law or fact" as long as doing so will not "unduly delay

19   or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b); *Kootenai*

20   *Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002), *abrogated on other*

21   *grounds*, *Wilderness Soc'y*, 630 F.3d 1173. Courts have broad discretion to grant

22   intervention under the permissive standard, *see Orange Cty. v. Air California*, 799 F.2d

23   535, 539 (9th Cir. 1986), and Rule 24(b) "'plainly dispenses with any requirement that the

24   intervenor shall have a direct personal or pecuniary interest in the subject of the litigation,'"

25   *Employee Staffing Servs. v. Aubry*, 20 F.3d 1038, 1042 (9th Cir. 1994) (quoting *SEC v.*

26   *United States Realty & Improvement Co.*, 310 U.S. 434, 459 (1940)). Indeed, "all that is

27   necessary for permissive intervention is that [an] intervenor's 'claim or defense and the

28

1    main action have a question of law or fact in common.'" *Kootenai Tribe of Idaho*, 313 F.3d

2    at 1108 (citing Fed. R. Civ. P. 24(b)).

3           The Sacketts' defense of the challenged rule raises a question of law or fact in

4    common with the Tribes' claims and the Agencies' defenses. For instance, the Sacketts'

5    argument that the *Rapanos* plurality compels the Agencies' redefinition of regulated

6    wetlands raises a question of law (the legality of the adjacent wetlands provisions of the

7    Navigable Waters Protection Rule and which opinion in *Rapanos* controls), which is also

8    raised by the Tribes' complaint. *See* ECF No. 1 ¶¶ 93–94 (arguing that the Rule's exclusion

9    of wetlands that could be regulated under Justice Kennedy's significant nexus test was

10   illegal). And because the Sacketts have sought intervention prior to any substantive

11   progress in the case and well over two months before they would have to file a brief as a

12   defendant-intervenor, their participation will not unduly prejudice any of the parties or

13   result in significant disruption or delay. Fed. R. Civ. P. 24(b)(3).

14          Therefore, were the Court to conclude that the Sacketts lack a right to intervene, it

15   should allow intervention permissively under Rule 24(b).

16                                      **CONCLUSION**

17          The Sacketts should be granted intervention as of right or, in the alternative, should

18   be granted permissive intervention.

19          DATED this 7th day of May, 2021.

20                                             Respectfully submitted,

21                                             JAMES M. MANLEY
                                               ANTHONY L. FRANÇOIS
22                                             CHARLES T. YATES

23

24                                             By     /s/ James M. Manley
                                                      JAMES M. MANLEY
25
                                               *Attorneys for Proposed Defendant-*
26                                             *Intervenors Chantell and Michael Sackett*

27

28

17