JAMES M. MANLEY, Ariz. Bar. No. 031820
Pacific Legal Foundation
3241 E Shea Boulevard, # 108
Phoenix, Arizona 85028
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
jmanley@pacificlegal.org

ANTHONY L. FRANÇOIS, Cal. Bar. No. 184100*
CHARLES T. YATES, Cal. Bar No. 327704*
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
afrancois@pacificlegal.org
cyates@pacificlegal.org

Attorneys for Proposed Defendant-Intervenors
Chantell and Michael Sackett

*<em>pro hac vice</em> pending

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pascua Yaqui Tribe, et al., <br>     Plaintiffs, <br> v. <br> United States Environmental Protection Agency, et al., <br>     Defendants, <br> and <br> Arizona Rock Products Association, et al., <br>     Defendant-Intervenors, <br> and <br> Chantell Sackett; Michael Sackett, <br>     Proposed Defendant-Intervenors. | No. CV-20-00266-TUC-RM <br><br> **DECLARATION OF CHANTELL SACKETT IN SUPPORT OF MOTION TO INTERVENE** |

I, Chantell Sackett, am competent to testify and declare as follows:

1. The following is true and correct to the best of my knowledge.

2. I am one of the proposed intervenors in this matter.

3. My husband Mike and I have owned a 2/3-acre lot in Priest Lake, Idaho, since 2003. The lot is bounded on the North end by an elevated road that separates the lot from a roadside ditch. There are no culverts or any other surface water connections between our lot through or under the elevated road to the ditch on the other side of the road.

4. There is no surface water connection between our lot and any other body of surface water.

5. In 2007 we had obtained all necessary local permits from Bonner County, Idaho, and broke ground to build our house on the lot.

6. While preparing the lot in April 2007, we were ordered to stop work by two employees of the Environmental Protection Agency (EPA), who claimed that we could not build a home on the lot without a permit from the United States Army. We stopped work at that time and since then have been unable to build on the lot or do anything with it.

7. In November 2007 Mike and I were issued an administrative compliance order by the EPA, which claimed that our lot is a federally protected "water of the United States," and that we had violated the Clean Water Act by breaking ground on it. The order further told us to restore the lot to its pre-groundbreaking condition and leave it idle for three years.

8. Mike and I challenged this administrative compliance order in federal court in early 2008.

9. After we filed our lawsuit, an employee of the EPA returned to our lot and completed an investigation report and jurisdictional determination form which confirm that the lot has no surface water connection with any other water body, and that the elevated road that separates our lot from the ditch on the other side of the road has no culverts or other surface water connections under or through it. The report and jurisdictional determination form are attached to this declaration as Exhibits A and B, respectively.

10.     As the result of EPA's claim of authority over our property, we were unable to build on it without fear of enforcement for further alleged violations of the Clean Water Act. And going through the process to seek a permit from the Army was not a feasible option for us. We simply could not afford the expense of obtaining an Army permit to build a house on the lot. And we have since learned from the EPA's record of its compliance order that the EPA and Army would not issue a permit to build a house on our lot anyhow.

11.     Our lot is only zoned for residential construction. If the Clean Water Act applies to it, then we cannot build a home on it, and the lot is worse than worthless. We have paid property taxes on it for 13 years but have not been able to do anything with it.

12.     We have been in litigation with the EPA since early 2008. In March of 2019, the U.S. District Court for the District of Idaho ruled that EPA had legally claimed authority over our lot under the Clean Water Act. We have appealed this ruling to the Ninth Circuit Court of Appeals, where it has now been submitted following oral argument.

13.     On March 13, 2020, Mike and I received a letter from the EPA withdrawing its 2008 compliance order. But this letter does not withdraw, modify, or even mention the EPA's underlying Clean Water Act jurisdictional determination, which remains in effect to this day.

14.     On April 21, 2020, we learned that the Trump administration had published its proposed Navigable Waters Protection Rule. This rule took effect on June 22, 2020, while our appeal was still pending in the Ninth Circuit.

15.     It is our understanding that because our lot has no surface water connection with any other water body, that under the Trump Administration's Navigable Waters Protection Rule, our lot is no longer under EPA authority.

16.     As long as the Navigable Waters Protection Rule is in effect, we may be able to finally build on our lot. We cannot do so immediately, because of the need to for financing and local permitting, and other factors. We do not know how long it will take before we are ready to build, but at least with the new rule in effect we are legally able to proceed.

17. But if the Plaintiffs prevail in their challenge to the Navigable Waters Protection Rule, and the Rule is set aside or enjoined we would lose the ability to build without fear of a Clean Water Act enforcement action. And one possible outcome is that the rules and regulations in effect in 2007 and 2008 would be restored.

18. This outcome—the restoration of the rules in effect prior to the adoption of the Navigable Waters Protection Rule—would cause us great hardship. EPA's claim of Clean Water Act authority would be revived, and we would again be unable to build on our property without fear of a Clean Water Act enforcement action. We would have no choice but to continue to let our property sit empty while we keep fighting that battle with the agencies and in court.

19. Restoring the rules in effect prior to the adoption of the Navigable Waters Protection Rule would also cause immediate harm to our economic interests, as we believe our property would again be rendered virtually worthless. It is our understanding that development restrictions, such as the EPA jurisdictional determination—which remains in effect on our property and confirms the EPA's claim of authority under the prior rules—would likely be a material fact that we would have to disclose to a potential buyer. We cannot imagine anyone buying a property which cannot be used for the purpose for which it is zoned.

20. We are moving to intervene in this matter to protect our significant interests in the Navigable Waters Protection Rule remaining in effect.

I declare, under the penalty of perjury of the laws of the state of Idaho and the United States, that the foregoing is true and correct.

SIGNED this 4th day of May, 2021, in Nordman, Idaho.

_____
CHANTELL SACKETT