HUBERT T. LEE
DANIEL PINKSTON
Environmental Defense Section
Environment & Natural Resources Division
U.S. Department of Justice
150 M Street NE, Room 4.1116
Washington, DC 20002
Hubert.lee@usdoj.gov
Daniel.pinkston@usdoj.gov
(202) 514-1806 (Lee)
(303) 844-1804 (Pinkston)

Counsel for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA AT TUCSON

PASQUA YAQUI TRIBE, et al.,                    )
                                               )   Case No. 4:20-cv-00266-RM
              Plaintiffs,                      )
                                               )   Assigned Judge:  Hon. Rosemary Márquez
          v.                                   )
                                               )   DEFENDANTS' OPPOSED MOTION FOR
UNITED STATES ENVIRONMENTAL )   VOLUNTARY REMAND OF THE NWPR
PROTECTION AGENCY, et. al.,                    )   WITHOUT VACATUR AND OPPOSED
                                               )   MOTION FOR ABEYANCE OF BRIEFING
              Defendants,                      )   ON THE 2019 RULE CLAIMS
                                               )
and                                            )
                                               )
ARIZONA ROCK PRODUCTS                          )
ASSOCIATION, et al.,                           )
                                               )
              Intervenors-Defendants,          )
                                               )
and                                            )
                                               )
CHANTELL SACKETT and MICHAEL )
SACKETT,                                       )
                                               )
              Intervenors-Defendants.          )
_____ )

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Defendants United States Environmental Protection Agency ("EPA"), EPA Administrator Michael Regan, the United States Army Corps of Engineers ("Corps"), and Acting Assistant Secretary of the Army Jaime Pinkham (collectively, the "Agencies") move the Court to remand "The Navigable Waters Protection Rule: Definition of 'Waters of the United States,' " 85 Fed. Reg. 22,250 (Apr. 21, 2020) (the "NWPR") to the Agencies and to dismiss the claims challenging that rule.  The Agencies also move the Court to hold further briefing on the rule entitled "Definition of 'Waters of the United States' – Recodification of Pre-Existing Rules," 84 Fed. Reg. 56,626 (Oct. 22, 2019) ("2019 Rule") in abeyance pending resolution of the Agencies' request for remand of the NWPR.  The Agencies respectfully submit this motion in lieu of filing a response to Plaintiffs' motion for summary judgment (ECF Nos. 47-68) or filing a cross-motion for summary judgment, both of which would otherwise be due July 13, 2021.

As explained more fully herein, remand of the NWPR is appropriate because the Agencies have completed their review of the NWPR and have decided to commence a new rulemaking to revise or replace the rule.  A remand would avoid potentially unnecessary litigation in this Court over aspects of the NWPR that will be reconsidered in new rulemaking, would conserve the parties' limited resources, and would best serve the interest of judicial economy.  In addition, remand would avoid requiring the Agencies to take positions on merits questions that might appear to pre-judge issues that will be reconsidered through notice-and-comment rulemaking.  Through the Agencies' administrative rulemaking process, all members of the public, including Plaintiffs and Intervenors-Defendants, will have the opportunity to submit comments and

DEFENDANTS' MOTION FOR VOLUNTARY REMAND WITHOUT VACATUR - 2

recommendations, and the Agencies' new final rule therefore may resolve or moot some or all of the claims presented in this litigation.  If a new rule does not resolve Plaintiffs' concerns, that new rule could itself be challenged.  If a challenge occurs, the parties and reviewing courts would benefit from reviewing the Agencies' new final action and new administrative record, rather than continuing to litigate the NWPR on a record that may be rendered moot and out of date.

The Agencies have conferred with the parties regarding this motion.  Plaintiffs oppose remand of the NWPR to the Agencies without vacatur and oppose holding further briefing of the 2019 Rule in abeyance pending resolution of the Agencies' remand motion.  Intervenors-Defendants Arizona Rock Products Association, et al., do not oppose remand of the NWPR without vacatur but do not agree with the Agencies' rationale for remand stated in this Motion and attachments, Intervenors-Defendants Chantell Sackett and Michael Sackett oppose remand of the NWPR.

## BACKGROUND

### A.    Statutory and Regulatory Overview

The Federal Water Pollution Control Act, commonly known as the Clean Water Act ("CWA"), seeks "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251 *et seq.*  Among other provisions, the CWA prohibits "the discharge of any pollutant by any person" without a permit or other authorization, 33 U.S.C. § 1311(a), to "navigable waters," defined as "the waters of the United States," *id*. at 1362(7).

The Army Corps of Engineers first promulgated regulations defining "waters of the United States" in the 1970s.  Covered waters included only those waters subject to the ebb and flow of the tide or used "for purposes of interstate or foreign commerce." Permits for Activities in Navigable Waters or Ocean Waters, 39 Fed. Reg. 12,115, 12,119 (Apr. 3, 1974).  Thereafter, the Corps broadened its interpretation of the phrase.  *See, e.g.*, 42 Fed. Reg. 37,122, 37,144 (July 19, 1977).  In the 1980s, the Agencies adopted regulatory definitions substantially similar to the 1977 definition; those regulations remained in effect until 2015.  *See* 33 C.F.R. § 328.3(a) (1987) (Corps); 40 C.F.R. § 232.2(q) (1988) (EPA) (collectively, the "1986 Regulations").  Over time, the Agencies refined their application of the 1986 Regulations as informed by three Supreme Court decisions.  *See, e.g.*, *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121 (1985); *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159 (2001); *Rapanos v. United States*, 547 U.S. 715 (2006).

In 2015, the Agencies revised the regulatory definition of "waters of the United States."  Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054 (June 29, 2015) (the "2015 Rule").  In the "2019 Rule", the Agencies repealed the 2015 Rule and reinstated the prior regulatory framework.  84 Fed. Reg. 56,626 (Oct. 22, 2019).  In 2020, the Agencies again revised the definition of "waters of the United States" with the NWPR.

**B.    The NWPR**

The NWPR establishes four categories of jurisdictional waters: "(1) The territorial seas and traditional navigable waters; (2) tributaries of such waters; (3) certain lakes,

ponds, and impoundments of jurisdictional waters; and (4) wetlands adjacent to other

jurisdictional waters (other than waters that are themselves wetlands)."  40 C.F.R. § 120.2

(EPA); 33 C.F.R. § 328.3 (Corps); *see also* 85 Fed. Reg. at 22,273.  The NWPR also

establishes exclusions and defines the operative terms used in the regulatory text.  85 Fed.

Reg. at 22,270; *see also id*. at 22,340–41 (regulatory text).  The NWPR includes

"perennial" tributaries that "flow[] continuously year-round" and "intermittent"

tributaries that "flow[] continuously during certain times of the year and more than in

direct response to precipitation (*e.g*., seasonally when the groundwater table is elevated

or when snowpack melts)."  *Id*. at 22,338.  Ephemeral waters (waters that flow in direct

response to precipitation) are categorically excluded from jurisdiction under the NWPR.

*Id*. at 22,340.

The NWPR also includes "adjacent wetlands" as subject to CWA jurisdiction if

they directly abut a jurisdictional water, are "inundated by flooding" from a jurisdictional

water during "a typical year," are separated from a jurisdictional water "only by a natural

berm, bank, dune, or similar natural feature," or are separated from a jurisdictional water

"only by an artificial dike, barrier, or similar artificial structure so long as that structure

allows for a direct hydrologic surface connection" between the wetlands and the

jurisdictional water in a "typical year."  *Id*. at 22,338.  Multiple parties have challenged

the NWPR in various district courts.[1]

---

[1] *See, e.g.*, *N.M. Cattle Growers' Ass'n v. EPA*, No. 1:19-cv-00988 (D.N.M.); *Or. Cattlemen's Ass'n v. EPA*, 3:19-cv-564 (D. Or.); *Pueblo of Laguna v. Regan*, No. 1:21-

C.      **This Litigation**

Plaintiffs filed their Complaint on June 22, 2020.  ECF No. 1.  They challenge

both the NWPR and the 2019 Rule for a variety of reasons, asserting that (a) the

Agencies exceeded their authority and acted contrary to the CWA by adopting provisions

in the NWPR excluding waters having an effect on or connection with downstream

traditional navigable waters (Count I); (b) the NWPR is arbitrary and capricious because

it is contrary to the entirety of the record (Count II); (c) the NWPR's waste treatment

system exclusion is arbitrary and capricious and was adopted without complying with

notice and comment requirements (Counts III and IV);  and (d) the 2019 Rule is arbitrary

and capricious, an abuse of discretion, and contrary to the CWA (Count V).  The

Agencies answered the Complaint on September 8, 2020 (ECF No. 17) and filed a

certified index to the administrative record for the 2019 Rule and for the NWPR on

November 16, 2020 (ECF Nos. 21, 22).

On May 5, 2021, the Court granted the motion to intervene filed by Intervenors-

Defendants Homebuilders Association of Central Arizona; Arizona Cattle Feeders

Association; Arizona Chapter Associated General Contractors; National Stone, Sand and

---

cv-00277 (D.N.M); *Navajo Nation v. Regan*, No. 2:20-cv-00602 (D.N.M.); *California v. Wheeler*, No. 3:20-cv-03005 (N.D. Cal.); *Waterkeeper All. v. Regan*, No. 3:18-cv-03521 (N.D. Cal); *Colorado v. EPA*, No. 1:20-cv-01461 (D. Colo.); *Env't Integrity Project v. Wheeler*, No. 1:20-cv-1734 (D.D.C.); *Chesapeake Bay Found. v. Wheeler*, No. 1:20-cv-01064 (consolidated with 1:20-cv-01063) (D. Md.); *Conservation L. Found. v. EPA*, No. 1:20-cv-10280 (D. Mass.); *Murray v. Wheeler*, No. 1:19-cv-01498 (N.D.N.Y.); *S.C. Coastal Conservation League v. Regan*, No. 2:20-cv-01687 (D.S.C.); *Puget Soundkeeper All. v. EPA*, No. 2:20-cv-00950 (W.D. Wash.); *Wash. Cattlemen's Ass'n v. EPA*, No. 2:19-cv-00569 (W.D. Wash.).

Gravel Association; Arizona Farm and Ranch Group; Arizona Farm Bureau; and Arizona Rock Products Association.  ECF No. 43.  On May 14, 2021, the Court granted Chantell and Michael Sackett's motion to intervene as Intervenors-Defendants.  ECF No. 70.

On May 11, 2021, Plaintiffs filed a motion for summary judgment, asking the Court to vacate the NWPR and the 2019 Rule.  ECF Nos. 47-68.

On January 8, 2021, the Court granted the Plaintiffs' and Agencies' joint motion seeking a 60-day extension of the Scheduling Order, making the Agencies' response to Plaintiffs' summary judgment motion and any cross-motion for summary judgment due July 13, 2021.  ECF No. 24.  The Intervenors-Defendants are subject to the same schedule.

As described below and in the attached declarations, the Agencies have now completed their review and have decided to initiate new rulemaking.  The Agencies file this motion to remand the NWPR without vacatur in lieu of filing a cross-motion for summary judgment/response to Plaintiffs' motion for summary judgment.

**D.     The Agencies' Review of the NWPR and Decision to Initiate New Rulemaking**

The Agencies promulgated the NWPR to define the phrase "waters of the United States," which appears in Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7).  On January 20, 2021, following the presidential transition, President Biden issued Executive Order 13990, entitled "Executive Order on Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis."  86 Fed. Reg. 7,037

(Jan. 25, 2021) ("EO 13990").  In relevant part, EO 13990 states that it is the policy of

the new administration:

> to listen to the science; to improve public health and protect
> our environment; to ensure access to clean air and water; to
> limit exposure to dangerous chemicals and pesticides; to hold
> polluters accountable, including those who disproportionately
> harm communities of color and low-income communities; to
> reduce greenhouse gas emissions; to bolster resilience to the
> impacts of climate change; to restore and expand our national
> treasures and monuments; and to prioritize both
> environmental justice and the creation of the well-paying
> union jobs necessary to deliver on these goals.

*Id*.  EO 13990 further directed federal agencies to "immediately review and, as

appropriate and consistent with applicable law, take action to address the promulgation of

Federal regulations and other actions during the last 4 years that conflict with these

important national objectives, and to immediately commence work to confront the

climate crisis."  *Id*.

As explained in the attached declarations, the Agencies have now reviewed the

NWPR pursuant to President Biden's direction in EO 13990 and have decided to initiate

new rulemaking to revise the definition of "waters of the United States."  Ex. 1,

Declaration of Radhika Fox ("Fox Decl.") ¶¶ 8–10; Ex. 2, Declaration of Jaime Pinkham

("Pinkham Decl.") ¶¶ 8–10.[2]

---

[2] The declarations of Radhika Fox and Jaime Pinkham were filed as exhibits in support of
the Agencies' motion to remand the NWPR without vacatur filed on June 9, 2021 in
*Conservation L. Found. v. EPA*, No. 1:20-cv-10820, ECF. Nos. 113-1 and 113-2 (D.
Mass. June 9, 2021).  They are attached hereto as Exhibits 1 and 2.

# STANDARD OF REVIEW

Agencies have inherent authority to reconsider past decisions and to revise, replace, or repeal a decision to the extent permitted by law and supported by a reasoned explanation. *FCC v. Fox Television Stations, Inc*., 556 U.S. 502, 515 (2009); *Trujillo v. Gen. Elec. Co.*, 621 F.2d 1084, 1086 (10th Cir. 1981) (noting that "the power to decide in the first instance carries with it the power to reconsider."); *Nat. Res. Def. Council v. Dep't of Int.*, 275 F.Supp. 2d 1136, 1141 (C.D. Cal. 2002).  Further, an agency's interpretation of a statute it administers is not "carved in stone" but must be evaluated "on a continuing basis," for example, "in response to . . . a change in administrations." *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) (internal quotation marks and citations omitted).  Voluntary remand is proper where an agency requests "a remand (without confessing error) in order to reconsider its previous position." *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001*); see also Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012).  In other words, remand should be granted so long as "the agency intends to take further action with respect to the original agency decision on review." *Limnia, Inc. v. Dep't of Energy*, 857 F.3d 379, 386 (D.C. Cir. 2017).

"[I]f the agency's concern is substantial and legitimate, a remand is usually appropriate." *Citizens Against the Pellissippi Pkwy. Extension, Inc. v. Mineta*, 375 F.3d 412, 417 (6th Cir. 2004).  "Generally, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith." *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (granting remand and citing *SKF USA Inc.*,

254 F.3d at 1029); *see also Limnia, Inc.*, 857 F.3d at 386 (holding that remand should be granted as long as "the agency intends to take further action with respect to the original agency action on review.").

Voluntary remand is appropriate when the request is reasonable and timely. *See Macktal v. Chao*, 286 F.3d 822, 826 (5th Cir. 2002); *see also Ariz. Pub. Serv. Co. v. EPA*, 562 F.3d 1116, 1122, 1131 (10th Cir. 2009) (granting EPA's motion for voluntary remand). In exercising its discretion to grant remand, a court may consider whether any party opposing remand would be unduly prejudiced. *FBME Bank Ltd. v. Lew*, 142 F. Supp. 3d 70, 73 (D.D.C. 2015).

## ARGUMENT

Remand is proper in this case because the Agencies have completed their review of the NWPR and have decided to initiate new rulemaking to define "waters of the United States." Fox Decl. ¶¶ 8–10; Pinkham Decl. ¶¶ 8–10. Remand would also conserve judicial resources and would not unduly prejudice the parties.

Additionally, holding further briefing on the 2019 Rule claims in abeyance until the Court rules on remand would also conserve judicial resources and would not unduly prejudice the parties.

## I. The Agencies Have Established Grounds for Voluntary Remand of the NWPR.

An agency may seek remand because it wishes to revisit its interpretation of the governing statute, the procedures it followed in reaching its decision, or the decision's relationship to other agency policies. *SKF USA Inc.*, 254 F.3d at 1028–29. The Agencies

seek remand for these exact reasons.  Pursuant to EO 13990, the Agencies conducted a review of the NWPR.  Fox Decl. ¶ 10; Pinkham Decl. ¶ 10.  Through that review, the Agencies "have identified substantial concerns with the NWPR and have determined that additional consideration should be given to certain aspects of the NWPR through notice-and-comment rulemaking."  Fox Decl. ¶ 10; Pinkham Decl. ¶ 10.

Voluntary remand is appropriate because the Agencies have identified "substantial and legitimate concerns" with the NWPR and intend to embark upon a rulemaking process to replace the rule.  *SKF USA Inc.*, 254 F.3d at 1029 ("[I]f the agency's concern [with the challenged action] is substantial and legitimate, a remand is usually appropriate").  The Agencies have explained that they have substantial concerns about certain aspects of the NWPR and the effects of the NWPR on the nation's waters, including whether the NWPR adequately considered the CWA's statutory objective in determining the scope of "waters of the United States" and, as a result, whether the process adequately considered the effects of the NWPR on the integrity of the nation's waters.  Fox Decl. ¶¶ 10, 12; Pinkham Decl. ¶¶ 10, 12.  For example, the Agencies have identified concerns about whether sufficient consideration was given to the impact of the NWPR's categorical exclusion of ephemeral waters.  Fox Decl. ¶ 14; Pinkham Decl. ¶ 14.  In addition, the Agencies have noted on-the-ground effects of the NWPR since the rule went into effect, which reinforces their conclusion that a new rulemaking in which the Agencies will reconsider issues of concern with the NWPR and its impacts is warranted.  Fox Decl. ¶¶ 15–20; Pinkham Decl. ¶¶ 15–20.

1    Remand would give the Agencies an opportunity to fully explore and address

2  these issues and the concerns of the parties and other stakeholders through the

3  administrative rulemaking process.  Fox Decl. ¶ 14; Pinkham Decl. ¶ 14.  Remand would

4  also allow the Agencies to develop a new administrative record, which would benefit the

5  Court and the parties if a new rule were to be litigated.  "[T]his kind of reevaluation is

6  well within an agency's discretion," *Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d

7
8  1032, 1038 (D.C. Cir. 2012) (citing *Fox Television Stations, Inc*., 556 U.S. at 514–15),

9  and courts should allow it.  *See Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414,

10
11  436 (D.C. Cir. 2018).

12    Moreover, deferring to the Agencies' new rulemaking process also promotes

13  important jurisprudential interests.  "In the context of agency decision-making, letting the

14  administrative process run its course before binding parties to a judicial decision prevents

15
16  courts from 'entangling themselves in abstract disagreements over administrative

17  policies, and . . . protect[s] the agencies from judicial interference' in an ongoing

18  decision-making process." *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir.

19
20  2012) (citation omitted).  Allowing the administrative process to run its course here will

21  let the Agencies "crystalliz[e] [their] policy before that policy is subjected to judicial

22  review," *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 49 (D.C. Cir. 1999),

23  and avoid "inefficient" and unnecessary "piecemeal review." *Pub. Citizen Health Rsch.*

24
25  *Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 30 (D.C. Cir. 1984) (citation and

26  internal quotation marks omitted).

27

Courts have granted remand in similar situations.  In *SKF USA Inc.*, the Federal Circuit found a remand to the Department of Commerce appropriate in light of the agency's change in policy.  254 F.3d at 1025, 1030.  Likewise, in *FBME Bank Ltd. v. Lew*, the District Court for the District of Columbia remanded a rule to the Department of the Treasury to allow the agency to address "serious 'procedural concerns,' " including "potential inadequacies in the notice-and-comment process as well as [the agency's] seeming failure to consider significant, obvious, and viable alternatives."  142 F. Supp. 3d at 73.

The Agencies are not requesting vacatur of the NWPR during the remand.  Vacatur rests in the sound discretion of the reviewing court and it depends on "the seriousness of the . . . deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed."  *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993) (internal citation and quotation marks omitted); *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d at 992 (same).  The Court may also consider other factors, including the likelihood that errors can be mended without altering the rule and "the balance of equities and public interest considerations."  *Cent. Me. Power Co. v. FERC*, 252 F.3d 34, 48 (1st Cir. 2001).  In light of the Agencies' stated intent to address their substantial concerns with the NWPR through a new rulemaking, the Agencies request that the Court order a remand and are not including a request for vacatur.

## II.    Granting Remand Conserves Judicial Resources

Granting remand here promotes judicial economy and conserves the parties' and the courts' resources.  Courts "have recognized that '[a]dministrative reconsideration is a more expeditious and efficient means of achieving an adjustment of agency policy than is resort to the federal courts.' "  *B.J. Alan Co. v. ICC*, 897 F.2d 561, 562 n.1 (D.C. Cir. 1990) (quoting *Commonwealth v. ICC*, 590 F.2d 1187, 1194 (D.C. Cir. 1978)).  "Remand has the benefit of allowing 'agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete.' "  *Util. Solid Waste*, 901 F.3d at 436 (quoting *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993)).  Allowing the Agencies to proceed with a new rulemaking allows them to address concerns with the NWPR through the administrative process.  The Agencies might resolve Plaintiffs' concerns through that process, potentially rendering unnecessary future litigation that could strain the courts' and parties' resources.  Remand would preserve those resources.

In addition, continuing to litigate this case wastes the Agencies' and the parties' resources in the present, resources that could be better spent on the rulemaking process.  Because many of the issues presently before the Court will be re-evaluated in the Agencies' new rulemaking, remand to the Agencies will allow the Agencies to focus their resources on the new rulemaking, with input from Plaintiffs and other interested stakeholders. Fox Decl. ¶ 14; Pinkham Decl. ¶ 14.  In particular, ongoing litigation could interfere with the Agencies' rulemaking, as the Agencies would have to prioritize pending litigation deadlines.  *See Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 43

(D.D.C. 2013) (because agency did "not wish to defend" the action, "forcing it to litigate the merits would needlessly waste not only the agency's resources but also time that could instead be spent correcting the rule's deficiencies.").

The Court need not resolve Plaintiffs' pending summary judgment motion, as the Agencies' new rulemaking may render some or all of the dispute moot.  The Agencies' new rulemaking may fully address and resolve Plaintiffs' concerns or, at least, narrow the issues if Plaintiffs were to challenge a new rule arising out of the new rulemaking.  Even if remand does not resolve all of the claims presented by Plaintiffs, subsequent judicial review will likely turn on a new and different record that will necessarily alter the nature of this Court's review.  Therefore, continuing to litigate the very same issues that the Agencies may resolve through a new rulemaking "would be inefficient," *FBME Bank*, 142 F. Supp. 3d at 74, and a waste of judicial resources.

**III.      Remand Would Not Prejudice the Parties.**

Remand would not prejudice any party.  The Agencies intend to consider and evaluate issues raised in various legal challenges to the NWPR during the rulemaking process, including arguments made by Plaintiffs.  Fox Decl. ¶¶ 8–10; Pinkham Decl. ¶¶ 8–10.  As addressed above, the Agencies may revise or replace the NWPR in a way that resolves Plaintiffs' claims.  Through their rulemaking process, the Agencies will consider the policies set forth in EO 13990 and intend to ensure that "waters of the United States" is defined in a manner consistent with the CWA's statutory objective.  In addition, Plaintiffs will have the opportunity to participate through the notice and

comment process by submitting comments on any new proposed rule.  Fox Decl. ¶ 10; Pinkham Decl. ¶ 10.

**IV.    Briefing on the 2019 Rule Claims Should Be Held in Abeyance.**

A district court "has inherent power to control the disposition of the cases on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants."  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  Judicial economy will best be served by allowing the Court the opportunity to rule on the Agencies' remand motion first and potentially dispose of the claims against the NWPR before deciding whether and to what extent Plaintiffs' remaining claims should be litigated.  The Agencies would be prejudiced if the requested abeyance is not granted. How the Agencies' forthcoming motion for remand without vacatur is resolved will play a significant role in how the Agencies ultimately respond to Plaintiffs' summary judgment motion.  Plaintiffs challenge not only the NWPR, but also the Agencies' prior effort to define "waters of the United States" under the Clean Water Act in the 2019 Rule.  The 2019 Rule is not in effect at this time, and the requested abeyance would last only until the motion for remand is decided.

Thus, requiring the Agencies to respond to Plaintiffs' motion for summary judgment now may cause the Agencies to take positions that might appear to pre-judge issues directly or indirectly related to Plaintiffs' claims against both rules.  Many of these issues will be reconsidered through the Agencies' forthcoming notice-and comment rulemaking to revise the definition of "waters of the United States."  Thus, requiring the Agencies to respond to the summary judgment motion before the Agencies' remand

DEFENDANTS' MOTION FOR VOLUNTARY REMAND WITHOUT VACATUR - 16

motion is decided will significantly prejudice the Agencies and could hamper their ability to appropriately consider a new rule defining "waters of the United States."

Accordingly, the Agencies request that the Court enter an order holding the 2019 Rule claims in abeyance.  Within 30 days after resolution of the remand motion, the parties will meet and confer and file a proposal or proposals for further proceedings. Plaintiffs oppose this request.  The Sackett intervenors take no position.  Intervenors-Defendants Arizona Rock Products Association, et al. state that all summary judgment briefing should be placed in abeyance pending resolution of this motion.

## CONCLUSION

The Agencies have identified numerous concerns with the NWPR, many of which have been raised by Plaintiffs in this case, and intend to evaluate those concerns through a new notice-and-comment rulemaking.  Fox Decl. ¶¶ 9–20; Pinkham Decl. ¶¶ 9–20. Where, as here, the Agencies have committed to reconsidering the challenged action, the proper course is remand to allow the Agencies to address their concerns through the administrative process.  The Agencies respectfully ask the Court to remand the NWPR, without vacatur, and dismiss the claims challenging the NWPR, rather than requiring the Agencies to litigate a rule that may be replaced.

Additionally, the Agencies request that the Court enter an order holding the 2019 Rule claims in abeyance, with the parties to meet and confer and file a motion or motions for further proceedings within 30 days after the Court decides the remand motion.

Respectfully submitted this 2nd day of July 2021.

DEFENDANTS' MOTION FOR VOLUNTARY REMAND WITHOUT VACATUR - 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

*/s/ Daniel Pinkston*
DANIEL PINKSTON
HUBERT T. LEE
United States Department of Justice
Environment and Natural Resources Division
Environmental Defense Section

FRED J. FEDERICI
Acting United States Attorney

*/s/ Manuel Lucero*
MANUEL LUCERO
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, NM 87103
(505) 224-1467
Manny.lucero@usdoj.gov

*Counsel for Defendants*

DEFENDANTS' MOTION FOR VOLUNTARY REMAND WITHOUT VACATUR - 18

**CERTIFICATE OF SERVICE**

  I hereby certify that on July 2, 2021, I electronically transmitted the foregoing to the Clerk of Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to registered counsel for all parties.


                      */s/ Daniel Pinkston*