Stuart C. Gillespie (CO Bar No. 42861) *(admitted pro hac vice)*
Alexandra O. Schluntz (MA Bar No. 704320) *(admitted pro hac vice)*
EARTHJUSTICE
633 17th Street, Suite 1600
Denver, CO 80202
(303) 996-9616
sgillespie@earthjustice.org
aschluntz@earthjustice.org

Janette K. Brimmer (WA Bar No. 41271) *(admitted pro hac vice)*
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA 98104
(206) 343-7340
jbrimmer@earthjustice.org

*Counsel for Plaintiffs Pascua Yaqui Tribe, Quinault Indian Nation,
Menominee Indian Tribe of Wisconsin, Tohono O'odham
Nation, Fond du Lac Band of Lake Superior Chippewa,
and Bad River Band of Lake Superior Chippewa*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA AT TUCSON

| | |
|---|---|
| Pascua Yaqui Tribe, *et al.*,<br>　　　　　Plaintiffs,<br>　　v.<br><br>United States Environmental Protection<br>Agency, *et al.*,<br>　　　　　Defendants,<br>　and<br><br>Arizona Rock Products Association, *et al.*,<br>　　　　　Intervenors-Defendants,<br>and<br><br>Chantell Sackett; Michael Sackett,<br>　　　　　Intervenors-Defendants. | Case No. 4:20-cv-00266-RM<br><br>Assigned Judge: Rosemary Márquez<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR VOLUNTARY REMAND WITHOUT VACATUR AND MOTION FOR ABEYANCE OF BRIEFING** |

Plaintiffs Pascua Yaqui Tribe, Quinault Indian Nation, Menominee Indian Tribe of Wisconsin, Fond du Lac Band of Lake Superior Chippewa, Tohono O'odham Nation, and Bad River Band of Lake Superior Chippewa ("Tribes") oppose the Army Corp of Engineers ("Corps") and U.S. Environmental Protection Agency's ("EPA") (together, "Agencies") Motion for Voluntary Remand of the NWPR Without Vacatur and Motion for Abeyance of Briefing on the 2019 Rule Claims. The Agencies' request would severely prejudice the Tribes by allowing the Agencies to escape judicial review, while continuing to implement the illegal Rule to eliminate long-standing Clean Water Act protections. Remand must therefore include the usual remedy of vacatur to prevent significant, irreversible harms to the Tribes. Alternatively, the Court should deny the Agencies' request for remand and instead order the parties to continue with summary judgment briefing on an accelerated schedule, in order to expeditiously resolve fundamental issues of law that will impact any future rulemaking.[1] The Court should simultaneously deny the Agencies' request to delay the litigation by holding part of the case in abeyance.

## BACKGROUND

Congress passed the Clean Water Act in 1972 with the stated purpose and goal to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). In 2017, however, President Trump directed the Agencies to exclude many waterbodies from those protections. Following that directive, the Agencies promulgated two related rules: the Repeal Rule[2] and Navigable Waters

---

[1] The Tribes have filed a separate motion to accelerate the deadlines for the last two rounds of briefs in the summary judgment briefing schedule.

[2] Definition of "Waters of the United States"—Recodification of Pre-Existing Rules, 84 Fed. Reg. 56,626 (Oct. 22, 2019).

Protection Rule ("Navigable Waters Rule" or "Rule").[3]

The Agencies have applied and continue to apply the Rule at a record-setting pace, excluding entire categories of waters from Clean Water Act protections against pollution or destruction. The Agencies themselves identify *at least* 333 projects nationwide that are no longer subject to Clean Water Act protections as a result of the Rule. ECF No. 72, Exs. 1 & 2 ¶ 15.

The Tribes challenged the Rule as contrary to the text, purpose, and structure of the Clean Water Act, as explained by the Supreme Court in *Rapanos v. United States*, 547 U.S. 715, 768 (2006) (Kennedy, J., concurring). *See* ECF No. 48, Pls.' Mem. Supp. Summ. J., at 16–26. The Tribes also demonstrated that the Rules are arbitrary and capricious due to the Agencies' failure to conduct a thorough, reasoned rulemaking based on sound science, an assertion with which the Agencies now agree. *Id.* at 26–45; ECF No. 72 Exs. 1 & 2 ¶¶ 12–14. The Tribes requested vacatur of the Rules to prevent significant harm to their interests and the Nation's waters. *Id.*

The Agencies attempted to hold the case in abeyance while they implemented the Rule to the Tribes' detriment, an attempt the Court rejected. *See* ECF. No. 32, Order Denying Abeyance. Now that the Tribes have filed their opening motion for summary judgment, the Agencies acknowledge "substantial and legitimate concerns" with the Navigable Waters Rule. ECF No. 72 Exs. 1 & 2 ¶ 13. They further admit that the Rule has caused and is causing "significant, ongoing and irreversible environmental damage" to the Tribes and Nation's waters. Email from Karen Gude, EPA (June 9, 2021), Gillespie Decl. Ex. A. Yet, the Agencies provide no commitment or timeline for remedying these harms. Instead, they ask this Court to dismiss the Tribes' challenge to

---

[3] The Navigable Waters Protection Rule, 85 Fed. Reg. 22,250 (Apr. 21, 2020).

the Rule and to leave the admittedly harmful Rule in place indefinitely by granting the extraordinary relief of remand *without* vacatur.  That request is but another effort to circumvent judicial review by allowing the Agencies to continue widely implementing the Rule while denying the Tribes the opportunity to seek relief in this Court.  Such a result is contrary to law and would irreversibly harm the Tribes' environmental and cultural interests.

Instead, the Court should vacate the Rule on remand, as the Agencies have not met their burden to show that "equity demands" leaving the rule in place.  In the alternative, if the Court declines to vacate the Rule, it should deny remand altogether and address the fundamental statutory interpretation questions at issue in this case.

## ARGUMENT

**I.  VACATUR IS THE APPROPRIATE REMEDY BECAUSE THE AGENCIES FAIL BOTH PRONGS OF THE TEST FOR REMAND WITHOUT VACATUR.**

Remand without vacatur is an unusual and disfavored remedy, ordered "only in 'limited circumstances.'"  *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015) (quoting *Cal. Cmties. Against Toxics v. EPA*, 688 F.3d 989, 994 (9th Cir. 2012)).  Remands, including voluntary remands, are typically accompanied by vacatur of the challenged rule; courts only leave agency actions in place "when equity demands." *Cal. Cmties. Against Toxics*, 688 F.3d at 992 (quoting *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995)); *see also ASSE Int'l, Inc. v. Kerry*, 182 F. Supp. 3d 1059, 1064 (C.D. Cal. 2016).  Because vacatur is the "ordinary remedy," the Agencies "bear[] the burden of demonstrating vacatur is inappropriate." *Nw. Env't Advocates v. EPA*, No. 3:12-cv-01751-AC, 2018 WL 6524161, at *3 (D. Or. 2018); *see also Ctr. for Env't Health v. Vilsack*, No. 15-cv-01690-JSC, 2016 WL 3383954, at *13 (N.D. Cal. June 20, 2016) ("[G]iven that vacatur is the presumptive remedy for a . . .

violation such as this, it is Defendants' burden to show that vacatur is unwarranted.").

When weighing the equities of leaving a challenged rule in place while an agency reconsiders, Ninth Circuit courts follow the two-part standard described in *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, 988 F.2d 146 (D.C. Cir. 1993). The *Allied-Signal* test evaluates both (1) the seriousness of the agency's errors, and (2) the potential disruptive consequences of vacatur. *Cal. Cmties. Against Toxics*, 688 F.3d at 992 (citing *Allied-Signal*, 988 F.2d at 150–51). In other words, "courts may decline to vacate agency decisions when vacatur would cause serious and irremediable harms that significantly outweigh the magnitude of the agency's error." *League of Wilderness Def./Blue Mountains Biodiversity Project v. U.S. Forest Serv.*, No. 3:10-CV-01397-SI, 2012 WL 13042847, at *2 (D. Or.  2012).

Here, the Agencies fail to meet the standard for remand without vacatur. In fact, the Agencies have not even attempted to meet their burden to show that the Rule should be left in place. *See* ECF No. 72, Defs.' Mot. Vol. Remand, at 9 (mentioning test for vacatur without applying it). Rather, both *Allied-Signal* factors strongly support the ordinary remedy of vacatur due to the Rule's serious flaws and the irreparable harm to the Tribes caused by its ongoing implementation, facts the Agencies have acknowledged.

### A.     The Agencies Admit Their Serious Errors Will Likely Result In A Different Outcome On Remand.

The seriousness of an agency's errors turns on "the extent of doubt whether the agency chose correctly." *Allied-Signal*, 988 F.2d at 150 (quoting *Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety and Health Admin.*, 9203 F.2d 960, 967 (D.C. Cir. 1990)). In other words, if the agency is likely to be able to justify its decision on remand, the errors were likely not serious and vacatur may not be appropriate. *See id.* at 150–51. But if the outcome of a rule is likely to change on remand, vacatur is warranted

to address the agency's serious errors while the agency reconsiders.  *Id.*; *see also Pollinator Stewardship Council*, 806 F.3d at 532.

Here, the Agencies committed a number of serious errors that are likely to change the outcome on remand.  Indeed, the Agencies do not dispute the seriousness of these errors: the Agencies have acknowledged "substantial and legitimate concerns" with the Rule.  ECF No. 72 at 11 (quoting *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001)).

First, the Navigable Waters Rule violates the Clean Water Act because the Rule is inconsistent with the text, purpose, and structure of the Act, as explained in Justice Kennedy's controlling opinion in *Rapanos*.  *See* ECF No. 48 at 16–26.

Second, the Agencies failed to consider undisputed science, including findings of their own experts demonstrating that the Rule is contrary to the purpose of the Clean Water Act.  *Id.* at 26–32.  The Agencies admit "significant concerns . . . about the sufficiency of the agencies' consideration of the effects of the [Rule] on the chemical, physical, and biological integrity of the nation's waters."  ECF No. 72, Exs. 1 & 2 ¶ 14. In fact, the Agencies go even further and essentially admit that the Rule did not properly consider the connectivity of ephemeral streams to downstream waters.  *Id.* ("[A]gencies are concerned that the [Rule] did not look closely enough at the effect ephemeral waters have on traditional navigable waters . . . ."); *see also* ECF No. 48 at 27–29 (arguing that the Agencies unlawfully ignored the Science Report when considering ephemeral streams).

Third, the Agencies failed to acknowledge and explain their change in position—a change that conflicts with the Agencies' own earlier findings.  ECF No. 48 at 32–34.

Fourth, the Rule is internally inconsistent, and its treatment of ephemeral streams

and wetlands is irrational. *Id.* at 34–37.

Fifth, the Agencies contravened their own guidance by failing to analyze the environmental justice implications of the Rule. *Id.* at 37–40.

Finally, the Rule's waste treatment exclusion violates the Clean Water Act. *Id.* at 40–45. As a result of these errors, the Rule is arbitrary, capricious, and contrary to law.

These serious errors go far beyond "mere technical or procedural formalities that the [Agencies] can easily cure." *Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin. Nat'l Marine Fisheries Serv.*, 109 F. Supp. 3d 1238, 1244 (N.D. Cal. 2015). Rather, the Agencies' errors go to the very core of the Rule, "contravening the purposes of the statute in question"—the Clean Water Act. *Or. Nat. Desert Ass'n v. Zinke*, 250 F. Supp. 3d 773, 774 (D. Or. 2017). These "fundamental flaws . . . make it unlikely that the same rule would be adopted on remand." *Pollinator Stewardship Council*, 806 F.3d at 532; *see also North Carolina v. EPA*, 531 F.3d 896, 929–30 (D.C. Cir. 2008) (vacating rule upon remand given agency's "fundamentally flawed" approach). In fact, the text, purpose, and structure of the Clean Water Act foreclose the Agencies from adopting the Rule's categorical exclusion of ephemeral streams. ECF No. 48 at 16–20. The Agencies are thus highly unlikely to be able to supply "better reasoning" on remand such that the "same rule would be adopted." *Pollinator Stewardship Council*, 806 F.3d at 532. Having acknowledged serious problems with the Rule, the Agencies intend to replace the Rule, ECF No. 72 at 11, effectively admitting there is no "serious possibility that [they] will be able to substantiate [their] decision on remand." *Allied-Signal*, 988 F.2d at 151. In light of the numerous, substantial issues with the Rule, as well as the Agencies' stated intentions, the outcome is virtually certain

to change on remand.  The seriousness of the Agencies' errors weighs heavily in favor of vacating the Rule.

**B.      Remand Without Vacatur Would Cause Significant Disruptive Consequences, Including Irreparable Harm to the Tribes.**

A remand without vacatur is only appropriate if the "disruptive consequences of an interim change" justify leaving a rule temporarily in place while the agency reconsiders it.  *Allied-Signal*, 988 F.2d at 150–51.  That is not the case here.  Allowing the Agencies to continue implementing the Rule would both (1) result in extensive environmental harms and (2) create legal turmoil.  By contrast, vacating the Rule would not cause significant disruptions and would ensure against irreparable harm to the Tribes.  Because vacatur would result in far fewer disruptions than leaving the Rule in effect, the Court should take the ordinary course of vacating the Rule.

**1.      *The rule will continue to cause extensive, irreversible damage to environmental and cultural resources.***

In weighing the consequences of remand with or without vacatur, courts favor the remedy that avoids environmental destruction.  *See, e.g.*, *Pollinator Stewardship Council*, 806 F.3d at 532 (vacating a challenged rule where leaving the rule in place "risks more potential environmental harm than vacating it"); *Idaho Farm Bureau Fed'n*, 58 F.3d at 1405–06 (choosing not to vacate because vacatur would risk potential extinction of a snail); *Cal. Cmties. Against Toxics*, 688 F.3d at 994 (choosing not to vacate because vacatur could lead to air pollution).  Here, vacatur is the only option that avoids devastating environmental harms due to the loss of Clean Water Act protections.

Without vacatur, the Rule will continue to harm the Tribes' environmental and cultural interests given the Agencies' active, ongoing efforts to implement the Rule and unlawfully eliminate Clean Water Act protections.  In implementing the Rule, the

Agencies have stripped long-standing protections for waters of the United States and revised jurisdictional determinations to allow projects to proceed without Clean Water Act permits.  For example, the Corps relied on the Rule to revoke Clean Water Act jurisdiction over the waters on the Rosemont Mine site in the Santa Rita Mountains of southern Arizona.  *See* ECF No. 31, 2d Not. Supp. Info.  That reversal—fast-tracked by the Agencies without tribal consultation, *see* ECF No. 48.1, Nunez Decl. ¶ 26—violates the Clean Water Act and threatens irreparable harm to the Tohono O'odham Nation and Pascua Yaqui Tribe, who have relied on the sites' life-giving waters for thousands of years.  ECF No. 26.1, Nunez Decl. ¶¶ 8–11.  Not only are the environmental harms severe and irreversible, but the legal impacts are long-lasting as well.  Jurisdictional determinations, like the one issued for the Rosemont site, are valid for five years.  ECF No. 31.1, 2d Not. Supp. Info. Ex. 1, at 2.  Vacatur is necessary to safeguard against the irreparable harms caused by the Rule.

Rosemont is far from the only example of the Corps' efforts to apply the Rule in order to eliminate Clean Water Act protections.  The Agencies concede that *at least* 333 projects would have been subject to Section 404 permitting requirements prior to the Rule's promulgation, but no longer are.  ECF No. 72, Exs. 1 & 2 ¶ 15.  That number is likely a significant underestimate that does not reflect "the full universe of projects" that have lost protections under the Rule, because many project proponents may not bother seeking a jurisdictional determination for newly excluded waters.  *Id.*  Of the individual water resources for which the Corp made approved jurisdictional determinations under the Rule, a staggering 76% were found to be *non-jurisdictional*—that is, the Corps denied them the protections of the Clean Water Act for all time should the project proceed.  *Id.* Of more than *1,500 streams* assessed in New Mexico and Arizona, "*nearly every one has*

*been found to be a non-jurisdictional* ephemeral resource,"—i.e., unprotected—"which is very different from the status of the streams as assessed under both the Clean Water Rule and the pre-2015 regulatory regime." *Id.* ¶ 16.

Acknowledging the severity of these numbers, EPA additionally confesses that the Rule "is causing significant, ongoing and irreversible environmental damage."  Gillespie Decl., Ex. A.  The water resources that have been stripped of protections—many of which are ephemeral streams and non-adjacent wetlands, such as those at risk from the Rosemont Mine and the PolyMet mine upstream of the Fond du Lac tribe—are at serious risk of "cascading and cumulative downstream effects" while the Rule remains in effect. ECF No. 72, Exs. 1 & 2 ¶ 20; *see also* ECF No. 48 at 22–24, 27–28.

Worse yet, the Agencies estimate that the Rule's harms are *even greater* than the already-extensive harms previously anticipated by the Agencies when the Rule was promulgated.  ECF No. 72, Ex. 1 & 2 ¶ 15.  These harms are particularly severe for the Tribes due to the profound spiritual importance of water to their cultures.  *See* ECF Nos. 48.1–48.5, Nunez, Howes, James, Reiter, & Vega Decls.  While the Rule is in place, the harm will accumulate.  Given these severe, environmental harms, the Agencies have not shown that the unusual remedy of remand without vacatur is warranted.

## 2.  *Leaving the rule in effect will cause legal turmoil, while vacatur will not cause significant regulatory disruption.*

Beyond grave environmental harm, leaving the Rule in place would also result in increased legal disruptions.  Remand without vacatur would leave the Agencies subject to the Rule and tasked with continuing to implement it—all while the current administration acknowledges that the Rule is not based upon sound science and is riddled with errors. That outcome is untenable as it would lead to suspect and possibly unsupportable regulatory decisions with serious environmental consequences.  That is bad for all

involved.  In addition, the Agencies have offered no timeline for a new rulemaking—the Rule could remain in effect for several years while the administration reconsiders the Rule on remand.  *See infra* pp. 13–14.

In contrast, vacatur of the Rule would return the regulatory framework to the regime set forth in the pre-2015 regulations.[4]  This "familiar, if imperfect" regime governed the definition of waters of the United States for decades.  *In re EPA*, 803 F.3d 804, 808 (6th Cir. 2015), *vacated sub nom. In re U.S. Dep't of Def.*, 713 F. App'x 489 (6th Cir. 2018).  As a result, federal agencies have extensive experience implementing the pre-2015 regulations and years of experience with the 2008 *Rapanos* Guidance.  The Agencies would not therefore experience significant disruptions and projects would not suffer significant delays by reverting to the pre-2015 rules that have controlled Clean Water Act jurisdiction for at least 30 of the last 35 years.

Returning to that status quo would therefore result in the least disruption for agencies, industry, and the courts, while mitigating the environmental harm caused by the Rule.  *See Cal. by & Through Becerra v. Azar*, 501 F. Supp. 3d 830, 843 (N.D. Cal. 2020) ("[V]acating the agency's action simply preserves a status quo that has existed since at least the early 1990's while the agency takes the time it needs to give proper consideration to the matter."); *see also Burke v. Coggins*, 2021 WL 638796, at *10 (D.D.C. Feb. 18, 2021) ("[R]eturn to the status quo causes little or no disruption.").

By contrast, the Agencies fail to demonstrate that vacatur would result in such

---

[4] The pre-2015 rules were promulgated in 1986.  Their application was informed through guidance developed by the Agencies after the *Rapanos* decision.  The Obama Administration Clean Water Rule, 80 Fed. Reg. 37,054 (June 29, 2015), took effect in 2015 and while immediately stayed in some jurisdictions (allowing the pre-2015 rule to continue to control), it was in effect in other states until its full repeal in 2019.  From 2019 to 2020, the 2015 rules again applied.

"serious and irremediable harms that [they] significantly outweigh the magnitude of the [Agencies'] error." *Klamath-Siskiyou Wildlands Ctr.*, 109 F. Supp. 3d at 1242 (citation omitted).  Instead, the Agencies argue that remand without vacatur would result in few disruptions because letting the administrative process "run its course" would protect the Agencies' decision-making process from "judicial interference."  ECF No. 72 at 12 (quoting *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386–87 (D.C. Cir. 2012)).  But the Agencies' concerns about "judicial interference" are misplaced.  Vacating and remanding the Rule "does not dictate how the agency should comply with the law in the future.  Rather, it leaves to the agency the discretion of how to appropriately proceed . . . ." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Pena*, No. 3:12-cv-02271-HZ, 2015 WL 1567444, at *5 (D. Or. Apr. 6, 2015).  The Court would thus not be interfering with the Agencies' process; the Agencies would be free to revisit the analysis underpinning the Rule and correct the numerous underlying problems.

Furthermore, the Agencies' argument is insufficient to justify departing from the ordinary remedy of remand with vacatur.  The Agencies have not given any "indication that [they] . . . or anyone else would be seriously harmed or disrupted" if the Rule were vacated.  *ASSE Int'l, Inc.*, 182 F. Supp. 3d at 1065.  Even if vacatur resulted in some additional burden to the Agencies or delay to projects (an inaccurate proposition, as explained above), such "possible procedural difficulties" do not "warrant departure from the default of vacatur."  *AquAlliance v. U.S. Bureau of Reclamation*, 312 F. Supp. 3d 878, 882 (E.D. Cal. 2018).  The Court should therefore remand and vacate the Rule to ensure that waters of the United States are protected while the Agencies revisit the Rule.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## II.   IN THE ALTERNATIVE, THE COURT SHOULD DENY THE AGENCIES' MOTION TO REMAND AND ADDRESS THE MERITS.

### A.   The Court Has Discretion To Deny The Remand Request.

Courts have broad discretion to deny an agency's remand request when the legal issue concerns an issue of statutory interpretation: discretion to deny remand applies if "the agency is either compelled or forbidden by the governing statute to reach a different result" than the challenged decision.  *SKF USA*, 254 F.3d at 1029; *see also N. Coast Rivers All. v. U.S. Dep't of the Interior*, No. 1:16-cv-00307-LJO-MJS, 2016 WL 8673038, at *3 (E.D. Cal. Dec. 16, 2016) ("Courts in [the Ninth Circuit] generally look to the Federal Circuit's decision in *SKF USA* for guidance when reviewing requests for voluntary remand.").

Here, the Court has discretion to deny a remand because the Agencies are compelled by the Clean Water Act to reach a different result than the Rule.  *See SKF USA*, 254 F.3d at 1029.  The Navigable Waters Rule unlawfully contravenes the Clean Water Act.  *See* ECF No. 48 at 16–26.  The Rule utilizes a test invented by Justice Scalia—a test that a majority of Supreme Court justices rejected as "inconsistent with the [Clean Water] Act's text, structure, and purpose."  *Rapanos*, 547 U.S. at 776 (Kennedy, J., concurring); *see id.* at 800 (Stevens, J., dissenting).  As Justice Kennedy explained, while Congress "could draw a line to exclude irregular waterways," as the Rule did by excluding, for example, ephemeral streams, "nothing in the statute suggests [Congress] has done so."  *Id.* at 770.  Rather, Congress took "[q]uite the opposite" approach.  *Id.* The four-justice dissent also rejected Justice Scalia's test as a "statutory invention" lacking "support in the language and purposes of the Act or in our cases interpreting it." *Id.* at 800–04 (Stevens, J., dissenting) (quoting *id.* at 768 (Kennedy, J., concurring)).

Because a majority of the Supreme Court has rejected the Rule's "relatively

permanent waters" test, this case presents a situation where the Agencies are "compelled

. . . by the governing statute to reach a different result."  *SKF USA*, 254 F.3d at 1029.

The Court thus has discretion to deny voluntary remand and instead proceed to the merits

on summary judgment.

### B.     Denial Of The Remand Would Offer Legal Certainty And Avoid Undue Prejudice To The Tribes.

Given the Court's discretion in this matter, denial of voluntary remand is entirely

appropriate.  First, by continuing with summary judgment, the Agencies will benefit from

the Court's reasoning as they proceed with a new rulemaking.  *See Wagner v. Principi*,

370 F.3d 1089, 1092–97 (Fed. Cir. 2004) (exercising discretion to reach the merits of a

statutory interpretation issue, rather than granting a voluntary remand).  Rather than

potentially committing the same legal errors that underpin the Navigable Waters Rule,

the Agencies would be able to craft a new rule grounded in this Court's legal analysis.

Second, as explained in detail above, denial of the remand without vacatur is

necessary to avoid undue prejudice to the Tribes.  *See, e.g.*, *Util. Solid Waste Activities

Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018) (denying voluntary remand where

remand would prejudice environmental petitioners); *FBME Bank Ltd. v. Lew*, 142 F.

Supp. 3d 70, 73–75 (D.D.C. 2015) (granting voluntary remand where injunction against

the challenged rule would remain in place, thus minimizing prejudice); *Nat. Res. Def.

Council v. Norton*, No. 1:05-CV-01207 OWW LJO, 2007 WL 14283, at *5, *12 (E.D.

Cal. Jan. 3, 2007) (taking judicial notice of unpublished order "refus[ing] to authorize a

voluntary remand where the agency refused to withdraw its [action]").  As explained,

agencies can take years on remand to replace unlawful rules, and here the Agencies have

not offered a concrete timeline for their efforts on remand.  *Cf. Util. Solid Waste

Activities Grp.*, 901 F.3d at 437 (concluding that EPA had satisfied a requirement for

remand where EPA had submitted a proposed timeline for reconsideration to the court). EPA includes the new rulemaking in its "Long-Term" agenda[5]—meaning that the Agencies do not "expect to have a regulatory action within . . . 12 months."[6]  Without vacatur, a remand would lock in years' worth of future damage to environmental and cultural resources across the country.

The Agencies claim that remand would not prejudice the Tribes because of the possibility that a new rulemaking might address the Tribes' claims.  ECF No. 72 at 14–15.  But a new rulemaking would do nothing to address the ongoing, severe harms caused by the Rule in the interim, including the jurisdictional determinations made under the Rule such as for the Rosemont Mine.  Instead, remand would allow these decisions to remain in place, eliminating critical Clean Water Act protections.  Further, it is far from assured that a new administrative process would resolve the parties' concerns.  Remand without vacatur would prejudice the Tribes by causing immeasurable permanent damage to their environmental and cultural interests while simultaneously jettisoning the Tribes' opportunity for relief and leaving their futures uncertain.  The Court should deny the Agencies' request for remand and order the Agencies to continue with summary judgment briefing for both Rules.

### C.    The Agencies' Other Arguments Are Equally Unconvincing.

In support of their motion, the Agencies argue, wrongly, that remand without

---

[5] *See* Office of Info. & Regul. Affairs, View Rule – Revised Definition of "Waters of the Untied States,"
https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202104&RIN=2040-AG13 (last visited June 24, 2021) (listing "Agenda Stage" as "Long-Term Actions" and noting that the "Timetable" is "To Be Determined").

[6] Office of Info. & Regul. Affairs, *Spring 2021 Unified Agenda of Federal Regulatory and Deregulatory Actions*,
https://www.reginfo.gov/public/do/eAgendaHistory?operation=OPERATION_GET_PUBLICATION&showStage=longterm&currentPubId=202104 (last visited June 24, 2021).

14

vacatur will promote "jurisprudential interests."  ECF No. 72 at 12.  For example, they state their preference to "avoid tak[ing] positions on merits questions."  *Id.* at 2.  But the Agencies have already taken a public position on the substantial problems with the Navigable Waters Rule, expressing "significant concerns" that they did not sufficiently consider the Rule's effects on "the integrity of the nation's waters."  *Id.* Exs. 1 & 2 ¶ 14.  In fact, the Agencies acknowledge that their decision-making process was deficient: they "explicitly and definitively . . . did not rely on agency documents in the record that provided some limited assessment of the effects of the rule on water quality."  *Id.* ¶ 12.  The Agencies additionally express "substantial and legitimate concerns" about whether the Rule adequately considered the Clean Water Act's statutory goals.  *Id.* ¶ 13 (citing *Cnty. of Maui, Haw. v. Haw. Wildlife Fund*, 140 S. Ct. 1462, 1468-69 (2020)).  In light of these admissions, the Agencies cannot now turn to the Court and proclaim that they would like to avoid taking a position on the Rule, all while continuing to implement its unlawful provisions.  Further, if litigation in this case continues, the Agencies can simply choose not to defend the Rule due to its numerous errors.

The Agencies also claim that, because they do not wish to defend the Rule, forcing them to litigate this case would waste Agency resources and affect judicial economy.  ECF No. 72 at 14.  But these concerns cannot override the reality that the Agencies seek to continue implementing the Rule while they conduct their review at their leisure (all while offering no assurances about the timing or substance of a potential new rule).  The Agencies cannot "'have it both ways,' by being permitted to operate under the challenged [agency action] while maintaining that all litigation regarding [the action] should cease."  *Nat. Res. Def. Council*, No. 1:05-CV-01207 OWW LJO, 2007 WL 14283, at *12.  Litigating this case would not "wast[e] the courts' and the parties' resources," as the

Agencies suggest.  ECF No. 72 at 14 (quoting *Util. Solid Waste Activities Grp.*, 901 F.3d at 436).  Quite the opposite: litigating this case would fulfill the Court's fundamental purpose by safeguarding the Tribes' avenue for protecting their interests from the irreparable harm that is certain to occur if the Rule is remanded without vacatur.[7]

## III.  THE COURT SHOULD DENY THE AGENCIES' ABEYANCE REQUEST.

The Agencies have requested that the Court hold briefing on the Repeal Rule in abeyance while the Court considers their remand motion.  The Court should deny the Agencies' requested stay, which would cause harm to the Tribes, would not avoid hardship to the Agencies, and would not contribute to judicial economy.

A stay would harm the Tribes by delaying resolution of the Tribes' claims while the Rules remain in force across the country, contributing to irreparable environmental and cultural resource damage.  *See supra* pp. 7–9.  In light of these severe harms, Agencies must "make out a clear case of hardship or inequity in being required to go forward."  *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

The Agencies have failed to meet their burden.  The Agencies argue that, without a stay, they will be forced to "pre-judge" issues that will be reconsidered through a potential new rulemaking.  ECF No. 72 at 16.  Yet the Agencies ask only for a stay of briefing for the Repeal Rule—not for the Navigable Waters Rule.  Pausing briefing on one rule while briefing continues for the other would not avoid hardships for the

---

[7] If the Court remands the Rule, the entire Rule must be remanded, contrary to suggestions by the Sacketts.  Even where plaintiffs challenge "only discrete portions" of a rule, if the rule is "one, integral action," all of its components "must stand or fall together."  *Wood v. Betlack*, No. CV-12-08098-PCT-DGC, 2012 WL 4762466, at *5 (D. Ariz. Oct. 5, 2012) (quoting *North Carolina*, 531 F.3d at 929).  Here, the Tribes challenge the entire Rule and the Repeal Rule (which constitute a single, integral agency action)—not just discrete portions.

Agencies or promote judicial economy.[8]  In addition, briefing on the Rules must continue on the same schedule because the Rules were promulgated as part of a single, unified effort to rollback Clean Water Act Protections.  *See* ECF No. 48 at 46–47.

The Agencies' expressed desire to avoid the hardship of briefing is further undercut by their own delay.  The Agencies first announced their plans to reconsider the Navigable Waters Rule on June 9.[9]  That same day, the Agencies filed a motion for voluntary remand in the District of Massachusetts.  *See* Defs.' Mem. Law Supp. Mot. Vol. Remand, ECF No. 113, *Conservation Law Found. v. EPA*, No. 20-cv-10820-DPW (D. Mass. June 9, 2021).  The declarations filed in this case are exact replicas and the Motion bears heavy similarities to the filing in Massachusetts.  The Agencies could have promptly moved for remand more than three weeks ago, thereby allowing time for the Court to address the issues prior to briefing.  Rather than rewarding the Agencies for delay, the Court should deny the Agencies' request for abeyance.

## CONCLUSION

The Court should again reject the Agencies' attempts to delay this case.  *See* ECF. No. 32.  To ensure that the Agencies do not preclude judicial review of a rule that they are actively applying, the Court should vacate and remand the Rule.  Alternatively, if the Court does not vacate the Rule, it should deny remand and order the parties to proceed with summary judgment briefing for both the Repeal and the Navigable Waters Rules.  Finally, the Court should deny an abeyance on briefing for the Repeal Rule.

---

[8] This Court has already denied the Agencies' attempt to bifurcate briefing on the Rules, which would have disserved judicial economy and hamstrung this Court's review.  *See* ECF No. 19 at 3–7.  Instead, the Court consolidated briefing of both Rules.  ECF No. 20.
[9] Press Release, Env't Prot. Agency, EPA, Army Announce Intent to Revise Definition of WOTUS (June 9, 2021), https://www.epa.gov/newsreleases/epa-army-announce-intent-revise-definition-wotus.

DATED:  July 9, 2021

s/ Janette K. Brimmer
Janette K. Brimmer, WSBA # 41271
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA  98104
(206) 343-7340
jbrimmer@earthjustice.org

Stuart C. Gillespie, CO # 42861
Alexandra O. Schluntz, MA # 704320
EARTHJUSTICE
633 17th Street, Suite 1600
Denver, CO 80202
(303) 996-9616
sgillespie@earthjustice.org
aschluntz@earthjustice.org

*Counsel for Pascua Yaqui Tribe,
Quinault Indian Nation, Fond du Lac
Band of Lake Superior Chippewa,
Menominee Indian Tribe of Wisconsin,
Tohono O'odham Nation, and Bad River
Band of Lake Superior Chippewa*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of July, 2021, I electronically filed the

foregoing **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR**

**VOLUNTARY REMAND WITHOUT VACATUR AND MOTION FOR**

**ABEYANCE OF BRIEFING** with the Clerk of the District Court using the CM/ECF

system, which will send notice of this filing by e-mail to all counsel of record.

Daniel Pinkston, CO #11423
999 18th Street,
South Terrace, Suite 370,
Denver, CO 80202
daniel.pinkston@usdoj.gov
Phone: (303) 844-1804
Facsimile: (303) 844-1350

*Attorney for Defendants*

Bradley J. Glass (022463)
Stuart S. Kimball (026681)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
brad.glass@gknet.com
stuart.kimball@gknet.com
Phone: (602) 530-8000
Facsimile: (602) 530-8500

*Attorneys for Intervenors-Defendants*
*Arizona Rock Products Association, et al.*

JAMES M. MANLEY, Ariz. Bar. No. 031820
Pacific Legal Foundation
3241 E Shea Boulevard, # 108
Phoenix, Arizona 85028
jmanley@pacificlegal.org
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

ANTHONY L. FRANÇOIS, Cal. Bar. No. 184100*
CHARLES T. YATES, Cal. Bar No. 327704*
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
afrancois@pacificlegal.org
cyates@pacificlegal.org
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

*Attorneys for Intervenors-Defendants*
*Chantell and Michael Sackett*

s/ Janette K. Brimmer