JAMES M. MANLEY, Ariz. Bar. No. 031820
Pacific Legal Foundation
3241 E Shea Boulevard, # 108
Phoenix, Arizona 85028
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
jmanley@pacificlegal.org

ANTHONY L. FRANÇOIS, Cal. Bar. No. 184100*
CHARLES T. YATES, Cal. Bar No. 327704*
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
afrancois@pacificlegal.org
cyates@pacificlegal.org

*Attorneys for Defendant-Intervenors
Chantell and Michael Sackett*

*pro hac vice*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pascua Yaqui Tribe, et al., <br>                            Plaintiffs, <br> v. <br> United States Environmental Protection Agency, et al., <br>                            Defendants, <br> and <br> Arizona Rock Products Association, et al., <br>                            Defendants-Intervenors, <br> and <br> Chantell Sackett; Michael Sackett, <br>                            Defendant-Intervenors. | No. CV-20-00266-TUC-RM <br><br> **DEFENDANT-INTERVENORS THE SACKETTS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION FOR REMAND** |

## INTRODUCTION

Defendant-Intervenors Chantell and Michael Sackett (the Sacketts) oppose the United States Environmental Protection Agency (EPA) and the United States Army's (Army) (together "the Agencies") motion for voluntary remand to the extent it seeks remand of the "adjacent wetlands" provisions of the Navigable Waters Protection Rule, 85 Fed. Reg. 22,250 (Apr. 21, 2020) (Rule). They also oppose Plaintiffs' Pascua Yaqui Tribe, *et al.*'s (the "Tribes") request that the Rule be vacated in the event it is remanded.

This case centers on the Agencies' decades-long failure to define "navigable waters" within the meaning of the Clean Water Act. The Tribes claim that the Agencies abused their discretion and contravened the Clean Water Act by adopting a narrow interpretation of "navigable waters" in the Rule. In their defense the Agencies have consistently argued that the Rule was an allowable exercise of agency discretion, entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, and *National Cable & Telecommunications Association v. Brand X Internet Services*. And, by implication of the Agencies' defense, the Rule is subject to revision in the future. Now, by asking for remand of the Rule, the Agencies ask this Court to implicitly affirm their claimed discretion to revise the definition of "navigable waters" (for the fourth time in six years).

But as to the Rule's definition of "adjacent wetlands," the Agencies have no such discretion. A plain reading of the text of the Clean Water Act, as authoritatively interpreted by the Supreme Court, precludes the Agencies from regulating wetlands that do not directly abut other regulable water bodies. Since the Agencies' decision to exclude most non-abutting wetlands was nondiscretionary, that provision of the Rule cannot be expanded by the Agencies on remand.

This Court need not and should not remand the entire Rule. Briefing on the merits of the legality of the Rule's exclusion of non-abutting wetlands from Agency authority is well underway. And considering the Agencies' stated intention to revisit the "adjacent wetlands" provisions of the Rule on remand, that controversy remains live and in need of resolution. This Court should exercise its discretion to deny remand of the Rule's "adjacent

wetlands" definition and determine this question of statutory construction on the merits.

For the same reasons, the Court should reject the Tribes' request that the "adjacent wetlands" provisions of the Rule be vacated without adjudication on the merits. While vacatur may be the ordinary remedy for a violation of the Administrative Procedure Act (APA), it can only follow an adjudication of the merits of such a claim. The Tribes have filed their opening brief on summary judgment and have argued (in the alternative to requesting vacatur) that this Court should adjudicate the merits of their APA claims. The Court cannot give the Tribes an APA remedy before all parties have had a full and fair chance to litigate and the Court has decided the merits.

## BACKGROUND

The following background of the Rule is necessary to evaluate the context of the Agencies' motion to remand.

### I. The Clean Water Act and the Agencies' Historic Failure To Define "Navigable Waters"

This case centers on EPA and the Army's decades-long attempt to define "navigable waters" as used in the Clean Water Act without violating the statute or the Constitution. That Act, 33 U.S.C. § 1251, *et seq.*, regulates discharges of "pollutants" from "point sources" to "navigable waters." 33 U.S.C. §§ 1311(a), 1362(12). The Act defines "navigable waters" as "waters of the United States, including the territorial seas." *Id.* § 1362(7). Although the Act defines "territorial seas," it does not otherwise define "waters of the United States." *Id.* § 1362(8).

Despite the need for a durable and legally sound definition of "navigable waters," there have been many failed attempts over the years. As a result, the scope of the Agencies' control over Americans' property has remained in a near constant state of flux. This is especially true of non-navigable wetlands. In 1986, the Army adopted a definition that stretched "navigable waters" to include all non-navigable wetlands "adjacent" (broadly defined as "bordering, contiguous, or neighboring") to any other regulated waters. *See* 33 C.F.R. § 328.3 (1987) (the 1986 Regulations); *id.* § 328.3(a)(7) & (c) (1987) (defining

"adjacent wetlands").

In 2006, a divided Supreme Court rejected this definition as exceeding the scope of the statutory term "navigable waters." *Rapanos v. United States*, 547 U.S. 715, 739 (2006). In assessing the legality of the 1986 Regulations, a four-Justice plurality determined that the language, structure, and purpose of the Clean Water Act restrict federal authority over non-navigable wetlands to only those that physically abut relatively permanent and continuously flowing waters, with an immediate surface water connection making the wetland and water body "indistinguishable." *Id.* at 755.

Justice Kennedy provided a fifth vote rejecting the 1986 Regulations' definition of "adjacent wetlands" as overbroad, joining the plurality in the judgment. But he proposed a broader interpretation of "navigable waters" than the plurality: the "significant nexus" test. *Id.* at 759 (Kennedy, J., concurring). Under this view, the government can regulate a non-abutting wetland if it significantly affects the physical, chemical, and biological integrity of a navigable-in-fact waterway. *Id.* at 779–80 (Kennedy, J., concurring). Wetlands may be analyzed under this standard either standing alone or in combination with features "similarly situated" within an otherwise undefined "region." *Id.* at 780 (Kennedy, J., concurring).

After several years of effort to address *Rapanos*, EPA and the Army adopted new regulations in 2015 redefining "navigable waters," including a new and very broad definition of "adjacent wetlands." 33 C.F.R. § 328.3 (2016); 80 Fed. Reg. 37,054 (June 29, 2015) (the 2015 Rule). Several lawsuits challenged the 2015 Rule. On August 21, 2019, the U.S. District Court for the Southern District of Georgia ruled that the 2015 Rule violated the Clean Water Act and permanently enjoined it. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336, 1382–83 (S.D. Ga. 2019). A short time later, partially in response to *Georgia v. Wheeler*, the Agencies published a regulation that repealed the 2015 Rule and readopted the 1986 Regulations. 84 Fed. Reg. 56,626 (Oct. 22, 2019) (the 2019 Repeal Rule).

///

## II. The Navigable Waters Protection Rule and the Exclusion of Non-Abutting Wetlands from Federal Authority

On April 21, 2020, EPA and the Army again redefined "navigable waters" by publishing the Navigable Waters Protection Rule at issue in this case. 85 Fed. Reg. 22,250 (Apr. 21, 2020). This Rule defines "navigable waters" as comprising four separate categories: "the territorial seas," "tributaries," "lakes and ponds, and impoundments of jurisdictional waters," and "adjacent wetlands," 33 C.F.R. § 328.3(a). The Rule also lists features that are not "navigable waters," 33 C.F.R. § 328.3(b), and defines terms used in the operative text of the Rule, 33 C.F.R. § 328.3(c).[1] The Rule defines "adjacent wetlands" as wetlands that abut or are flooded by other regulated waters or are physically separated from such waters only by natural barriers or by permeable artificial barriers. 33 C.F.R. § 328.3(c)(1)(i)–(iv). The Rule excludes from federal authority most wetland features that do not directly abut other regulable water bodies. Many of these "excluded" wetlands were regulated under prior broader definitions of "adjacent wetlands."

## III. This Lawsuit

On June 22, 2020, the Tribes filed this lawsuit to challenge the Navigable Waters Protection Rule. *See* ECF No. 1. The Tribes allege that in excluding previously regulated non-abutting wetlands from federal authority, the Agencies engaged in arbitrary decision-making and abused their discretion, and that the Rule's exclusion of non-abutting wetlands from Agency authority violates the Clean Water Act. *See* ECF No. 1 ¶¶ 94(c), 101. The Tribes ask this Court to declare that the Rule is unlawful and vacate it. *Id.* at 37–38.

On January 20, 2021, while this lawsuit was pending, President Biden signed Executive Order 13990. *See* 86 Fed. Reg. 7037, 7037 (Jan. 25, 2021), which directs the

---

[1] Subsequent references to 33 C.F.R. § 328.3 and its subdivisions are, unless indicated otherwise, to the version published in the Federal Register on April 21, 2020, at 85 Fed. Reg. at 22,338–39, and the identical provisions at 40 C.F.R. § 120.2, published the same date at 85 Fed. Reg. at 22,340–41. 40 C.F.R. § 120.2(3)(i) corresponds to 33 C.F.R. § 328.3(c)(1). For ease of reference, and to demonstrate the severability of the portions of the Rule defining "adjacent wetlands," the Sacketts have attached a reproduction of the full text of 33 C.F.R. § 328.3, as Exhibit 1 to this filing.

heads of the Agencies to "review all existing regulations . . . promulgated . . . between January 20, 2017, and January 20, 2021," and "consider suspending, revising, or rescinding" any actions inconsistent with the policies of the new administration. *Id.* On February 18, 2021, the Agencies moved to hold this case in abeyance for ninety days. ECF No. 25. That motion was denied on April 12, 2021, and the case instead proceeded to merits briefing. ECF No. 32.

On May 5, 2021, this Court granted a group of trade associations, led by the Arizona Rock Products Association (the "Business Intervenors"), leave to intervene to defend the interests of their Arizona members. *See* ECF No. 43. On May 7, 2021, the Sacketts—who have fought a fourteen-year battle with EPA over permission to build a house on their vacant residential lot in Priest Lake, Idaho, which EPA claims is occupied by a federally regulated wetland—moved unopposed to intervene to defend the Rule's definition of "adjacent wetlands" because that definition rightly excludes their property. *See* ECF No. 44 at 3–4; ECF No. 45 ¶¶ 10–12, 16–20 (Declaration of Chantell Sackett). On May 14, 2020, the Sacketts were granted leave to intervene, and their Answer to the Tribes' complaint was filed the same day. *See* ECF Nos. 70–71.

On May 11, 2021, the Tribes filed their opening brief on summary judgment. *See* ECF Nos. 47–68. Almost one month later, on June 9, 2021, following review under Executive Order 13990, the Agencies announced that they would rewrite the definition of "navigable waters" yet again. *See EPA, Army Announce Intent to Revise Definition of WOTUS*, EPA News Releases (June 9, 2021), https://www.epa.gov/newsreleases/epa-army-announce-intent-revise-definition-wotus. Shortly thereafter, on July 2, 2021, the Agencies moved for voluntary remand without vacatur, ECF No. 72, in lieu of a response to the Tribes' motion for summary judgment, ECF No. 72 at 2, 7. In support of their motion, the Agencies submitted declarations describing the outcome of their review of the Rule. *See* ECF Nos. 72-1 (Declaration of Radhika Fox), 72-2 (Declaration of Jaime Pinkham). Pertinent to the controversy between the Tribes and the Sacketts over the Rule's definition of "adjacent wetlands," the Agencies expressed concern regarding the Rule's

exclusion of previously regulated non-abutting wetland features and indicated an intention to revisit and expand the Rule's definition. *See* ECF Nos. 72-1 ¶¶ 17–18, 20 (Fox Decl.), 72-2 ¶¶ 17–18, 20 (Pinkham Decl.).

On July 9, 2021, the Tribes filed an opposition to the Agencies' motion for remand and requested an order vacating the entire Rule (including its definition of "adjacent wetlands"), in addition to remanding it. ECF No. 74. In the alternative they argued the Court should deny the motion for remand in its entirety, and instead decide the merits and grant appropriate relief. *See id.* The same day, the Tribes filed a separate motion to accelerate the briefing schedule on summary judgment. *See* ECF No. 75.

On June 13, 2021, the Sacketts and the Business Intervenors cross-moved for summary judgment and opposed the Tribes' motion for summary judgment. *See* ECF Nos. 77–81. The Sacketts—in contrast to the Agencies and the Business Intervenors[2]—argue that the Tribes' claims as to the Rule's definition of "adjacent wetlands" fail as a matter of law because the exclusion of non-abutting wetlands from federal regulation is not a matter of agency discretion. *See* ECF No. 77-1. Instead, the exclusion of these wetlands is *compelled* by a plain reading of the text of the Clean Water Act, as authoritatively interpreted by the Supreme Court—namely the controlling plurality opinion in *Rapanos*. *See id.* Under the current schedule, the Tribes' summary judgment motion will be fully briefed on August 31, 2021, and the Sacketts' and Business Intervenors' cross-motions will be fully briefed on October 5, 2021. *See* ECF No. 24.[3]

///

///

---

[2] The Agencies have consistently defended the Rule as an allowable exercise of discretion under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967 (2005). The Business Intervenors likewise defend the Rule under *Chevron. See* ECF No. 80 at 18–21.

[3] Under the Tribes' proposed accelerated schedule, the Tribes motion will be fully briefed on August 6, 2021, and the Sacketts' and Business Intervenors' cross-motions will be fully briefed on September 3, 2021. *See* ECF No. 75.

# STANDARD OF REVIEW

Voluntary remand without vacatur is an equitable remedy that is within the sound discretion of the Court to deny or grant. *See Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 381 (D.C. Cir. 2017) ("A district court has broad discretion to decide whether and when to grant an agency's request for a voluntary remand"). When presented with a motion to remand, the Court may either adjudicate the merits of an agency action or remand it. The moving government party bears the burden of establishing the propriety of voluntary remand prior to a decision on the merits. *See Limnia*, 857 F.3d at 381. Three factors are worthy of this Court's consideration in exercising its discretion to grant or deny the Agencies' motion.

First, courts can and do refuse to grant voluntary remand in circumstances where to do so would be inappropriate. *See Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436–37 (D.C. Cir. 2018) (refusing to remand a challenge to EPA's statutory authority to regulate inactive impoundments under the Resource Conservation and Recovery Act because "the scope of the EPA's statutory authority" was "intertwined with" EPA's intended "exercise of agency discretion going forward"). *See also Lutheran Church-Missouri Synod v. Fed. Commc'ns Comm'n*, 141 F.3d 344, 349 (D.C. Cir. 1998) (denying motion for voluntary remand where remand would enable an agency to strategically avoid judicial review); *Assiniboine & Sioux Tribes of Fort Peck Indian Reservation v. Norton*, 527 F. Supp. 2d 130, 136 (D.D.C. 2007) (refusing to grant voluntary remand in part because, due to historic failures, the district court was not persuaded the moving agency would on remand resolve issues identified by the litigation or conform its conduct to statutory mandate).

Second, a reviewing court may partially remand an agency action and partially adjudicate its merits. *See Util. Solid Waste Activities Grp.*, 901 F.3d at 436–37 (granting EPA's motion for voluntary remand as to several of petitioners' claims and denying remand and proceeding to the merits as to others). *See also Am. Paper Inst. v. EPA*, 660 F.2d 954, 965–66 (4th Cir. 1981) (granting partial remand of a rule to allow the agency to

correct data errors but adjudicating the remainder of petitioners' claims on the merits); *NTN Bearing Corp. of Am. v. United States*, 46 F. Supp. 3d 1375, 1382 (Ct. Int'l Trade 2015) (granting partial voluntary remand of an agency decision and adjudicating the merits of the remainder of plaintiff's claims); *United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, No. C-09-4029 EMC, 2011 WL 3607790, at *5–6 (N.D. Cal. Aug. 16, 2011) (granting voluntary partial remand of one issue and setting a plan for adjudication of the non-remanded issues).

Third, where an agency remand request is predicated on "a change in agency policy or interpretation," the way in which a court will exercise its discretion differs where the challenged agency action was statutorily compelled (or forbidden) under *Chevron* Step One. *See SKF USA Inc. v. United States*, 254 F.3d 1022, 1029–30 (Fed. Cir. 2001). Although a reviewing court may still grant remand, it may also decide the statutory issue where the circumstances warrant. *See id. See also Util. Solid Waste Activities Grp.*, 901 F.3d at 436–37 (denying EPA's motion for voluntary remand and proceeding to the merits on the question of EPA's statutory authority to regulate inactive impoundments); *Wagner v. Principi*, 370 F.3d 1089, 1092–97 (Fed. Cir. 2004) (denying an agency motion for remand and instead reaching the merits of a *Chevron* Step One question). This rule conforms to broader principles of administrative law, *cf. Social Sec. Bd. v. Nierotko*, 327 U.S. 358, 369 (1946) ("it is a 'judicial function,'" and not an agency function, to decide the final "limits of its statutory power").

## ARGUMENT

**I. The Court *Need Not* Remand the Entire Rule in Response to the Agencies' Motion**

The Court need not remand the Rule in its entirety. Instead, it may determine the legality of the "adjacent wetlands" provisions of the Rule on the merits. As noted, this Court has wide latitude to deny or grant a motion for remand. *See Limnia*, 857 F.3d at 381. And this discretion includes the latitude to partially remand an agency rule and adjudicate the remaining merits. *See Util. Solid Waste Activities Grp.*, 901 F.3d at 436–37; *Gonzales*

*& Gonzales*, 2011 WL 3607790, at *5–*6; *Am. Paper Inst.*, 660 F.2d at 965–66; *NTN Bearing Corp.*, 46 F. Supp. 3d at 1382. Under the circumstances of the present case, partial remand[4] and partial adjudication are especially appropriate.

The Court should not remand the entire rule. Briefing on the merits is now underway. *See* ECF Nos. 48, 77-1, 80. And, as noted, one discrete aspect of the Rule is its definition of "adjacent wetlands" as wetlands that abut or are flooded by other regulated waters or are physically separated from such waters only by natural barriers or permeable artificial barriers. 33 C.F.R. § 328.3(c)(1). This definition—the fourth of four categories of waters identified as regulable in the text of the Rule—is severable from the remainder of the Rule. *See id*. The "adjacent wetlands" provisions do not bear on the remainder of the Rule and this ease of severability makes partial adjudication and partial remand especially feasible. *See* Exh. 1.[5]

The Tribes allege in their complaint and argue on summary judgment that this definition of "adjacent wetlands" is an abuse of discretion and that the Clean Water Act compels broad federal regulation of non-abutting wetlands. *See* ECF No. 1 ¶¶ 94(c), 101; ECF No. 48 at 25–35, 35–48. In their cross-motion for summary judgment and opposition to the Tribes' motion for summary judgment, the Sacketts argue that the *exclusion* of non-abutting wetlands from federal regulation is not a matter of agency discretion but is instead

---

[4] The Sacketts take no position on remand of other portions of the Rule; their only interest is in the "adjacent wetlands" provisions of it.

[5] The Tribes argue that this Court may not partially remand the Rule and partially adjudicate its merits. *See* ECF No. 74 at 17 n.7. Citing authority on *setting aside invalid* regulations (rather than *remanding valid* regulations such as the Rule's "adjacent wetlands" provisions), the Tribes argue that all the Rule's "components 'must stand or fall together.'" *Id.* (quoting *Wood v. Betlach*, No. CV-12-08098-PCT-DGC, 2012 WL 4762466, at *4 (D. Ariz. Oct. 5, 2012)). But under these same authorities, a court "may partially set aside a regulation if the invalid portion is severable." *Arizona Pub. Serv. Co. v. EPA*, 562 F.3d 1116, 1122 (10th Cir. 2009). The Sacketts contend that the adjacent wetlands provisions— which "operate entirely independently" of the remainder of the Rule—are severable. *Id.* (quoting *Davis County Solid Waste Mgmt. v. EPA*, 108 F.3d 1454, 1459 (D.C. Cir. 1997)). And it is clearly within this Court's sound discretion to partially *remand* the Rule and partially adjudicate its merits. *See Util. Solid Waste Activities Grp.*, 901 F.3d at 436–37.

compelled by the plain text of the Clean Water Act. *See* ECF No. 77-1 at 13–40. Merits briefing on this question of statutory construction is well underway and the Tribes have requested accelerated adjudication on the merits. *See* ECF No. 75. Because the portion of the Rule excluding non-abutting wetlands does not bear upon any other provision of the Rule, this Court may exercise its discretion to adjudicate that aspect of the Tribes' case while remanding the remainder of the Rule if the Court concludes that is appropriate.

II. **The Court *Should* Deny the Agencies' Motion for Remand as to the "Adjacent Wetlands" Provisions of the Rule**

Not only do the circumstances of this case *allow* the Court to deny remand of the Rule's definition of "adjacent wetlands," they counsel strongly *in favor* of doing so. The Agencies have consistently argued that the Rule's definition of "adjacent wetlands" is merely an exercise of agency discretion. *See supra* note 2. The Agencies now seek to exercise this claimed discretion by abandoning their defense of the Rule and changing it back to a broader definition of "adjacent wetlands." *See* ECF Nos. 72-1 ¶¶ 17–18, 20 (Fox Decl.), 72-2 ¶¶ 17–18, 20 (Pinkham Decl.). By moving for voluntary remand, the Agencies implicitly ask this Court to prejudge the merits and affirm their discretion to revisit the Rule. The Court should reject this effort, for four reasons.

*First*, the extent of the Agencies' discretion to redefine "adjacent wetlands" is a live controversy on which the parties are entitled to a decision. The importance of a decision on this merits question is especially important now that the Agencies intend to inflate the definition of "adjacent wetlands"—a move which the Sacketts argue is illegal. *See* ECF No. 77-1 at 13–40. If the Sacketts are correct, the Agencies are not entitled to reconsider and expand the definition of "adjacent wetlands" on remand because they do not have the discretion to do so. As such, litigation over the extent to which the Clean Water Act compelled the Agencies to exclude non-abutting wetlands from the Rule is far from "unnecessary." *See* ECF No. 72 at 2, 14. Instead, adjudicating the merits of this question cuts to the heart of what the Agencies are seeking. Other courts have declined to grant voluntary remand of questions of statutory construction bearing on an agency's proposed

course of action. *See Util. Solid Waste Activities Grp.*, 901 F.3d at 436–37 (refusing to grant voluntary remand and instead deciding the merits of "the scope of the EPA's statutory authority" to regulate inactive impoundments under the Resource Conservation and Recovery Act because that statutory question would bear on EPA's exercise of "discretion going forward").

Moreover, a decision on the merits of the statutory question raised in the Sacketts' defense of the Rule would properly guide the Agencies in their stated intent to revise the definition of "adjacent wetlands." If the Court agrees with the Sacketts that the *Rapanos* plurality controls and the exclusion of non-abutting wetlands was compelled, then the Agencies lack any discretion to expand the definition of "adjacent wetlands" on remand. On the other hand, if the Court agrees with the Tribes that the Act compels broader regulation of non-navigable wetlands, in accordance with Justice Kennedy's *Rapanos* concurrence, this will likewise provide necessary guidance for the Agencies' exercise of discretion on remand. *See* ECF No. 48 at 25–35; *Rapanos*, 547 U.S. at 759, 779–80 (Kennedy, J., concurring). Such guidance is especially important in this context, given the Agencies' historic failure to craft a durable and legally sufficient definition of "adjacent wetlands." *See supra* pp. 2–4. At least one court has rejected a motion for voluntary remand where—among other reasons—the agency's historic failures left the court unconvinced that the agency would resolve issues identified by the litigation or conform its conduct to a statutory mandate on remand. *See Assiniboine & Sioux Tribes of Fort Peck Indian Reservation*, 527 F. Supp. 2d at 136.

*Second*, in the closely related situation where an agency believes its original decision was incorrect and its remand request is predicated on "a change in agency policy or interpretation," the exercise of the court's discretion will differ if the challenged agency action was either statutorily compelled or forbidden under *Chevron* Step One. *See SKF*, 254 F.3d at 1029–30. In such scenarios, a reviewing court may decide the statutory issue if the circumstances warrant. *See id.*; *Wagner*, 370 F.3d at 1092–97. The Sacketts argue on the merits that the Agencies' exclusion of non-abutting wetlands is legally compelled by a

plain reading of the text of the Clean Water Act. *See* ECF No. 77-1 at 13–40. Therefore, any analysis ends at *Chevron* Step One. *Id.* This Court should therefore exercise its discretion to "decide the statutory issue" instead of remanding that portion of the Rule. *See SKF*, 254 F.3d at 1029–30. *Cf. Nierotko*, 327 U.S. at 369 ("it is a 'judicial function,'" and not an agency function, to decide the final "limits of its statutory power").

*Third*, the Agencies' argument that remanding without deciding the merits would conserve judicial resources and benefit the parties is unavailing and should be rejected, at least as to the "adjacent wetlands" provisions of the Rule. *See* ECF No. 72 at 12, 14–15. The Agencies argue in support of this contention that remand would permit the creation of a new administrative record and prevent needless litigation upon the current administrative record. *Id.* at 3, 12. But if the Sacketts are correct that the definition of "adjacent wetlands" is compelled by the Act, then the contents of the Rule's current administrative record, or any new administrative record that might be created on remand, is irrelevant to the question of statutory construction the parties have asked this Court to address. Indeed, remanding for the Agencies to compile a new administrative record would be a futile endeavor. *Cf. Union Pacific R.R. Co. v. U.S. Dep't of Homeland Sec.*, 738 F.3d 885, 901 (8th Cir. 2013) (refusing to remand an agency decision, because the agency had plainly exceeded its statutory authority, and a court "simply will not remand '[w]here application of the correct legal standard could lead to only one conclusion.'" (quoting *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010))); *George Hyman Const. Co. v. Brooks*, 963 F.2d 1532, 1539 (D.C. Cir. 1992) (refusing to remand to the agency where only "one disposition is possible as a matter of law"). Here, there is nothing left for the Agencies to "crystalliz[e]." *See* ECF No. 72 at 12. The Sacketts' defense does not rely on or even cite the current administrative record, but instead raises a purely legal question of statutory construction, and the Court should address that question before the Agencies waste any more time rewriting the Rule.

Illustrating the principle that a rulemaking record does not control questions of statutory construction, numerous courts (including the Ninth Circuit) have held that the *Chenery* doctrine—which provides that an agency may not defend an administrative

decision on different grounds than those contained in the administrative record—is inapplicable where that decision was compelled by law. These cases hold that in performing its judicial function of resolving a pure question of statutory construction, a court should not be constrained by the conclusions contained in the administrative record compiled by an agency. *See Railway Labor Execs.' Ass'n v. Interstate Commerce Comm'n*, 784 F.2d 959, 969 (9th Cir. 1986) (holding *Chenery* is inapplicable where "the issue in dispute is the interpretation of a federal statute"). *See also*, *e.g.*, *Koyo Seiko Co. v. United States*, 95 F.3d 1094, 1099–1102 (Fed. Cir. 1996) (affirming a proceeding on grounds other than those in the agency's record and finding *Chenery* inapplicable where "the sole issue is one of statutory construction," the "plain language of the statute compels the conclusion," and the conclusion does not "implicate the exercise of agency discretion"); *Ark. AFL-CIO v. Fed. Commc'ns Comm'n*, 11 F.3d 1430, 1440 (8th Cir. 1993) (plurality opinion) (determining courts may find additional bases "for a correct legal result" beyond those offered by the agency because "the Supreme Court clearly limited *Chenery* to situations in which the agency failed to make a necessary determination of fact or of policy"); *N.C. Comm'n of Indian Affairs v. U.S. Dep't of Labor*, 725 F.2d 238, 240 (4th Cir. 1984), *cert. denied*, 469 U.S. 828 (1984) (same).[6]

*Fourth*, affirming the Agencies' discretion and remanding the "adjacent wetlands" provisions of the Rule without deciding the merits would effectively deny the Sacketts their

---

[6] Even if a new administrative record *would* help the Court's adjudication of the legality of the "adjacent wetlands" provisions (which it would not), the authority cited by the Agencies for the proposition that remand would promote "jurisprudential interests" is wholly inapplicable. *See* ECF No. 72 at 12. The cases cited by the Agencies each involve discussion of ripeness (and not the appropriateness of voluntary remand) where the agency had either already published a proposed rule to replace the challenged action, or where plaintiffs challenged an *incomplete* agency action. *See Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387–88 (D.C. Cir. 2012); *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 49 (D.C. Cir. 1999); *Pub. Citizen Health Research Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 30 (D.C. Cir. 1984). The Tribes' claims against the currently-effective Rule are ripe and remand for preparation of a new administrative record would not promote any "jurisprudential interest[]." *See* ECF No. 72 at 12.

13

defense of the Rule. The Sacketts intervened to establish that the exclusion of non-abutting wetlands—including the one alleged to exist on their property—is compelled by law. *See* ECF No. 44 at 10–16; ECF No. 45 ¶¶ 10–12, 16–20 (Sackett Decl.). Remanding the Rule for the Agencies to broaden the definition of "adjacent wetlands" permits the Agencies to evade judicial review of the scope of their discretion merely by re-exercising the discretion they claim to have in the first place. But the *scope* of that discretion is what this case is fundamentally about. *Cf. Am. Petroleum Inst.*, 683 F.3d at 388 (stressing that an agency cannot "stave off judicial review of a challenged rule simply by initiating a new proposed rulemaking that would amend the rule in a significant way" because this would allow "a savvy agency" to "perpetually dodge review"). And this is not merely an abstract disagreement. It has a real effect on the concrete interests the Sacketts have sought to vindicate in this litigation—their right to use their private property without the Army's permission.[7] *See* ECF No. 44 at 10–12 (alleging significant concrete interests in the adjudication of the legality of the "adjacent wetlands" provisions); ECF No. 45 ¶¶ 16–20 (Sackett Decl.) (alleging significant personal harm should this litigation result in the Agencies returning to the illegally overbroad "adjacent wetlands" definition in effect prior

---

[7] Elsewhere, the Agencies have posited—without elaboration—that the Sacketts lack standing to "raise independent challenges to the NWPR." Reply in Support of Motion for Voluntary Remand Without Vacatur, *Waterkeeper Alliance, Inc. v. Regan*, No. 3:18-cv-03521-RS (N.D. Cal. July 13, 2021), ECF No. 115 at 3–5. But the Sacketts have no intention of "rais[ing] independent challenges" to the Rule. Rather, they seek to *defend* it on the merits as legally compelled—as they have all along. The Sacketts have clearly demonstrated their independent standing to defend the "adjacent wetlands" provisions of the Rule. *See* ECF No. 77-1 at 43–44; ECF No. 45 (Sackett Decl.). Should the Tribes succeed in this litigation, the regulations under which EPA asserted regulatory authority over the Sacketts' property in 2007 would be revived, injuring the Sacketts. Likewise, the Agencies have signaled their intention—at least temporarily—to return to those same regulations in effect in 2007, should they succeed in having the Rule remanded. *See* Hannah Northey EPA's Top Water Official On Biden's Climate, Equity Goals, E & E News, July 6, 2021, https://www.eenews.net/greenwire/2021/07/06/stories/1063736519?utmcampaign=edition&utmmedium=email&utmsource=eenews%3Agreenwire (EPA Assistant Administrator for Water Rhadika Fox stating in an interview that the Agencies intend "to restore the pre-2015 regulation defining Waters of the United States" prior to adopting any new rule).

to the adoption of the Rule). Courts have denied motions for voluntary remand where granting the motion would prejudicially allow an agency to evade judicial review. *See Lutheran Church-Missouri Synod*, 141 F.3d at 349.[8]

The Court should deny the Agencies' motion as to the "adjacent wetlands" provisions of the Rule, and instead permit this case to proceed to summary judgment briefing on that issue.

### III. This Court Should Reject the Tribes' Request for Remand With Vacatur And Instead Adjudicate the Merits

Finally, this Court should accept the Tribes request to proceed to the merits, and reject the Tribes' alternative request for pre-merits vacatur. *See* ECF No. 74. This Court can and should adjudicate the merits of the Tribes' claims, at least as to the Rule's "adjacent wetlands" provisions.

The Tribes' proposal for remand with vacatur equates to asking this Court to grant complete relief without first adjudicating the merits. *See id.* Courts have rejected similar

---

[8] Where agency action is compelled, remand to the agency is far from inevitable, so voluntary remand will significantly impair the judicial review rights of the parties. *Cf.* Joshua Revesz, *Voluntary Remands: A Critical Reassessment*, 70 Admin. L. Rev. 361, 403 (2018); *George Hyman Constr. Co.*, 963 F.2d at 1539. If the merits are adjudicated and the Rule is either vacated (as requested by the Tribes) or upheld as compelled (as requested by the Sacketts), it *will not* be remanded to the Agencies. However, the framework for voluntary remand—established in the context of the formal adjudication widely prevalent in prior eras of administrative law—generally approaches the problem as if remand is inevitable (as it generally is in the context of review of formal adjudication). *See* Revesz, *supra*, at 403. It therefore treats most voluntary agency remand requests as a mere "question of timing." *Id*. But in the context of judicial review of agency *rulemaking*, "the choice between voluntary remand and litigating on the merits is not merely a question of timing" but is instead "a question of what remedy" private parties to the action will receive. *Id.* For this reason, in applying the voluntary remand doctrine, this Court "should be . . . attentive to private parties' [such as the Sacketts'] rightful position." *Id. See also*, Toni M. Fine, *Agency Requests for "Voluntary" Remand: A Proposal for the Development of Judicial Standards*, 28 Ariz. St. L.J. 1079, 1092–93, 1119 (1996) (framing the discussion in terms of the "[i]mportance [o]f [j]udicial [r]eview [f]unction" and noting that "the rights of intervenors warrant special attention in th[e] context" of an opposed motion for voluntary remand).

requests on the grounds that doing so circumvents the notice and comment requirements of the APA and affords relief without due consideration of the merits. *See Nat'l Parks Conservation Ass'n v. Salazar*, 660 F. Supp. 2d 3, 5 (D.D.C. 2009) ("[G]ranting vacatur here would allow the Federal defendants to do what they cannot do under the APA, repeal a rule without public notice and comment, without judicial consideration of the merits."); *Maine v. Wheeler*, No. 1:14-cv-00264-JDL, 2018 WL 6304402, at *1 (D. Me. Dec. 3, 2018) (same).

The Tribes argue that remand is "typically accompanied by vacatur of the challenged rule." *See* ECF No. 74 at 4. But as demonstrated by the Tribes' cited authorities, this is only true where a rule is remanded *after* adjudication of the merits. *See Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015), *cited at* ECF No. 74 at 4 (finding remand with vacatur appropriate after determining on the merits that EPA's registration of several pesticides was not supported by substantial evidence and was therefore illegal). The only case cited by the Tribes demonstrating vacatur *prior* to full adjudication is inapposite. *See ASSE Int'l, Inc. v. Kerry*, 182 F. Supp. 3d 1059, 1064–65 (C.D. Cal. 2016), *cited at* ECF No. 74 at 4 (vacating and remanding after the agency agreed to revisit its decision in light of a Ninth Circuit opinion reversing the district court's dismissal of the case and determining that the agency had "failed to provide [the plaintiffs] adequate procedural protections consistent with the Fifth Amendment's Due Process Clause").[9]

A live dispute over the legality of the Rule's "adjacent wetlands" provisions remains in this case. The Tribes allege that the Agencies abused their discretion and violated the Clean Water Act in excluding previously regulated non-abutting wetlands from federal authority. *See* ECF No. 1 ¶¶ 94(c), 101; ECF No. 48 at 25–35. The Agencies implicitly ask

---

[9] According to the Sacketts' research, the remainder of the cases cited in the portion of the Tribes' brief arguing for vacatur, each involved full or partial vacatur of agency action *following* a determination on the merits, with the exception of *California Communities Against Toxics v. EPA*, 688 F.3d 989, 994 (9th Cir. 2012), which involved pre-merits remand *without* vacatur. *See* ECF No. 74 at 4–12.

16

this Court to affirm that the exclusion of previously regulated non-abutting wetlands was an allowable exercise of agency discretion. And the Sacketts argue that the exclusion of non-abutting wetlands was legally compelled, such that the Agency had no discretion to do otherwise. *See* ECF No. 77-1 at 13–40. Indeed, the Tribes argue throughout their partial opposition for a return to the same definition of "adjacent wetlands" under which EPA asserted regulatory authority over the Sacketts' property in 2007. *See* ECF No. 74 at 11. The Sacketts intervened for the specific purpose of arguing the Agencies do not have the discretion to more broadly redefine "adjacent wetlands," and to prevent a return to the illegally overboard definition in place in 2007. *See* ECF No. 45 ¶¶ 17–20 (Sackett Decl.). This dispute remains live. To vacate the Rule in response to the Tribes' request would therefore grant complete relief to the Tribes and render a complete loss for the Sacketts without due process.

So, this Court should not vacate the Rule without first considering the merits of the Tribes' claims. And, this Court can and should adjudicate the merits of the Tribes' claims—at least as they pertain to the Rule's definition of "adjacent wetlands"—based on the ongoing briefing on that question and then enter an appropriate remedy at that time.

## CONCLUSION

The Agencies' motion for voluntary remand without vacatur should be denied as to the severable "adjacent wetlands" provisions of the Rule, and the Tribes' request that the Rule be vacated should be denied in the event the Court does grant remand.

DATED this 16th day of July, 2021.

                                            Respectfully submitted,

                                            JAMES M. MANLEY
                                            ANTHONY L. FRANÇOIS
                                            CHARLES T. YATES

                                            By    /s/ James M. Manley
                                                      JAMES M. MANLEY

                                            *Attorneys for Defendant-Intervenors*
                                            *Chantell and Michael Sackett*