Stuart C. Gillespie (CO Bar No. 42861) *(admitted pro hac vice)*
Alexandra O. Schluntz (MA Bar No. 704320) *(admitted pro hac vice)*
EARTHJUSTICE
633 17th Street, Suite 1600
Denver, CO 80202
(303) 996-9616
sgillespie@earthjustice.org
aschluntz@earthjustice.org

Janette K. Brimmer (WA Bar No. 41271) *(admitted pro hac vice)*
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA 98104
(206) 343-7340
jbrimmer@earthjustice.org

*Counsel for Plaintiffs Pascua Yaqui Tribe, Quinault Indian Nation, Menominee Indian Tribe of Wisconsin, Tohono O'odham Nation, Fond du Lac Band of Lake Superior Chippewa, and Bad River Band of Lake Superior Chippewa*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA AT TUCSON

| | |
|---|---|
| Pascua Yaqui Tribe, *et al.*,<br>　　　Plaintiffs,<br>　　v.<br>United States Environmental Protection Agency, *et al.*,<br>　　　Defendants,<br>and<br>Arizona Rock Products Association, *et al.*,<br>　　　Intervenors-Defendants,<br>and<br>Chantell Sackett; Michael Sackett,<br>　　　Intervenors-Defendants. | Case No. 4:20-cv-00266-RM<br><br>Assigned Judge: Rosemary Márquez<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO ACCELERATE BRIEFING SCHEDULE [ECF No. 75]** |

# INTRODUCTION

Plaintiffs Pascua Yaqui Tribe, Quinault Indian Nation, Menominee Indian Tribe of Wisconsin, Fond du Lac Band of Lake Superior Chippewa, Tohono O'odham Nation, and Bad River Band of Lake Superior Chippewa ("Tribes") seek to expedite briefing in this case in light of new information provided by the Agencies showing that the challenged rules are causing "significant, ongoing and irreversible environmental damage." Tribes' Mem. Supp. Mot. Accel. Briefing 1, ECF No. 76 (quoting Email from Karen Gude, EPA (June 9, 2021), attached as Ex. A to Gillespie Decl. Supp. Pls.' Mem. Opp'n Mot. Vol. Remand, ECF No. 74.1). Despite detailing the harms caused by the Navigable Waters Protection Rule ("Rule") and conceding legal error, the Agencies continue to apply the Rule at a breathtaking rate to strip Clean Water Act protections, ensuring harms to the Tribes for years to come. An accelerated briefing schedule is warranted to counteract any further harms caused by the Agencies' unrelenting application of the Rule.

Business-Intervenors ("Industry") oppose the motion, but fail to refute the severe harms documented by the Tribes and Agencies. Industry also fails to identify any prejudice from an accelerated briefing schedule, let alone one that outweighs the harms faced by the Tribes. Instead, Industry dedicates the vast majority of its opposition to recycling its merits arguments. But that is not a reason to delay the completion of merits briefing. To the contrary, it is a reason to accelerate the briefing schedule so that the Tribes can promptly respond to Industry's unfounded arguments and further demonstrate why vacatur is warranted. The Tribes thus respectfully request that the Court revise the briefing schedule so that the Tribes' response/reply on summary judgment is due August 6, and Intervenors' reply briefs are due twenty-eight days later on September 3.

**I.     The Agencies' Ongoing Application of the Rule is Causing Significant, Irreversible Harm.**

The Tribes demonstrated that an accelerated briefing schedule is appropriate to

counteract the "fair possibility of . . . damage" created by an extended briefing schedule in this case. ECF No. 76, at 2-4 (quoting *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007)). In fact, the Tribes far exceeded that showing with extensive evidence, including multiple declarations from the Agencies, vividly documenting the severe, irreversible harms caused by the Rule's exclusion of Clean Water Act protections. *Id.* at 2-4; *see also* Fox. Decl. & Pinkham Decl., ECF No. 72, Exs. 1 & 2.[1]

The numbers are irrefutable: in the past year alone, the Agencies have assessed 40,211 aquatic resources under the Rule, the vast majority of which (76%) were deemed non-jurisdictional and thus excluded from Clean Water Act protections. EPA, Mem. Record 2-3 (June 8, 2021), attached as Ex. A. This sweeping rollback is particularly extreme in Arizona, where 99.6% of streams were found non-jurisdictional under the Rule. *Id.* at 3. Yet, despite acknowledging that the Rule is causing severe, irreversible harm, and conceding that the Rule violates the law,[2] the Agencies continue to implement it at staggering rate, with one U.S. Army Corps of Engineers office reporting just this past week an *eight-fold increase* in Approved Jurisdictional Determinations ("ADJ") issued under the Rule. *See* Savannah District Update 1 (July 21, 2021), attached as Ex. B.

Industry nonetheless tries to deny the problem, claiming that the Tribes and Agencies' concerns are "unfounded" because they fail to identify any waters that lost protections under the Rule. Industry Opp'n Mot. Accel. 2, ECF No. 87. That assertion

---

[1] The Tribes also submitted five declarations with their Motion for Summary Judgment, all of which detail the harms caused by the Rule. *See* Nunez, Howes, James, Reiter & Vega Decls., ECF Nos. 48.1-48.5.

[2] The Tribes filed a motion for summary judgment, demonstrating that the Rules are arbitrary, capricious, and contrary to the Clean Water Act. *See* ECF No. 48. The Agencies "candidly acknowledge[] that they share many of [the Tribes'] concerns," Agencies' Resp. Remand 5, ECF No. 83, and concede the case on the merits by declining to respond. *See Ardente, Inc. v. Shanley*, No. C 07-4479 MHP, 2010 WL 546485, at *6 (N.D. Cal. Feb. 10, 2010) (noting that a plaintiff who fails to respond to an argument concedes it through silence).

2

simply mischaracterizes the careful analysis provided by the Agencies, which identifies *at least* 333 projects that required Clean Water Act section 404 permits prior to the Rule, but no longer do after the Rule. ECF No. 72, Exs. 1 & 2 ¶15; Ex. A at 3. This analysis squarely refutes Industry's false attempt to "suggest[]" that the Rule did not strip protections for thousands of miles of streams and wetlands. Industry Resp. Vol. Remand 12, ECF No. 85.

The Rosemont Mine is a clear example of how the Rule stripped waters of Clean Water Act protections. Tribes' Opp'n Vol. Remand 7-8, ECF No. 74. There, the Agencies and mining company agreed for over a decade—that is under every prior regulatory regime, including the 2009 *Rapanos* Guidance—that the mine site contained jurisdictional waters of the United States. *See* Tribes' 2d Not. Supp. Info. 2, ECF No. 31. Yet, under the Rule, the Agencies categorically excluded all of the ephemeral streams on the site from the Clean Water Act—a striking reversal that threatens irreparable harm to the Tohono O'odham Nation and Pascua Yaqui Tribe, who have relied on the sites' life-giving waters for thousands of years. Nunez Decl. Supp. Opp'n Abeyance ¶¶ 8-11, ECF No. 26.1.

Despite the very real threat posed by the Rosemont Mine, Industry dismisses the Tribes' concerns as "speculative." ECF No. 87 at 5. But that assertion simply ignores the facts on the ground. The Rosemont Mine would destroy some of the highest quality streams and ecosystems in the desert Southwest, causing unacceptable adverse impacts in violation of the Clean Water Act. ECF No. 26.1, Ex. A.[3] Despite these consequences,

---

[3] The Mine would also desecrate hundreds of burial sites and forever ruin these traditional cultural lands. ECF No. 26.1 ¶8. The U.S. Forest Service explained that the damage to cultural resources would be "severe, irreversible, and irretrievable;" the proposed Rosemont Mine "would destroy [the Tribes'] historical and cultural foundation, diminishing the tribal members' sense of orientation in the world, and destroy part of their heritage." *Id.* ¶10 (quoting *Final Env't Impact Statement for the Rosemont Copper Project Vol. 3*, U.S. Forest Serv. 1036-37 (Dec. 2013), https://rosemonteis.us/files/final-eis/rosemont-feis-vol-3.pdf).

3

the Corps hastily issued an Approved Jurisdictional Determination ("AJD") that relies on the Rule to strip the site of Clean Water Act protections. *See* ECF No. 74 at 7-8. That AJD is effective immediately, and the Corps insists that it will remain valid for five years. *Id.* at 8. While the Tribes prevailed in a separate lawsuit against the mine, *see Center for Biological Diversity v. U.S. Fish & Wildlife Service*, 409 F. Supp. 3d 738 (D. Ariz. 2019), Rosemont has sought an appeal in that case, anticipates a ruling "in the second half of 2021," and plans to proceed because it "does not require a Section 404 Water Permit" based on the AJD. Hudbay, Mgmt.'s Discussion & Analysis 8 (May 11, 2021), attached as Ex. D.

Unable to deny the harms facing the Tribes, Industry relies on a series of misleading arguments that only underscore the extent of harm caused by the Rule's rollback of Clean Water Act protections.[4] First, it asserts that water features excluded by the Rule could nonetheless be regulated under the Clean Water Act as point sources. ECF No. 87 at 5. That is disingenuous. By categorically excluding ephemeral streams from the definition of "waters of the United States," the Rule removes federal regulatory protections that are indisputably key to implementing the Act. For example, federal permits are *not* required under Section 404 before filling or destroying excluded waters, such as the thousands of miles of ephemeral streams in the desert Southwest. While Industry assumes that permits might be required under Section 401, that is no substitute as those permits would not contain the suite of regulatory requirements adopted by the Agencies under the 404 program to "restore and maintain the chemical, physical, and biological integrity of waters of the United States through the control of discharges of

---

[4] Despite refusing to accelerate merits briefing, Industry "incorporate[s]" by reference all of its arguments regarding the merits of the case as well as its arguments opposing remand with vacatur. *See* ECF No. 87 at 2 (incorporating merits arguments); *id.* at 4 (incorporating remand response arguments). The arguments are unfounded and underscore the need for an accelerated briefing schedule. The Tribes will provide a comprehensive response in their forthcoming response/reply in support of their motion for summary judgment.

4

dredged or fill material." 40 C.F.R. 230.1(a). The Rosemont Mine is just one example of the inadequacies in Industry's false argument. There, EPA demonstrated that the discharge of fill for the mine would cause unacceptable adverse effects to the integrity of the Nation's waters—effects that would not be addressed by the Section 401 certification from the State. *See* ECF No. 26.1, Ex. A at 18-19.

Second, Industry argues that States can use their regulatory authority to "provide coverage for all types of waters," including those excluded from the Clean Water Act. Industry Mem. Supp. XMSJ 18, ECF No. 80 (quoting *Res. & Program. Assessment for the [Rule]: Definition of [WOTUS]* 60 (Doc. ID EPA-HQ-OW-2018-1049-11573) (Jan. 23, 2020)); *see also* ECF No. 76 at 5. But the record shows that States cannot fill the significant regulatory gap created by the Rule.[5] In fact, the Agencies now admit that States have *weakened* their own clean water protections in response to the Rule, further exacerbating the regulatory void created by the Rule. *See* Ex. A at 4. Confirming that point, EPA identified specific projects proceeding "without any regulation or mitigation from federal, state, or tribal agencies." ECF No. 72, Exs. 1 & 2 ¶18.

In defiance of these facts, Industry falsely asserts that Arizona recently passed legislation to "regulate and protect waters that are no longer covered by the [Rule]." ECF No. 80 at 19. That is not true: Arizona's legislation (H.B. 2691) *excludes* ephemeral stream, except for a few reaches along the state's major rivers. H.R. 2691, 55th Leg., 1st Session (Az. 2021) at p. 23, lines 14-15.[6] The legislation thus highlights the regulatory

---

[5] In fact, the same document quoted by Industry explains that twenty-nine states have laws that either require state regulations to parallel Clean Water Act regulations or require extra steps or findings before state regulations may protect waters beyond federal requirements. *See Res. & Program. Assessment* 46 (Doc. ID EPA-HQ-OW-2018-1049-11573) (explaining how thirteen states required their regulations to parallel federal standards and sixteen additional states required extra steps or findings for state regulations to exceed federal requirements).

[6] The legislation is available through the Arizona State Legislature's webpage at https://www.azleg.gov/legtext/55leg/1R/laws/0325.pdf.

void created by the Rule for thousands of miles of ephemeral streams in Arizona—a regulatory "loophole[] that undermine[s] the statute's basic federal regulatory objectives." *Cnty. of Maui v. Hawaii Wildlife Fund*, 140 S. Ct. 1462, 1477 (2020) (rejecting construction that would preclude EPA from regulating discharges to groundwater that reach navigable waters).

Third, Industry claims that the Tohono O'odham Nation can prevent the harms caused by the Rule by regulating "more water features" under its Water Code. ECF No. 80 at 19. That assertion is misplaced. The Water Code is limited to waters on the Tohono O'odham Nation, and thus in no way fills the nationwide regulatory gap created by the Rule, such as at the Rosemont Mine site where the Nation has significant interests, but lacks jurisdiction. *See* Tohono O'odham Nation, Water Quality Code, § 1, 5.C (2001).[7] Furthermore, the Code, by its terms, does *not* "comprehensively regulate water quality and the discharge of pollutants within the Tohono O'odham Nation." *Id.* at p. 3, lines 20-23. EPA thus acknowledged that "tribes lack the authority and the resources to independently regulate surface waters within and upstream of their reservations." ECF No. 72, Exs. 1 & 2 ¶19. It further warned its Tribal Partners that the Rule is "causing significant, ongoing, and irreversible environmental damage." ECF No. 74.1, Ex. A at 1.

Ultimately, Industry asks this Court to ignore the Agencies' declarations, claiming that the administrative record for the Rule is "comprehensive and robust." ECF No. 85 at 5; *see also* ECF No. 87 at 4. That is incorrect because the Agencies *failed* to analyze the effects of the Rule on the chemical, physical, and biological integrity of the Nation's Waters, resulting in an *inadequate* administrative record and arbitrary rulemaking. *See* ECF No. 72, Exs. 1& 2 ¶12 (citing 85 Fed. Reg. at 22,332, 22,335). Due to that head-in-the-sand approach, the Agencies provided the Court with a comprehensive analysis exposing the Rule's impacts and identifying the "significant, actual environmental

---

[7] The interim Water Code is available at https://www.tolc-nsn.org/docs/Title25ch5.pdf.

6

harms" caused by the Rule, *id.* ¶17, including disproportionate harms to tribes, *id.* ¶19. Based on this analysis, the Agencies acknowledge "substantial and legitimate concerns regarding the adequacy of consideration of the [Clean Water Act's] water quality goals in the development of the [Rule]." *Id.* ¶13; *see also* Ex. A at 4; ECF No. 48 at 26-40. The declarations are not only highly relevant to this motion to accelerate the briefing schedule, but also critical to the Court's assessment of the merits and whether to vacate the Rule.[8]

## II. Industry Fails to Identify Any Prejudice from Accelerating Briefing, Which Would Further Judicial Economy.

In assessing the motion to accelerate briefing, the Court should also consider "the hardship" to the party required to go forward on an accelerated schedule. ECF No. 76 at 5 (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005)). Industry, however, fails to identify any hardship from proceeding with an accelerated briefing schedule. To the contrary, its arguments highlight the judicial economies of accelerating briefing and ensuring the "orderly course of justice." *Id.* (quoting *Lockyer*, 398 F.3d at 1110).

Industry first argues that it requires "effort to prepare and file" a reply brief. ECF No. 87 at 6. But that is not a harm that warrants delaying the case, especially as Industry

---

[8] The declarations documents the ongoing harms caused by the Rule, and thus are squarely before the Court in ruling on the instant motion to accelerate the briefing schedule and assessing whether to vacate the Rules. They also highlight the Agencies' failure to assess the impacts of the Rule on the "chemical, physical, and biological integrity of the Nation's waters"—that is, the objective of the Clean Water Act. They are thus properly before the Court on the merits as extra-record material. *See Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980) (holding that courts may supplement the administrative record to determine "whether the agency considered all the relevant factors or fully explicated" its decision); *Bay.org v. Zinke*, 1:17-cv-01176 LJO-EPG, 2018 WL 3965367, at *7 (E.D. Cal. Aug. 16, 2018) (supplementing record with extra-record materials that showed agency overlooked relevant factor).

plans to file a reply brief anyhow. *See Lockyer*, 398 F.3d at 1112 (*"*[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."). Industry does not identify any prejudice with the proposed schedule, which gives it 28 days to file its optional reply to the Tribes' opposition brief.

Industry next argues that it should not be required to file a reply brief while the Court determines whether to vacate the Rule. ECF No. 87 at 6. But Industry opposed vacatur on the grounds that the Court needed to first rule on the merits. ECF No. 85 at 8.[9] It has thus *invited* merits briefing. The Tribes thus propose an accelerated schedule to complete merits briefing and protect the Tribes from further harm in the event that the Court denies remand. Additionally, the merits briefing demonstrates why vacatur is not only the standard remedy in this case, but an essential remedy due to the serious errors in the Rule and the devastating consequences of leaving it in place. ECF No. 74 at 7-9.

Finally, Industry claims that an accelerated briefing schedule is not warranted because the Tribes have not yet sought a preliminary injunction. ECF No. 87 at 4. That point cuts the other way as parties routinely accelerate briefing schedules so as to *avoid* the need for emergency motions practice and give the Court time to rule on the merits. The Court should therefore adopt the accelerated schedule proposed by the Tribes to conserve judicial resources and ensure an orderly resolution of the case.

## CONCLUSION

For the foregoing reasons, the Tribes respectfully request that the Court grant the Motion to accelerate the merits briefing schedule.

---

[9] Industry asserts that the Court can vacate the Rules only after ruling on the merits. ECF No. 85 at 7-8. Yet, it fails to cite a single case that would so constrain the Court's authority. To the contrary, courts have repeatedly held that "vacation of an agency action without an express determination on the merits is well within the bounds of traditional equity jurisdiction." *Ctr. for Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236, 1241-42 (D. Colo. 2011) (citing *Nat. Res. Def. Council v. Dep't of Interior*, 275 F. Supp. 2d 1136, 1143 (C.D. Cal. 2002)).

| | |
|---|---|
| DATED: July 28, 2021 | <u>s/ Stuart C. Gillespie</u><br>Stuart C. Gillespie, CO # 42861<br>Alexandra O. Schluntz, MA # 704320<br>EARTHJUSTICE<br>633 17th Street, Suite 1600<br>Denver, CO 80202<br>(303) 996-9616<br>sgillespie@earthjustice.org<br><br>Janette K. Brimmer, WSBA # 41271<br>EARTHJUSTICE<br>810 Third Avenue, Suite 610<br>Seattle, WA 98104<br>(206) 343-7340<br>jbrimmer@earthjustice.org<br><br>*Counsel for Pascua Yaqui Tribe, Quinault Indian Nation, Fond du Lac Band of Lake Superior Chippewa, Menominee Indian Tribe of Wisconsin, Tohono O'odham Nation, and Bad River Band of Lake Superior Chippewa* |

# CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of July, 2021, I electronically filed the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO ACCELERATE BRIEFING SCHEDULE [ECF No. 75]** with the Clerk of the District Court using the CM/ECF system, which will send notice of this filing by e-mail to all counsel of record.

Daniel Pinkston, CO #11423
999 18th Street,
South Terrace, Suite 370,
Denver, CO 80202
daniel.pinkston@usdoj.gov
Phone: (303) 844-1804
Facsimile: (303) 844-1350

*Attorney for Defendants*

Bradley J. Glass (022463)
Stuart S. Kimball (026681)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
brad.glass@gknet.com
stuart.kimball@gknet.com
Phone: (602) 530-8000
Facsimile: (602) 530-8500

*Attorneys for Intervenors-Defendants*
*Arizona Rock Products Association et al.*

JAMES M. MANLEY, Ariz. Bar. No. 031820
Pacific Legal Foundation
3241 E Shea Boulevard, # 108
Phoenix, Arizona 85028
jmanley@pacificlegal.org
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

ANTHONY L. FRANÇOIS, Cal. Bar. No. 184100*
CHARLES T. YATES, Cal. Bar No. 327704*
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
afrancois@pacificlegal.org
cyates@pacificlegal.org
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

*Attorneys for Intervenors-Defendants
Chantell and Michael Sackett*

                                                *s/ Stuart C. Gillespie*