D. Lee Decker (Bar No. 013202)
Bradley J. Glass (Bar No. 022463)
Stuart S. Kimball (Bar No. 026681)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
Telephone:	(602) 530-8000
Facsimile:	(602) 530-8500
dld@gknet.com
brad.glass@gknet.com
stuart.kimball@gknet.com

Attorneys for Business-Intervenors-Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| PASQUA YAQUI TRIBE, *ET AL.*,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *ET AL.*,<br><br>　　　　　　　Defendants,<br><br>and<br><br>ARIZONA ROCK PRODUCTS ASSOCIATION, *ET AL.*,<br><br>　　　　　Business-Intervenors-<br>　　　　　Defendants,<br><br>and<br><br>CHANTELL SACKETT AND MICHAEL SACKETT,<br><br>　　　　　　Intervenors-Defendants. | No. 4:20-cv-00266-TUC-RM<br><br>**BUSINESS-INTERVENORS-DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR STAY PENDING APPEAL**<br><br>(Assigned to the Honorable Rosemary Márquez) |

The Court's Order dated August 30, 2021 ("Order") (Doc. 99) vacated the Navigable Waters Protection Rule ("NWPR") (85 Fed. Reg. 22,250 (Apr. 21, 2020)), which was promulgated pursuant to the Administrative Procedures Act ("APA") by the United States Environmental Protection Agency ("EPA") and the United States Army

1

Corps of Engineers ("Corps") (collectively, "Agencies") to establish a new definition of the phrase "Waters of the United States" ("WOTUS") in the Clean Water Act ("CWA").

Business-Intervenors-Defendants Arizona Rock Products Association; National Stone, Sand and Gravel Association; Arizona Cattle Feeders Association; Home Builders Association of Central Arizona; Arizona Farm and Ranch Group; Arizona Farm Bureau; and Arizona Chapter Associated General Contractors (together, "Business-Intervenors")[1] respectfully believe that the Order is erroneous and request that this Court stay that part of the Order vacating the NWPR pending appeal because (1) the Court did not weigh the seriousness of the NWPR's errors because it has not ruled on Plaintiffs' challenges to the NWPR, which is a prerequisite for vacatur under the APA, and (2) vacatur of the NWPR and return to the pre-2015 regime pending issuance of yet another new rule by the Agencies will be unduly disruptive to the regulated community, and those harms far exceed any speculative injury asserted by Plaintiffs.

As explained below, the Court erred by vacating the NWPR without first ruling on the merits of Plaintiffs' claims challenging the NWPR under the APA. The Court has not found, and the Agencies have not conceded, that the NWPR is not in accordance with the CWA or that the NWPR is arbitrary and capricious. While the Agencies submitted two extra-record declarations that show a clear bias against the NWPR and a desire to take a different regulatory approach to WOTUS, those declarations are not part of the administrative record before the Court and fall far short of a concession that the NWPR is illegal or outside the scope of the Agencies' authority. At most, those extra-record declarations state that the Biden Administration disagrees with the policy decisions made

---

[1] Each Business-Intervenor is affiliated with nationwide trade associations and groups, many of which were involved as intervenors-defendants or amici in other cases challenging the NWPR. Because the Court's Order and nationwide vacatur effectively ended those cases, the following nationwide trade associations and groups plan to support Business-Intervenors' appeal and this Motion to Stay: National Mining Association, American Forest & Paper Association, National Association of Home Builders, American Farm Bureau Federation, National Pork Producers Council, and American Road and Transportation Builders Association.

2

in the NWPR and is concerned that certain policy decisions in the NWPR were incorrect, without admitting any APA violations. Those declarations, therefore, cannot substitute for a ruling on the merits of Plaintiffs' challenges to the NWPR.

Even if the Court had found that the NWPR was contrary to the CWA or arbitrary and capricious, vacatur is improper because it places the regulated business community back on the regulatory roller coaster that severely disrupts their business operations, as the Business-Intervenors' declarants, which are attached as Exhibits G through M, make clear in great detail. Businesses have been operating under the NWPR for more than a year and a return to the pre-2015 regime only to be followed by the new rule resulting from the current, ongoing rulemaking process would likely subject businesses to *three* different comprehensive regulatory regimes in a short amount of time.

Balanced against that undeniable prejudice, there has been no evidence of harm—indeed, nothing has been offered beyond mere speculation—that leaving the NWPR in place during the Agencies' new rulemaking process would damage Plaintiffs' interests. To the contrary, robust federal regulatory jurisdiction still exists under the NWPR and, as the Agencies repeatedly made clear in the NWPR, States have the authority to fill any regulatory gap they may perceive. Finally, nationwide vacatur is improper because it provides relief far beyond what Plaintiffs have standing to obtain in the suit before this Court—nationwide vacatur is not needed to remedy any harms to the Plaintiffs in this action.

The Order is the latest chapter in a decades-long battle over what constitutes WOTUS, and it raises important questions that should be addressed by the Ninth Circuit. This is especially true because the only district court within the Ninth Circuit that has considered the merits of the NWPR refused to preliminarily enjoin it (*California v. Wheeler*, 467, F.Supp.3d 864 (N.D.Cal. 2020), which is attached as Exhibit A); the same court concluded that remand of the NWPR to the Agencies without vacatur was proper (*California v. Regan*, No. 3:20-cv-03005-RS, Doc. 271 (N.D. Cal. Sept. 16, 2021) ("there has been no evaluation of the merits—or concession by defendants—that would support a

1 finding that the rule should be vacated."), which is attached as Exhibit B); still another
2 district court within the Ninth Circuit recently concluded that vacatur of the NWPR is
3 inappropriate (*Waterkeeper Alliance, Inc. v. EPA*, No. 18-cv-03521-RS, Doc. 125 (Order
4 Granting Motion to Remand) (N.D.Cal. Sep. 16, 2021) ("Were it still necessary to reach
5 the issue, this court would not be inclined to impose vacatur."), which is attached as
6 Exhibit C)); and district courts outside the Ninth Circuit have determined that vacatur is
7 inappropriate (*see, e.g., South Carolina Coastal Conservation League v. Regan*, No. 2:20-
8 cv-01687, Doc. 147 (D.S.C. July 15, 2021) (remanding without vacatur); *Pueblo of
9 Laguna v. Regan*, No. 1:21-cv-00277-WJ-KK, Doc. 40 (D.N.M. September 21, 2021)
10 (noting that the Court followed the line of reasoning expressed in *Waterkeeper Alliance*
11 and *California v. Regan* regarding vacatur), which are attached as Exhibits D & E).

12      For the reasons set forth below, Business-Intervenors request that the Court stay
13 the Order pending appeal because Business-Intervenors are likely to succeed on the merits
14 of each of these issues on appeal; the Order has resulted in immediate, serious, and
15 irreparable injury to Business-Intervenors, their members, and the public; and a stay will
16 not injure any other party and is in the public interest.

17 **I.**     **ARGUMENT**

18     **A.**     **Standard for a Stay Pending Appeal**

19      Four factors govern whether a stay pending an appeal should be granted: "(1)
20 whether the stay applicant has made a strong showing that he is likely to succeed on the
21 merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether
22 issuance of the stay will substantially injure the other parties interested in the proceeding;
23 and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citing
24 *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The first two factors "are the most
25 critical." *Id.* (quotation omitted). A stay "is not a matter of right" but is rather
26 discretionary based "upon the circumstances of the particular case." *Id.* at 433 (internal
27 citations omitted). The party seeking a stay bears the burden to establish each of these
28 elements. *Id.* at 433-34; *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012).

**B.      Business-Intervenors are Entitled to a Stay Pending Appeal.**

Business-Intervenors satisfy all four factors and a stay should be entered pending its appeal to the Ninth Circuit.

> **1.     Business-Intervenors are likely to succeed on the merits of their argument that nationwide vacatur is inappropriate under these circumstances.**

A party seeking a stay must show that there is a "substantial case for relief on the merits." *Nken v. Holder*, 556 U.S. 418, 434 (2009). That standard does not require the movants to show that "it is more likely than not that they will win on the merits." *Id*. Business-Intervenors satisfy the standard for each issue they intend to raise with the Ninth Circuit.

> **a.     This Court has not addressed the merits of Plaintiffs' challenges to the NWPR and the Agencies have not confessed that the NWPR does not comply with the CWA or is arbitrary and capricious.**

The Order is based upon an impermissible *assumption* that the Agencies erred in enacting the NWPR. The Agencies themselves requested remand without vacatur and they did not confess error to the Court in making their request. Further, this Court did not resolve Plaintiffs' claims that the NWPR violates the CWA or is an arbitrary and capricious exercise of the Agencies' rulemaking authority. Rather than conceding a legal flaw with the NWPR, the Agencies' request was occasioned by the change of presidential administrations. Just like the Bush, Obama, and Trump Administrations before it, the Biden Administration expressed its own, different policy goals, and has announced its plans to repeal and replace the NWPR with a new definition of WOTUS. A stated change in agency policy, however, is not an admission that the previous rule violates the law.

It is well-established that agencies may seek remand without vacatur when they wish to revisit their interpretation of a governing statute (here, the regulatory definition of WOTUS), the procedures they followed in reaching their decision regarding the governing statute (here, the NWPR), or the decision's relationship to other agency policies (here, Executive Order 13990, 86 Fed. Reg. 7,037 (Jan. 25, 2021) ("EO 13990")). *See, e.g., SKF*

*USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001). The Agencies' request for remand without vacatur was consistent with the Agencies' authority to reconsider past decisions and to revise, replace, or repeal a decision to the extent permitted by law and supported by a reasoned explanation. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 42 (1983). Under the circumstances presented here, remand without vacatur, as requested by the Agencies, was the proper remedy.

The Court erred by declining the Agencies' request and vacating the NWPR, nationwide, without deciding the merits of Plaintiffs' APA claims. The APA provides that a reviewing court may "set aside agency action" that it finds to be arbitrary and capricious or in violation of the governing statute. 5 U.S.C. § 706(2). In reaching that decision, the court "shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." *Id.*, § 706. A vacatur, by definition, "set[s] aside" an agency rule. Therefore, vacatur is appropriate only where the reviewing court has considered the record, the arguments of the parties, and whether any identified errors are prejudicial.

Consistent with the plain language of the APA, the Ninth Circuit's test for determining whether to grant vacatur requires a consideration of the merits: "[w]hether agency action should be vacated depends on how serious the agency's errors are and the disruptive consequences of an interim change that may itself be changed." *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (quoting and citing to *Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C.Cir.1993)). Inherent in this test is a requirement that the reviewing court evaluate the merits of the Plaintiffs' claim, determine if an error occurred, and then consider the seriousness of that error, just as specified by 5 U.S.C. § 706.

There are sound statutory bases for this rule. The APA requires agencies to follow certain procedures for enacting or amending a rule, including providing for public notice and comment. 5 U.S.C. § 553(b), (c). The Agencies must follow the same procedures to

repeal a rule. 5 U.S.C. § 551(5) ("'[R]ule making means agency process for formulating, amending, or *repealing* a rule.") (emphasis added); *see Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983) ("[A]n agency changing its course by repealing a rule is obligated to supply a reasoned analysis for the change."); *Consumer Energy Council of Am. v. FERC*, 673 F.2d 425, 446 (D.C. Cir. 1982), *aff'd*, 463 U.S. 1216 (1983) ("[T]he APA expressly contemplates that notice and an opportunity to comment will be provided prior to agency decisions to repeal a rule."). Permitting a reviewing court to vacate a rule that has been passed after notice and comment under the APA based only on extra-record assumptions and without an examination of the parties' arguments and the administrative record creates an end-around the rigorous statutory requirements, in clear violation of the plain Congressional intent.

Here, the Court did not examine the administrative record or make any merits finding regarding the alleged errors the Agencies made in promulgating the NWPR; instead, it assumed the unsupported, policy-driven allegations in the Agencies' extra-record declarations were true.

        **b.**    **The Agencies' extra-record declarations cannot take the place of the administrative record on review.**

The Court relied exclusively on the "substantial concerns" expressed by recently installed appointees of the Biden Administration in the Declarations of Radhika Fox, EPA Principal Deputy Assistant Administrator for the Office of Water ("Fox Decl.") (Doc. 72-1) and Jamie Pinkham, Acting Assistant Secretary of the U.S. Army for Civil Works ("Pinkham Decl.") (Doc. 72-2) (together, "Agency Declarations"). This reliance on new, extra-record declarations instead of the NWPR's administrative record was improper and demonstrates why a district court should reach the merits of an APA claim before taking the drastic step of vacating a rule.

Because this matter involves a challenge under the APA and "the focal point for judicial review should be the administrative record in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *San Luis*

7

*& Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014). The Agency Declarations are not part of the administrative records before the Court. (Docs. 21, 22). Rather, they are post-hoc opinions from a new administration that has different political and policy perspectives and objectives from its predecessor. The Court should have treated the Agency Declarations for what they represent (*i.e.*, a new presidential administration's decision to change policy and go in a new direction) and not as a substitute for the administrative record on review.

Through the Agency Declarations, the Biden Administration advised the Court of its "concerns" regarding the NWPR and its intent to repeal and replace the NWPR. The Biden Administration should be required to comply with the APA in repealing and replacing the NWPR. The Order, however, allowed the Administration to avoid the requirements of the APA and suspend implementation of the NWPR, because notice and comment procedure is not required under the APA when a court vacates a rule after making a finding on the merits. *See, e.g.*, *Cement Kiln Recycling Coal v. EPA*, 255 F.3d 855, 872 (D.C. Cir. 2001). The Order thus allowed the Agencies "to do what they cannot do under the APA, repeal a rule without public notice and comment, without judicial consideration of the merit." *Nat'l Parks Conservation Ass'n v. Salazar*, 660 F.Supp.2d 3, 5 (D.D.C. 2009).

Further, if the Court were considering vacatur, the required merits decision would be inappropriate at this stage of the proceedings in any event because the parties were still briefing Plaintiffs' claims. For example, the Business-Intervenors submitted a Cross-Motion for Summary Judgment (Doc. 79) and Memoranda in Support thereof (Doc. 80) on the merits demonstrating that Plaintiffs' concerns regarding the NWPR are unfounded and not supported by the administrative record, and, were in the process of filing a reply and response to Plaintiffs' Reply/Response in Support of Motion for Summary Judgment and Opposition to Cross-Motions for Summary Judgment (Doc. 90). A review of the NWPR reveals that it is consistent with the text, purpose, and structure of the CWA and fully complies with Supreme Court precedent and limits on what may constitute WOTUS

under the CWA. Doc. 80 at 11-21. Business-Intervenors also demonstrated to the Court that the Agencies provided a reasonable and reasoned justification for the NWPR based on science and public policy. Doc. 80 at 21-36.

### c. The Order relies on inapposite Ninth Circuit precedent.

In the Order, this Court stated that there is no Ninth Circuit authority requiring a merits determination before vacating a rule and three Ninth Circuit decisions imply that a merits adjudication is not required before vacating a rule. Order at 7.

It is true that there are no Ninth Circuit decisions directly discussing the issue, which makes the matter ripe for a decision and analysis by a Ninth Circuit panel and supports the issuance of a stay pending appellate review. But there are numerous examples of courts within the Ninth Circuit that have reached the merits of a challenge *before* vacating a rule. *See, e.g., Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015) (finding remand with vacatur appropriate after determining on the merits that EPA's registration of several pesticides was not supported by substantial evidence and was illegal); *North Carolina v. EPA*, 531 F.3d 896, 900 (9th Cir. 2008) (concluding after reaching the merits that EPA's rule must be vacated because fundamental flaws prevented the EPA from promulgating the same rule on remand); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1980); *ASSE Int'l, Inc. v. Kerry*, 182 F.Supp.3d 1059, 1064-65 (C.D. Cal. 2016) (vacating and remanding after the agency agreed to revisit its decision in light of a Ninth Circuit opinion reversing the district court's dismissal of the case and determining that the agency had failed to provide adequate procedural protections consistent with the Due Process Clause).

Additionally, courts outside the Ninth Circuit – particularly decisions from the D.C. Circuit, which considers a large number of APA cases and from which the Ninth Circuit adopted its test for determining whether to grant vacatur– have held that district courts should consider the merits of an APA challenge before vacating a rule. *See, e.g., Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, 988 F.2d 146, 150-51 (D.C. Cir. 1993) (remanding and vacating an agency action only after reaching the merits of the

9

challenge); *United Mine Workers v. Dole*, 870 F.2d 662, 673-74 (D.C. Cir. 1989) (same); *Nat'l Parks Conservation Ass'n v. Salazar*, 660 F.Supp.2d 3, 5 (D.D.C. 2009) ("[G]ranting vacatur here would allow the Federal defendants to do what they cannot do under the APA, repeal a rule without public notice and comment, without judicial consideration of the merits."); *Maine v. Wheeler*, No. 1:14-cv-00264-JDL, 2018 WL 6304402, at *1 (D. Me., Dec. 3, 2018) (same).

Each of the decisions cited by the Court are distinguishable. In *California Communities Against Toxics*, 688 F.3d 989 (9th Cir. 2012), the EPA *admitted* that it had made procedural errors during the APA rulemaking process. That is not the case here. *See* Agencies' Opposed Motion for Voluntary Remand of the NWPR without Vacatur, Doc. 72 (discussing concerns – not errors – with the NWPR); *California v. Regan*, No. 3:20-cv-03005-RS, Doc. 271 (N.D. Cal. Sept. 16, 2021) ("there has been no evaluation of the merits—or concession by defendants—that would support a finding that the rule should be vacated"). Similarly, in *Safer Chemical, Healthy Families v. EPA*, 791 Fed. App'x 653, 656 (9th Cir. 2019), the parties all agreed that remand and vacatur of one rule was appropriate; the district court granted remand without vacatur on two other challenged provisions to allow EPA to fix a confessed error; and the district court reached the merits and denied the plaintiffs' challenge to the remaining provisions. Finally, *ASSE Int'l, Inc. v. Kerry*, 182 F.Supp.3d 1059, 1064-65 (C.D. Cal. 2016), is distinguishable because that district court vacated and remanded a rule after the agency agreed to revisit its decision in light of a Ninth Circuit decision reversing the district court's dismissal of the case and determining on the merits that the agency had failed to provide adequate procedural protections consistent with the Due Process Clause.

Additionally, the only district court within the Ninth Circuit to consider the merits of a challenge to the NWPR concluded that the plaintiffs (*i.e.*, seventeen states, the North Carolina Department of Environmental Quality, which was run by the current EPA Administrator, the District of Columbia, and the City of New York) had failed to establish a likelihood of success on the merits of their various challenge to the NWPR. *See*

10

*California v. Wheeler*, 467, F.Supp.3d 864 (N.D.Cal. 2020), which is attached as <u>Exhibit B</u>. Addressing plaintiffs' interlocutory motion, that district court refused to preliminarily enjoin the NWPR after evaluating the merits and concluding that the NWPR was adopted in full compliance with the APA and the plaintiffs were not likely to succeed on challenges nearly identical to those before this Court.

### d. The Court erred by vacating the NWPR nationwide instead of limiting the Order to plaintiffs.

The Court's decision to grant nationwide vacatur is inconsistent with the principle that "[r]emedies . . . ordinarily operate with respect to specific parties." *California v. Texas*, 141 S.Ct. 2104, 2115 (2021). Instead of tailoring its Order to the parties before it, the Court vacated the NWPR nationwide without even reaching the merits of Plaintiffs' APA challenges to the NWPR. That decision is particularly problematic in light of the fact that there are at least a dozen cases in which numerous parties were actively litigating the NWPR and the Order effectively ended those cases. *See, e.g., California v. Wheeler*, 467 F.Supp.3d. (N.D.Cal. 2020) (similar challenge to the NWPR involving 40 states, including the State of Arizona, the District of Columbia, and City of New York); *Waterkeeper Alliance, Inc. v. EPA*, No. 18-cv-03521-RS, Doc. 125 (Order Granting Motion to Remand) (N.D.Cal. Sep. 16, 2021) ("Were it still necessary to reach the issue, this court would not be inclined to impose vacatur.").

Additionally, nationwide vacatur is irreconcilable with the remedy imposed in the last round of litigation involving the 2015 WOTUS Rule. For example, the Southern District of Georgia held the 2015 Rule substantively and procedurally unlawful but determined that, because "administrative efforts are already underway to repeal and replace the WOTUS Rule with a new [lawful] rule," "an order vacating the Rule may cause disruptive consequences to the ongoing administrative process." *Georgia v. Wheeler*, 418 F. Supp. 3d 1336, 1382 (S.D.Ga. 2019); *see also Texas v. EPA*, 389 F. Supp. 3d 497, 506 (S.D.Tex. 2019) (remanding without vacatur given risk of disruption and in order to "facilitate the Agencies' active attempts to improve on their work of protecting

11

the environment and bringing predictability and clarity to the definition of the phrase WOTUS").  These cases demonstrate that remand without vacatur was the appropriate remedy under the circumstances and that the Court should have limited any remedy to the Plaintiffs before it.

### 2. Business-Intervenors will be irreparably injured absent a stay.

In evaluating the disruptive effects of vacatur, courts consider consequences to regulated entities, including potential chilling or even suspension of industry activity, lost jobs, and other costs as "essential facts" that are "clearly relevant." *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1286 (11th Cir. 2015). The Court's decision to vacate the NWPR casts Business-Intervenors' members back into the same uncertainty that has plagued them for years under vague, overbroad, and frequently changing jurisdictional rules. This will require businesses to suspend critical projects at the risk of jobs and livelihoods. *See* Business-Intervenors Separate Statement of Facts, Exhibit A, Standing Declaration of Steve Trussell (Doc. 81-1) at ¶¶ 11-13 (explaining potential disruption and harm to Business-Intervenors and the regulated community that justified intervention).

Clarity regarding which waters or land areas are jurisdictional is critical to the vitality of the regulated entities that operate under these regulations nationwide. And owners or operators who make a mistake face severe criminal and civil penalties. Under a broader definition of WOTUS, regulated entities across the board, in particular those in the arid West, would lose the clarity and consistency that the Agencies finally provided with the clear jurisdictional standards established by the NWPR, which have now been in effect for over a year. Absent the NWPR's clear, bright-line rules, regulated entities are concerned whether they would be obligated to obtain federal permits under the threat of civil and criminal enforcement. Such doubts will and already have delay economic growth due to the significant cost and timing of pursuing such permits.

Business-Intervenors, their members, and regulators have already been injured by the decision to vacate the NWPR nationwide:

- **Exhibit F: Letter from the Director of the Arizona Department of Environmental Quality ("ADEQ") to the EPA Administrator dated October 1, 2021**. This letter demonstrates that ADEQ spent $2 million dollars implementing the NWPR, which included a significant portion of staff time taken away from mission critical activities. The Order rendered all of this work by ADEQ's staff moot, and it raises questions about the scope and role of the recently enacted Arizona Surface Water Protection Program.

- **Exhibit G (Doc. 81-1): Declaration of Steve Trussell, Executive Director, Arizona Rock Products Association**. This declaration, filed to demonstrate standing, outlines the harms to Business-Intervenors that the vacatur will cause. Specifically, it will deprive Business-Intervenors and their members of regulatory clarity and predictability; subject them to heightened burdens with respect to regulations, and permitting; force them to obtain costly jurisdictional determinations and permits; impede their property rights and interests; and subject them to potential criminal or civil penalties. It demonstrates why the NWPR should not have been vacated.

- **Exhibit H (Doc. 91): Declaration of Don Parrish, Senior Director of Regulatory Affairs, American Farm Bureau Federation**. This declaration demonstrates the history of the WOTUS litigation from the Business-Intervenors' perspective and the numerous harms that resulted from the prior definitions of WOTUS. The declaration also explained the general and specific harms to Business-Intervenors that the Court's vacatur will cause both by vacating the rule, ¶¶ 65-75, and by imposing the pre-2015 regime that the Court's vacatur reintroduced, ¶¶ 47-54.

- **Exibit I: Declaration of Matt Mains, Development Specialist, The Drees Company**. This declaration outlines the harms to a homebuilder by the Order. These harms include increased costs associated with increased regulations, hiring consultants, and new permitting; lost and jeopardized jurisdictional determinations; delayed timing for projects; and generally more regulation and costs associated with projects. The declaration details how the Court's Order has caused significant delays and an additional $190,000 in costs at the company's "Wach Property" in Burlington, Kentucky. ¶ 18.

- **Exhibit J: Declaration of Rick Wajda, Chief Executive Officer, Indiana Builders Association**. This declaration further explains the harms to homebuilders. It explains that the costs to mitigate isolated wetlands can be as much as $120,000 per acre in Indiana (¶ 10); mitigation required by the Court's Order can add $5,000 in additional costs to new housing developments in Indiana (¶ 15); and each $1,000 added to the cost of a house in Indiana takes 4,304 out of the housing market (¶ 16). This

13

- **Exhibit K: Declaration of Jim McCulley, Owner, Watershed Eco, LLC**. This declaration outlines harms and impacts to 77 projects in the Eastern United States that are valued at $100 million and are affected by the Court's Order. The declaration details the numerous ways that the Court's Order impacts these projects, including delays, increased costs, and regulatory uncertainty.

- **Exhibit L: Declaration of Michael W. Johnson, CEO and President of the National Stone, Sand & Gravel Association**. This declaration explains the scope and reach of CWA jurisdiction and its direct impacts on the costs of planning, financing, constructing, and operating an aggregate facility. It further outlines the additional permitting and mitigation costs, delays in permitting, and additional expenses to companies and the public.

Additionally, while the Agencies have stated their intent to replace the NWPR, it is not yet clear *how or to what extent*. Because the Order vacated the NWPR during the interim period prior to promulgation of a replacement rule, regulated entities, no less than federal and state regulators, not only would need to adjust back to the former regime, but also would need to prepare for *another* and unpredictable switch in the scope of jurisdiction. In short, vacatur requires "an interim change that may itself be changed" the result of which is to "gratuitously undermine the stability" of many of the country's biggest and most vital industries. *Local Joint Exec. Bd. of Las Vegas v. Nat'l Labor Relations Bd.*, 840 Fed. App'x 134, 137-38 (9th Cir. 2020) (internal quotation marks omitted). The Order thus exacerbates uncertainty over whether features are jurisdictional, with the enormous legal and practical consequences that can entail, and thereby further constrains landowners' ability to use their property productively. By refusing to maintain the status quo under the NWPR for the brief period while the Agencies engage in a new rulemaking process, this Order will cause serious economic and social harm to Business-Intervenors, their members, and the employees of their members.

14

### 3.   Plaintiffs will not be substantially injured by a stay.

Balanced against these significant harms, Plaintiffs offered only speculation that they will be prejudiced by remand without vacatur; there is no substantial evidence that a stay would harm their interests. Plaintiffs have not pointed to any specific imminent or tangible harms as a result of the NWPR other than their assertion that certain ephemeral features are being determined not to be subject to the CWA, which in any event occurred prior to the NWPR and under the policies that the Agencies have re-imposed as a result of the Order. In the year-plus that the NWPR has been the law of the land, Plaintiffs have not moved for a preliminary injunction based on a likelihood of immediate and irreparable harm from the operation of the NWPR. In fact, the only district court in the Ninth Circuit that has been asked to preliminarily enjoin the NWPR denied that request and held that the plaintiffs were unlikely to succeed on the merits. *California v. Wheeler*, 467, F.Supp.3d 864 (N.D. Cal. 2020). And a preliminary injunction against the NWPR, granted by a district court in Colorado, was reversed by the Tenth Circuit. *See Colorado v. EPA*, 989 F.3d 874 (10th Cir. 2021).

Plaintiffs will not be harmed by a stay pending appeal for several reasons. First, federal protections remain in place to prevent the speculative harms that are discussed in the Order and Agency Declarations. As the Agencies explain in the NWPR, "[t]he Agencies view ephemeral features, such as arroyos or ditches, as potential conveyances of discharges of pollutants from points sources subject to NPDES permitting requirements." NWPR, 85 Fed. Reg. at 22,319; *see also* Doc. 80 at 17-20 (discussing how NWPR considered and ensured that water quality would be protected). Second, the speculative harms identified by Plaintiffs and in the Agency Declarations overlook the important role that States and Tribes play in protecting their own waters, including the fact that States and Tribes can regulate more water features or the same water features more stringently than is allowed under the CWA and have done so when considered appropriate. Doc. 80 at 18-20 (discussing primary authority of states over the development and use of land and water resources and steps taken to regulate additional water features both by the State of

Arizona and the Tohono O'odham Nation). In fact, Plaintiffs' claim is contradicted by Congress' "statement of policy" in the CWA (33 C.F.R. § 1251(b)) recognizing an essential regulatory role for States and Tribes under the structure of the CWA, which the Supreme Court has recognized: Congress did not intend to "alter[] the federal-state framework by permitting federal encroachment" upon "traditional state power" over land and water use. *Solid Waste Agency of Northern Cook Cty. v. Army Corps of Engineers,* 531 U.S. 159, 173 (2001) ("*SWANCC*").

### 4. The public interest supports a stay.

This case involves a challenge to the NWPR under the APA. It is in the public interest to consider the merits of challenges to a rule issued after notice and comment before vacating the rule and undoing the substantial resources and thousands of hours of work that the Agencies, States, and interested parties put into promulgating and litigating that rule. It also is in the public interest that the procedures of the APA be observed, including an opportunity for public comment on any proposed repeal after a full, fair, and complete judicial review of the merits. Furthermore, it is not in the public interest to change the definition of WOTUS from one that provides regulatory certainty to a complicated approach that hinges on a very subjective significant nexus evaluation.

Finally, the Agency Declarations (Doc. 72-1 ¶ 15, 72-2 ¶ 15) refer to projects that were not subject to CWA jurisdiction under the NWPR. Those projects included schools, parks, farms, housing developments, solar farms, wetland restoration and infrastructure. Memorandum from EPA & Corps, *Review of U.S. Army Corps of Engineers ORM2 Permit and Jurisdictional Determination Data to Assess Effects of the Navigable Waters Protection Rule, Attachment A, Data Analysis* 12-23, https://www.epa.gov/sites/default/files/2021-06/documents/combined_4_thru_12_508.pdf (June 8, 2021) (last visited Oct. 20, 2021). It is in the public interest for these types of projects to continue forward without being subject to the costly regulatory roller coaster caused by the Order. For these reasons, public interest supports a stay of the Court's Order pending an appeal to the Ninth Circuit.

16

## III. CONCLUSION

For the foregoing reasons, Business-Intervenors request that the Court stay the Order pending its appeal to the Ninth Circuit. Alternatively, Business-Intervenors ask the Court vacate the Order or limit its application to the Plaintiffs.

RESPECTFULLY SUBMITTED this 25th day of October, 2021.

GALLAGHER & KENNEDY, P.A.


By: */s/ Bradley J. Glass*
   D. Lee Decker
   Bradley J. Glass
   Stuart S. Kimball
   2575 East Camelback Road
   Phoenix, Arizona 85016-9225

   Attorneys for Business-Intervenors-Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2021, I electronically transmitted the foregoing Notice of Appeal to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

   */s/ Bradley J. Glass*

8699129v1/21054-0011

17