Stuart C. Gillespie (CO Bar No. 42861) *(admitted pro hac vice)*
Alexandra Schluntz (MA Bar No. 704320) *(admitted pro hac vice)*
EARTHJUSTICE
633 17th Street, Suite 1600
Denver, CO 80202
(303) 996-9616
sgillespie@earthjustice.org
aschluntz@earthjustice.org

Janette K. Brimmer (WA Bar No. 41271) *(admitted pro hac vice)*
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA 98104
(206) 343-7340
jbrimmer@earthjustice.org

*Counsel for Pascua Yaqui Tribe, Quinault Indian Nation,*
*Menominee Indian Tribe of Wisconsin, Tohono O'odham*
*Nation, Fond du Lac Band of Lake Superior Chippewa,*
*and Bad River Band of Lake Superior Chippewa*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA AT TUCSON

| | |
|---|---|
| Pascua Yaqui Tribe, *et al.*, | Case No. 4:20-cv-00266-RM |
| Plaintiffs, | |
| v. | Assigned Judge: Rosemary Márquez |
| United States Environmental Protection Agency, *et al.*, | **TRIBES' OPPOSITION TO BUSINESS-INTERVENORS' MOTION FOR A STAY PENDING APPEAL** |
| Defendants, | |
| and | |
| Arizona Rock Products Association, *et al.*, | |
| Intervenors-Defendants, | |
| and | |
| Chantell Sackett; Michael Sackett, | |
| Intervenors-Defendants. | |

Plaintiffs Pascua Yaqui Tribe, Tohono O'odham Nation, Quinault Indian Nation, Menominee Indian Tribe of Wisconsin, Fond du Lac Band of Lake Superior Chippewa, and Bad River Band of Lake Superior Chippewa (the "Tribes") oppose Business-Intervenors' ("Industry") motion for a stay pending appeal of this Court's order remanding and vacating the Navigable Waters Protection Rule ("Navigable Waters Rule" or "Rule"). The requested stay would give Industry a free pass to destroy and impair waters otherwise protected by the Clean Water Act, thereby causing irreversible harm to the Tribes and Nation's waters. Industry is not entitled to such extraordinary relief.

**INTRODUCTION**

The Court vacated and remanded the Rule due to its "fundamental, substantive flaws" and the fact that leaving it in place "would risk serious environmental harm." *Pascua Yaqui Tribe v. U.S. EPA*, 2021 WL 3855977, at *5 (D. Ariz. Aug. 30, 2021), ECF No. 99. The District of New Mexico also vacated and remanded the Rule due to the "seriousness of the [Rule's] deficiencies" and the "very real possibility of serious environmental harm." *Navajo Nation v. Regan*, 2021 WL 4430466, at *3 (D.N.M. Sept. 27, 2021). Both rulings restore the status quo—that is, the "pre-2015 regulatory regime [] familiar to the Agencies and industry alike"—while the Agencies undertake a new rulemaking process. *Pascua Yaqui Tribe*, 2021 WL 3855977, at *5. Under this familiar regime, Industry can apply for and obtain jurisdictional determinations for proposed projects, just as it has done for decades in compliance with the Clean Water Act. Now, after an almost two-month delay, Industry seeks to overturn the familiar status quo and revive the flawed Rule by requesting a stay pending its appeal to the Ninth Circuit.

Industry has failed to demonstrate that it is entitled to such extraordinary relief. First, Industry is not likely to succeed on its appeal. It cannot appeal this Court's non-final order remanding the Rule to the Agencies for reconsideration. Even assuming Industry could overcome that jurisdictional defect, it has not identified any errors in the

Court's well-reasoned decision.  To the contrary, multiple courts have reaffirmed this Court's reasoning—a point Industry ignores.

Second, Industry falls far short of the bedrock requirement of irreparable harm.  It loses little to nothing in abiding by the familiar status quo—the pre-2015 regulatory structure for seeking and obtaining permits for projects.  While its chief complaint is "regulatory uncertainty," the Court already rejected that concern as an inadequate basis for leaving the unlawful Rule in place on remand.  If anything, Industry's recycled concerns cut *against* a stay, which would have the counter-productive effect of reinstating a Rule that the Agencies are actively working to repeal and replace.

Finally, the balance of equities and public interest tip sharply against a stay due to the "significant, actual environmental harms" caused by the Navigable Waters Rule. *Pascua Yaqui Tribe*, 2021 WL 3855977, at *5 (quoting Fox Decl. & Pinkham Decl. ¶¶ 17-20, ECF Nos. 72-1 & 72-2).  Reinstating that Rule would lock in years' worth of additional, irreversible harm to the environment and tribes.  The Court should deny Industry's request for a stay pending appeal.

## BACKGROUND

To avoid unnecessary duplication, the Tribes respectfully refer the Court to the factual background provided in the Court's Order and the Tribes' briefs.  *See id.* at *1-4; Pls.' Mem. Supp. Mot. Summ. J. 10-23, ECF No. 48; Pls.' Mem. Opp'n Mot. Remand 2-4, ECF No. 74.

## ARGUMENT

"A stay [pending appeal] is not a matter of right."  *Washington v. Trump*, 847 F.3d 1151, 1164 (9th Cir. 2017) (per curiam) (quoting *Nken v. Holder*, 556 U.S. 418, 433 (2009)).  This holds true "even if irreparable injury might otherwise result," which is not the case here.  *Id.*  The U.S. Supreme Court has set forth a four-factor test to evaluate a request for a stay pending appeal:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken*, 556 U.S. at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  A party requesting a stay pending appeal bears the burden of showing that the circumstances justify an exercise of the court's discretion.  *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012).  Industry has not satisfied this four-factor test and thus is not entitled to a stay of this Court's order.

**A.    INDUSTRY-INTERVENORS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR APPEAL.**

"An applicant for a stay pending appeal must make 'a strong showing that he is likely to succeed on the merits.'"  *Al Otro Lado v. Wolf*, 952 F.3d 999, 1010 (9th Cir. 2020) (quoting *Nken*, 556 U.S. at 434).  Industry falls far short of this requirement.  As an initial matter, Industry cannot appeal this Court's non-final order remanding the Rule, and thus has no basis to seek a stay in this Court.  Industry also fails to demonstrate any error in the Court's decision to remand the Rule with vacatur.

**1.    <u>Industry Cannot Appeal this Court's Non-Final Order.</u>**

Under section 1291, appellate jurisdiction extends only to "final decisions of the district courts."  28 U.S.C. § 1291.  Remand orders are generally not "final" for purposes of section 1291.  *Alsea Valley All. v. Dep't of Com.*, 358 F.3d 1181, 1184 (9th Cir. 2004). The Ninth Circuit has thus repeatedly dismissed attempts by non-agency parties to appeal orders that remand agency actions with vacatur.  *See, e.g.*, *id.*; *Pit River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069, 1075-77 (9th Cir. 2010).  The reason for this rule is simple: non-agency parties can seek "appellate review of the eventual outcome of the district court's decision"—that is, the result of the remand process.  *Alsea Valley*, 358 F.3d at

1185.  Until then, appellate review is not available and might be "entirely unnecessary" as "the action taken by the [agency] on remand" could provide the non-agency party "with all the relief it seeks."  *Id.*[1]

That same reasoning applies here where the Agencies are undertaking a new rulemaking on remand.  Industry will have an "opportunity to influence the ultimate shape of" the resulting rule.  *Id.* at 1185.  In fact, Industry is actively engaged in the process, which could provide it "with all the relief it seeks" and obviate the need for appeal.  *Id.*  If Industry nonetheless believes that the resulting rule is "unlawful and adverse to its interests," it can challenge the rule at that point.  *Id.*  But "[u]ntil all these contingencies have played out," this Court's order is not final for the purposes of an appeal under section 1291.  *Id.*[2]

In the event that Industry tries to circumvent *Alsea Valley* by arguing that the remand order has the practical effect of an injunction, that argument must fail.  The Ninth Circuit has repeatedly rejected such an end-run, holding that an order vacating and remanding a rulemaking is *not* equivalent to an injunction because it does *not* compel the relevant agency to take or refrain from any action.  *Alsea Valley*, 358 F.3d at 1186; *Pit River Tribe*, 615 F.3d at 1078.  That reasoning applies here.  This Court's order

---

[1] By contrast, the Ninth Circuit held that remand orders are final when they are appealed by *agencies* because "only *agencies* compelled to refashion their own rules face the unique prospect of being deprived of review altogether."  *Alsea Valley*, 358 F.3d at 1184. In this case, the Agencies do not appeal the Court's order remanding the Rule.

[2] The remand order is non-final for an additional reason: the Court did not dispose of all the claims in the case or enter final judgment.  *Cheng v. Comm'r IRS*, 878 F.2d 306, 310 (9th Cir. 1989) ("[A]n order must conclusively terminate the litigation in order to be considered final.").  The parties are currently assessing how to proceed with the litigation in light of the ongoing rulemaking process.  Joint Mot. Ext., ECF No. 101 ¶ 12.  While the Court dismissed some of the Tribes' claims, that is not a basis for appellate jurisdiction.  *See Pit River Tribe*, 615 F.3d at 1077 (rejecting the argument that "a remand accompanied by dismissal of the action is always and necessarily a final order").

remanding the Rule with vacatur cannot be construed as an order granting or denying an injunction.  Otherwise, it would be possible to "classify as 'injunctive' all declaratory relief that deems an agency rule unlawful," which "would be contrary to [the] important principle that" 28 U.S.C. § 1292(a)(1) should be construed narrowly.  *Alsea Valley*, 358 F.3d at 1186.  Even assuming the remand order had the practical effect of an injunction, which it does not, Industry fails to demonstrate any "irreparable[] consequences" that would warrant an interlocutory appeal, as explained below in Section II.  *Pit River Tribe*, 615 F.3d at 1077.  Because Industry lacks jurisdiction to seek an appeal of this Court's non-final remand order, it is not entitled to a stay pending its improper appeal.

## 2. Courts Have Broad Equitable Discretion to Vacate Rules on a Motion for Voluntary Remand.

Industry argues that courts cannot vacate agency rules on a motion for voluntary remand unless they reach the merits.  Industry Mem. Supp. Mot. Stay., ECF No. 105 at 5-7.  But courts in this circuit have repeatedly rejected that argument.  *See Pascua Yaqui Tribe*, 2021 WL 3855977, at *4 (collecting cases).  Indeed, since this Court's decision, two other courts have reaffirmed their broad equitable authority to "vacate an agency's action without first making a determination on the merits," citing this Court's reasoning with approval.  *In re Clean Water Act Rulemaking*, 2021 WL 4924844, at *4-5 (N.D. Cal. Oct. 21, 2021); *see also Navajo Nation*, 2021 WL at 4430466, at *3.  Industry ignores those decisions, which further demonstrate that Industry is unlikely to succeed on the merits of its improper appeal.

Remands, including voluntary remands, are typically accompanied by vacatur of the challenged rule; courts only leave agency actions in place "when equity demands."  *Cal. Cmties. Against Toxics v. U.S. EPA* ("CCAT"), 688 F.3d 989, 992 (9th Cir. 2012) (quoting *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995)).

Consistent with this broad guidance, courts in this circuit have repeatedly vacated agency actions on a motion for voluntary remand prior to a conclusive determination on the merits. *See, e.g.*, *In re Clean Water Act Rulemaking*, 2021 WL 4924844, at *10; *All. for Wild Rockies v. Marten*, 2018 WL 2943251, at *2-4 (D. Mont. June 12, 2018); *ASSE Int'l, Inc. v. Kerry*, 182 F. Supp. 3d 1059, 1064-5 (C.D. Cal. 2016); *N. Coast Rivers All. v. U.S. Dep't of the Interior*, 2016 WL 8673038, at *6 (E.D. Cal. Dec. 16, 2016).

Equity often demands such a result: "Leaving an agency action in place while the agency reconsiders may deny the petitioners the opportunity to vindicate their claims in federal court and would leave them subject to a rule they have asserted is invalid." *In re Clean Water Act Rulemaking*, 2021 WL 4924844, at *4. That concern was particularly acute here where the Agencies acknowledged substantial flaws in the Rule and yet requested voluntary remand and *dismissal* of the Tribes' claims. That request would have insulated the Rule from judicial review, locking in years' worth of irreparable harm to the Nation's waters and the Tribes—with absolutely no legal recourse.

Courts have also rejected—time and again—Industry's arguments that remand with vacatur requires conclusive findings on the merits. *See* ECF No. 105 at 5-7. As an initial matter, nothing in the Administrative Procedure Act (APA) strips the court of its broad authority "to do equity and to mould each decree to the necessities of the particular case." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)). Rather, courts have recognized that "because vacatur is an equitable remedy, and because the APA does not expressly preclude the exercise of equitable jurisdiction, the APA does not preclude the granting of vacatur without a decision on the merits." *In re Clean Water Act Rulemaking*, 2021 WL 4924844, at *5 (quoting *Ctr. for Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236, 1241-42 (D. Colo. 2011)).

Industry misleadingly suggests that the Ninth Circuit has only vacated agency actions after a ruling on the merits. ECF No. 105 at 9. But none of the Ninth Circuit

cases cited by Industry involved a request for voluntary remand, as occurred here. Accordingly, none of those cases held (or even addressed) that a merits determination was a pre-requisite to vacatur—rather, they all underscore the general principle that remand with vacatur is the presumptive remedy. *See, e.g., Pollinator Stewardship Council v. U.S. EPA*, 806 F.3d 520, 532 (9th Cir. 2015). When presented with the actual issue here, the Ninth Circuit has in fact vacated rules on a motion for voluntary remand. *See Safer Chems., Healthy Fams. v. U.S. EPA*, 791 F. App'x 653, 656 (9th Cir. 2019). One of the cases cited by Industry—*ASSE Int'l, Inc.*, 182 F. Supp. 3d at 1064—confirms that very approach. There, the court held that "[c]ourts faced with a motion for voluntary remand employ the same equitable analysis"—the two-prong *Allied Signal* test—that "courts use to decide whether to vacate agency action after a rul[ing] on the merits." *ASSE Int'l, Inc.*, 182 F. Supp. 3d at 1064 (quotations omitted).

The *Allied-Signal* test does not require a merits determination either, contrary to Industry's argument. *See* ECF No. 105 at 6. The first prong of that test turns on the seriousness of the error—that is, the "extent of doubt whether the agency chose correctly." *Allied-Signal, Inc. v. U.S. Nuclear Reg. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993). "Conclusive findings of agency error are thus sufficient *but not necessary for this factor to support vacatur*." *In re Clean Water Act Rulemaking*, 2021 WL 4924844, at *5 (emphasis added). Courts can measure the extent of doubt in multiple ways, including the degree to which the agency action contravenes the purposes of the statute in question; whether the same rule could be adopted on remand; and whether the action was the result of reasoned decisionmaking. *See Pollinator Stewardship*, 806 F.3d at 532.

To that point, Industry even acknowledges that remand with vacatur is appropriate before a merits determination, such as when the agency "*admitted* that it had made procedural errors." ECF No. 105 at 10. That is what occurred in *Safer Chemicals*: the agency's concession established the seriousness of the errors that warranted vacatur. 791 F. App'x at 656. Industry is, however, wrong to suggest that an agency concession is a

-8-

necessary predicate of vacatur.  ECF No. 105 at 10.  For example, in *CCAT*, the Ninth
Circuit identified serious errors in a challenged rule, even though the agency had
maintained that its rule was valid.  *CCAT*, 688 F.3d at 993.  Likewise, district courts have
found serious errors, even where the agency "does not admit fault."  *In re Clean Water
Act Rulemaking*, 2021 WL 4924844, at *8; *see also Ctr. for Native Ecosystems*, 795 F.
Supp. 2d at 1242.  It is therefore the Court's role to assess the seriousness of the errors in
a rule, whether or not the agency admits fault.

        The Court did just that in this case by assessing the seriousness of the errors in the
Rule.  The Tribes identified fundamental flaws in the Rule, and the Agencies provided
detailed declarations documenting those errors and acknowledging the need to replace the
Rule.  *Pascua Yaqui*, 2021 WL 3855977, at *5.  The Court found that these were "not
mere procedural errors," but "fundamental, substantive flaws that cannot be cured
without revising or replacing the [Rule's] definition of 'waters of the United States.'"  *Id.*
That finding weighed heavily against leaving the flawed Rule in place on remand.  *Id.*

        Despite these serious errors, Industry nonetheless claims that the Court could not
vacate the Rule absent compliance with the APA's notice-and-comment requirements.
ECF No. 105 at 6-7.  The argument ignores the distinction between judicial decisions and
agency actions.  As explained in *Center for Native Ecosystems*, "a court's decision to
vacate an agency's action is not subject to the APA['s]" notice-and-comment
requirements.  795 F. Supp. 2d at 1241 n.6.  Rather, courts assess remand without
vacatur based on the two-prong *Allied-Signal* test, which is designed to ensure an
equitable outcome.  *Id.*  Courts can decline to vacate a rule "when equity demands," and
often do so to ensure against environmental harm while agencies undertake a new
rulemaking.  *See In re Clean Water Act Rulemaking*, 2021 WL 4924844, at *4; *Navajo
Nation*, 2021 WL 4430466, at *3; *Ctr. for Native Ecosystems*, 795 F. Supp. 2d at 1242.
Because no such circumstance was present here, the Court remanded the Rule with
vacatur.  Industry is unlikely to succeed on the merits of its appeal.

3.    **The Court Vacated and Remanded the Navigable Waters Rule after Carefully Considering the Facts and Law.**

The Court vacated and remanded the Rule after a careful analysis of the law and facts. *See Pascua Yaqui Tribe*, 2021 WL 3855977, at *4-6.  Industry fails to identify any error in the Court's reasoning, let alone an abuse of discretion that would be required to prevail on appeal.  *See, e.g.*, *Teutscher v. Woodson*, 835 F.3d 936, 942 (9th Cir. 2016) (reviewing court's equitable remedy for an abuse of discretion).

The Court first found that the "fundamental, substantive flaws" in the Rule weighed against remand without vacatur.  *Pascua Yaqui Tribe*, 2021 WL 3855977, at *5. That thorough analysis disproves Industry's baseless contention that the Court "did not examine the administrative record."  ECF No. 105 at 7.  The Court summarized the fatal flaws in the Rule, including the fact that the Rule "disregards established science and the advice of the Agencies' own experts."  *Pascua Yaqui*, 2021 WL 3855977, at *5.  In support of these points, the Court pin-cited the Tribes' extensive briefing, which was grounded in citations to the record.  *Id.* (citing ECF No. 48 at 25-41; ECF No. 74 at 3, 6-7; ECF No. 90 at 12-36).  In fact, the Tribes provided the Court with every one of the cited record documents.  ECF No. 48.6 at 2-17 (index for excerpts of record); ECF 90-1 (index for additional excerpts of record).  Based on its review of the record, including "those parts of it cited by a party," 5 U.S.C. § 706, the Court found serious errors in the Rule.  *Pascua Yaqui*, 2021 WL 3855977, at *5.[3]

The Court also relied on the declarations submitted by the Agencies, which further corroborate the serious errors in the Rule.  *See id*, at *5.  Contrary to Industry's mischaracterization, those declarations are not "unsupported, policy-driven allegations"

---

[3] Industry claims that vacatur was inappropriate because the parties were "still briefing" the merits.  ECF No. 105 at 8.  That's inaccurate: the Tribes fully briefed their motion for summary judgment.  ECF Nos. 48, 90.  It's also misleading: Industry *refused* to file its optional reply brief before the Court determined whether to vacate the rule.  ECF No. 86 at 6.  That "strategic choice" is not a basis for avoiding the default remedy of vacatur.  *In re Clean Water Act Rulemaking*, 2021 WL 4924844, at *5.

or a "substitute for the administrative record on review." ECF No. 105 at 7-8.  Rather, the declarations are grounded in the administrative record itself.  *See* ECF Nos. 72-1 & 72-2 ¶10 (explaining that the Agencies "carefully reassessed the administrative record for and the legal and scientific basis of the [Rule]").  For example, the declarations identify statements "in numerous places in the [Rule's] administrative record" where the Agencies "did not rely on" on their scientific analysis of the Rule's impacts.  *Id.* ¶12. The Court properly considered those record statements—made by the Agencies themselves—which highlight the serious errors in the Rule, including the fact that the Rule "disregards established science and the advice of the Agencies' own experts."  *See Pascua Yaqui*, 2021 WL 3855977, at *5.

The Court also found that leaving the rule in place "would risk serious environmental harm"—a concern that further weighed against remand without vacatur. *Id.*  To support this finding, the Court considered the Agencies' declarations documenting the ongoing harms caused by the Rule, including the undisputed fact that the Rule stripped Clean Water Act jurisdiction over at least 333 projects, such as at the Rosemont Mine site.  *Id.* (citing ECF Nos. 72-1 & 72-2 ¶15).  That evidence was properly before the Court in assessing the serious harms caused by Rule.  *Texas v. Biden*, 2021 WL 4552547, at *3 (N.D. Tex. July 19, 2021) ("The record rule does not apply to remedies.").

Finally, the Court found that Industry's concerns about "regulatory uncertainty" did not warrant leaving the Rule in place.  *Pascua Yaqui*, 2021 WL 3855977, at *5. Industry is "familiar" with the pre-2015 regulatory regime, which the Agencies plan to restore while they develop a new regulatory definition of waters of the United States.  *Id.* Industry has not identified any serious disruptive consequences from returning to the status quo, and thus is unlikely to succeed on appeal.

1

2

### 4.    <u>The Court Properly Vacated the Navigable Waters Rule, Reinstating the Pre-2015 Regulatory Framework.</u>

3

When a court sets aside agency rules, "the ordinary result is that the rules are

4

vacated—not that their application to the individual petitioners is proscribed." *Empire*

5

*Health Found. v. Azar*, 958 F.3d 873, 886 (9th Cir. 2020) (citation omitted), *cert.*

6

*granted*, 141 S.Ct. 2883 (Mem.) (July 2, 2021). Consistent with that straightforward

7

principle, the Court vacated the Rule and reinstated the pre-2015 regulations for

8

determining "Waters of the United States." *See Action on Smoking & Health v. Civ.*

9

*Aeronautics Bd.*, 713 F.2d 795, 797 (D.C. Cir. 1983) (per curiam) (vacatur causes a

10

"reinstat[ement] [of] the rules previously in force"). "In light of that order," the Agencies

11

"halted implementation of the Navigable Waters Protection Rule" and are applying the

pre-2015 Regulations to ensure protections for the Nation's waters.[4]

12

Industry now takes issue with this regulatory clarity, asserting that the Court

13

should have only vacated the Rule as it applied "to the parties before it." ECF No. 105 at

14

11. But Industry never requested such a convoluted remedy; it thus forfeited the issue on

15

appeal. The argument is also wrong. Industry suggests, without elaboration, that

16

"[r]emedies . . . ordinarily operate with respect to specific parties." *Id*. (quoting

17

*California v. Texas*, 141 S.Ct. 2104, 2115 (2021)). That decision, however, dealt with

18

standing (*i.e.*, what was required to get into court) and has no bearing on the scope of

vacatur. *In re Clean Water Act Rulemaking*, 2021 WL 4924844, at *6.

19

Vacatur, by definition, is directed at the agency action—"the whole or a part of an

20

agency rule" under review. 5 U.S.C. § 551(13). Rules are not set aside as applied to

21

specific parties; rules are set aside, full-stop. *See O.A. v. Trump*, 404 F. Supp. 3d 109,

153 (D.D.C. 2019) (rejecting argument that vacatur "should be limited to the plaintiffs in

22

23

24

---

[4] *See* EPA, *About Waters of the United States*, https://www.epa.gov/wotus/about-waters-united-states#guidance (last visited Nov. 10, 2021) (explaining current implementation of "Waters of the United States" consistent with the Court's order vacating and remanding the Rule).

25

26

this case").  Courts thus routinely vacate regulations of broad applicability without requiring (or even mentioning a need for) plaintiffs to show harms stemming from each unlawful application.  *See, e.g.*, *Pollinator Stewardship*, 806 F.3d at 532-33 (vacating EPA's registration of sulfoxaflor); *Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*, 575 F.3d 999, 1021 (9th Cir. 2009) (affirming vacatur of rule establishing management requirements for National Forest System roadless areas); *NRDC v. EPA*, 526 F.3d 591, 608 (9th Cir. 2008) (vacating storm water discharge rule); *Nat'l Mining Ass'n*, 145 F.3d at 1409 (affirming vacatur of rule defining dredge material).[5]  That approach ensures regulatory clarity—once a rule is declared invalid, it no longer applies anywhere.  *See Mobil Oil Corp. v. EPA*, 35 F.3d 579, 584 (D.C. Cir. 1994) (effect of a court vacatur order is to "annul," "render[ ] void," and "cancel or rescind" agency decision).

That principle applies here: the Court vacated the Rule, meaning that it no longer exists.  So too, the District of New Mexico vacated the Rule.  *Navajo Nation*, 2021 WL 4430466, at *5.  Given these rulings, the Agencies are no longer applying the Rule.  Multiple courts have thus concluded that any remaining challenges to the Rule are moot. *See* ECF No. 105 at 11 (collecting cases).[6]

---

[5] The Supreme Court has repeatedly reaffirmed district court decisions vacating nationwide rules.  *See, e.g.*, *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 486 (2001) (affirming in part the lower court's vacatur of air pollution regulations); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133, 161 (2000) (affirming lower court's vacatur of tobacco regulations); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1916 (2020) (affirming lower court's vacatur of rescission of immigration relief program).

[6] There is nothing "irreconcilable" between the Court's order and prior litigation over the 2015 Clean Water Act Rule.  ECF No. 105 at 11.  The courts did not vacate that rule because the agencies intended to fix it and leaving it in place would protect the environment.  *See Texas v. U.S. EPA*, 389 F. Supp. 3d 497, 506 (S.D. Tex. 2019); *Georgia v. Wheeler*, 418 F. Supp. 3d 1336, 1382 (S.D. Ga. 2019).  The situation here is the polar opposite.  *See Pascua Yaqui Tribe*, 2021 WL 3855977, at *4-6.

-13-

Furthermore, the Court set aside the Rule because it was causing serious, irreparable environmental harm.  Once a rule begins to be applied, the "egg has been scrambled" with often irreversible effects. *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002).  Leaving the Rule in place threatened to lock in years' worth of environmental harm to the Nation's waters, including disproportionate impacts to Native American tribes.  Due to those "significant, actual environmental harms," the Court vacated the Rule and reinstated the pre-2015 regulatory regime. *Pascua Yaqui*, 2021 WL 3855977, at *5.  Industry has not identified any error in the Court's equitable analysis.  It is unlikely to prevail in its appeal of the Court's decision to vacate and remand the Rule.

## B.   INDUSTRY FAILS TO SHOW IRREPARABLE HARM.

Irreparable harm stands as the "bedrock requirement" of a stay pending appeal. *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (per curiam).  Industry, however, fails to identify any irreparable harm caused by returning to the status quo— that is, the pre-2015 regulatory regime "familiar to the Agencies and industry alike." *Pascua Yaqui*, 2021 WL 3855977, at *5; *see Cal. by & through Becerra v. Azar*, 501 F. Supp. 3d 830, 843 (N.D. Cal. 2020) ("[V]acating the agency's action simply preserves a status quo that has existed since at least the early 1990's while the agency takes the time it needs to give proper consideration to the matter.").

In fact, Industry waited almost two months before seeking a stay—a delay that "undercut[s]" Industry's "claim of irreparable harm," implying a lack of urgency.  *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015).  Even though the Agencies have been applying the pre-2015 regulations for months now (and decades prior to that), Industry still fails to provide any "evidence of harms that *did* occur," or are about to occur,

-14-

because of the Court's order.  *Al Otro Lado*, 952 F.3d at 1007; *see also Burke v. Coggins*, 521 F. Supp. 3d. 31, 44 (D.D.C. 2021) ("[R]eturn to the status quo causes little or no disruption.").

Industry first complains about the general "uncertainty" regarding the extent of Clean Water Act jurisdiction, claiming that this may "delay economic growth."  ECF No. 105 at 12.  But the Court already rejected that general concern as a basis for remand without vacatur.  *Pascua Yaqui*, 2021 WL 3855977, at *5.  Industry cannot recycle the same inadequate argument to obtain a stay and reverse the Court's ruling.  If anything, Industry's concerns cut *against* a stay given that the Agencies are working to repeal the Rule and return to the pre-2015 regulatory regime—precisely what is in place now.[7]

Industry's alleged harms stem from the fact that businesses can no longer get a free pass under the Rule to fill, dig up, and/or pollute waterbodies with no oversight.  But Industry has "no inherent right to maximize revenues" by foregoing Clean Water Act compliance.  *N. Plains Res. Council v. U.S. Army Corps of Eng'rs*, 460 F. Supp. 3d 1030, 1047 (D. Mont. 2020).  While Industry complains about the costs of "obtain[ing] federal permits," ECF No. 105 at 12, such ordinary compliance costs "do not rise to the level of irreparable harm."  *N. Plains Res. Council*, 460 F. Supp. 3d at 1047.  Rather, the Ninth Circuit has consistently held that "monetary injury is not normally considered irreparable," which applies here given Industry's failure to identify a threat other than the additional cost of permitting projects.  *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980); *see also Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980) ("[I]njury resulting from attempted

---

[7] Industry's professed concerns about "uncertainty" run headlong into its apparent desire for some kind of inconsistent vacatur of a nationwide rule (without discussing how that is supposed to work) that would have one set of rules apply in some places (*i.e.*, the argument that vacatur apply only to where the Tribes are affected by the Rule) and another set of rules in other places.  Industry's concerns regarding uncertainty ring hollow given their arguments elsewhere.

compliance with government regulation ordinarily is not irreparable harm").  At most,
Industry raises vague concerns about "potential disruption" and "delay[ed] economic
growth" of complying with the Clean Water Act, none of which constitute irreparable
harm.  *See* ECF No. 105 at 12 (citing Trussell Decl. ¶¶11-13, ECF No. 81-1).[8]

The fact remains that Industry can obtain jurisdictional determinations under the
pre-2015 regulations and has done so for decades.  Its declarations repeatedly explain
how developers have the resources, including "environmental consultant[s]," to "obtain
the approved jurisdiction determinations and necessary approvals" to comply with the
Clean Water Act.  *See, e.g.,* Mains Decl. ¶¶15-18, McCulley Decl. ¶¶7-8, ECF No. 101-1.
Industry actually "strongly encourage[d]" the Trump Administration to return to the pre-
2015 regulations.[9]  The Court's Order did just that, providing Industry with a workable
framework for complying with the Clean Water Act while ensuring ensure against "the
possibility of serious environmental harm" posed by the Navigable Waters Rule.  *Pascua
Yaqui Tribe*, 2021 WL 3855977, at *5.  Industry has failed to demonstrate any error in
this reasonable and justified outcome.

---

[8] The vast majority of Industry's alleged harms are not relevant as they involve
speculation about harms due to reinstating the 2015 Rule.  *See, e.g.*, ECF No. 81-1 ¶13
(raising concerns about reinstatement of 2015 Rule); Parrish Decl. ¶¶24-46, ECF No. 91-
1 (same).  Industry also discusses disruptions to third parties, such as the Arizona
Department of Environmental Quality, but that provides an even weaker basis for
"irreparable harm," which turns on "whether the *applicant* will be irreparably injured
absent a stay." *Nken*, 556 U.S. at 426 (emphasis added).
[9] *See, e.g.,* National Mining Association, Comments on Recodification of Pre-Existing
Rules at 1 (Sept. 27, 2017), https://www.regulations.gov/document/EPA-HQ-OW-2017-
0203-12078; Arizona Farm Bureau Federation, Comments on the Proposed
Recodification at 2 (Sept. 27, 2017) ("recodify the previous statutory WOTUS
definition"), https://www.regulations.gov/document/EPA-HQ-OW-2017-0203-9827.

1

2

**C.     THE BALANCE OF HARMS AND PUBLIC INTEREST WEIGH HEAVILY AGAINST A STAY.**

3

4

Industry's failure to satisfy the likely-to-succeed and irreparable-harm requirements relieves the Court from needing to address the final two factors.  *See Leiva-*

5

*Perez*, 640 F.3d at 965.  Even so, "the balance of equities and public interest tip sharply"

6

in the Tribes' favor due to the severe, irreversible environmental harms caused by the

7

Rule.  *Al Otro Lado*, 952 F.3d at 1015; *see also Pollinator Stewardship*, 806 F.3d at 532

8

(vacating a challenged rule where leaving the rule in place "risks more potential environmental harm than vacating it").

9

10

The Tribes and Agencies provided extensive evidence demonstrating that the Rule "would risk serious environmental harm."  *Pascua Yaqui Tribe*, 2021 WL 3855977, at

11

*5.  These harms are not based on "speculation," contrary to Industry's dismissive

12

assertions.  ECF No. 105 at 15.  These harms are based on concrete actions taken by the

13

Agencies under the Rule.  For example, the Agencies relied on the Rule to abruptly

14

eliminate Clean Water Act for *at least* 333 projects nationwide. ECF Nos. 72-1 & 72-2

15

¶15.  That figure is only the tip of the iceberg—the Agencies identified thousands of waters excluded from the Clean Water Act under the Rule, including every single

16

ephemeral stream in the desert Southwest.  *Pascua Yaqui*, 2021 WL 3855977, at *5.  The

17

Rosemont Mine site is a concrete example of how the Corps fast-tracked a negative

18

jurisdictional determination under the Rule, threatening severe harm to the Tohono

19

O'odham Nation and Pascua Yaqui Tribe, who have relied on the sites' life-giving waters

20

for thousands of years.  Pls.' Reply/Resp. Supp. Mot. Summ. J. at 51-52, ECF No. 90;

21

Nunez Decl. Supp. Opp'n Abeyance ¶¶8–11, ECF No. 26-1; *see also Navajo Nation*, 2021 WL 4430466, at *3 (discussing "actual environmental harms" caused by Rule).

22

Industry cannot deny these harms based on the same arguments already rejected

23

by the Court.  First, Industry claims with little foundation that water features excluded by

24

the Rule could nonetheless be regulated under the Clean Water Act as point sources.

25

26

ECF No. 105 at 15.  That is disingenuous—the Rule removes federal regulatory protections that are key to implementing the Act.  *See* ECF No. 90 at 14.  Second, Industry argues that States could use their regulatory authority to regulate water features excluded from the Clean Water Act by the Rule.  ECF No. 105 at 15.  But the record proved the exact opposite: states *weakened* their own clean water protections in response to the Rule, further exacerbating the regulatory void created by the Navigable Waters Rule.  *See* EPA & Corps, Mem. Record 4 (June 8, 2021), ECF No. 87-2.[10]  As a result, EPA identified specific projects proceeding "without any regulation or mitigation from federal, state, or tribal agencies."  ECF Nos. 72-1 & 72-2 ¶18.  Industry's declarations prove the point: businesses were hoping to proceed without any mitigation based on the fact-free assumption that the Clean Water Act no longer applied.  *See, e.g.*, Mains Decl. ¶¶17-18, ECF No. 105-1.

The public interest also weighs heavily against a stay.  Beyond grave environmental harm, a stay would require the Agencies to implement a rule that admittedly fails to ensure compliance with the overarching purpose of the Clean Water Act: "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  ECF Nos. 72-1 & 72-2 ¶¶ 11-12 (quoting 33 U.S.C. § 1251(a)).  That outcome would lead to suspect and possibly unsupportable regulatory decisions with serious environmental consequences—an outcome contrary to the public interest.  *See N. Plains Res. Council*, 460 F. Supp. 3d at 1049 (denying stay because the "most basic premise of Congress' environmental laws" is that "the public interest is best served when the law is followed." (citation omitted)).

---

[10] For example, Arizona passed legislation excluding ephemeral streams, except for a few reaches along the state's major rivers. H.R. 2691, 55th Leg., 1st Session (Az. 2021) at p. 23, lines 14-15.3 (available at https://www.azleg.gov/legtext/55leg/1R/laws/0325.pdf). The legislation highlights the regulatory void created by the Navigable Waters Rule for thousands of miles of ephemeral streams in Arizona.

By contrast, the Court's ruling preserves the status quo by returning to the pre-2015 regulatory regime while Agencies undertake a new rulemaking.  This "familiar, if imperfect" regime governed the definition of waters of the United States for decades.  *In re EPA*, 803 F.3d 804, 808 (6th Cir. 2015), vacated sub nom. *In re U.S. Dep't of Def.*, 713 F. App'x 489 (6th Cir. 2018).  Businesses can obtain jurisdictional determinations under that framework—as Industry acknowledges—and are actively participating in the new rulemaking process.  Given "the lack of harm to Industry from maintaining the *status quo* pending resolution of this appeal," and the serious risk of harm to the Tribes and environment posed by the Rule, "the public interest favors preserving the *status* quo" and denying the requested stay.  *Doe #1 v. Trump*, 957 F.3d 1050, 1069 (9th Cir. 2020).

## CONCLUSION

For the foregoing reasons, the Tribes respectfully request that the Court deny Industry's motion for a stay pending appeal.

DATED: November 15, 2021

s/ Stuart C. Gillespie
Stuart C. Gillespie, CO # 42861
Alexandra Schluntz (MA # 704320)
EARTHJUSTICE
633 17th Street, Suite 1600
Denver, CO 80202
(303) 996-9616
sgillespie@earthjustice.org
aschluntz@eartjustice.org

Janette K. Brimmer, WSBA # 41271
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA  98104
(206) 343-7340
jbrimmer@earthjustice.org

*Counsel for Pascua Yaqui Tribe,*
*Quinault Indian Nation, Fond du Lac*
*Band of Lake Superior Chippewa,*
*Menominee Indian Tribe of Wisconsin,*

*Tohono O'odham Nation, and Bad River*
*Band of Lake Superior Chippewa*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November, 2021, I electronically filed the foregoing **TRIBES' OPPOSITION TO BUSINESS-INTERVENORS' MOTION FOR A STAY PENDING APPEAL** with the Clerk of the District Court using the CM/ECF system, which will send notice of this filing by e-mail to all counsel of record.

| | |
|---|---|
| Daniel Pinkston, CO #11423<br>999 18th Street,<br>South Terrace, Suite 370,<br>Denver, CO 80202<br>daniel.pinkston@usdoj.gov<br>Phone: (303) 844-1804<br>Facsimile: (303) 844-1350<br><br>*Attorney for Defendants* | Bradley J. Glass, Ariz. Bar. #022463<br>Stuart S. Kimball, Ariz. Bar. #026681<br>GALLAGHER & KENNEDY, P.A.<br>2575 East Camelback Road<br>Phoenix, Arizona  85016-9225<br>brad.glass@gknet.com<br>stuart.kimball@gknet.com<br>Phone: (602) 530-8000<br>Facsimile: (602) 530-8500<br><br>*Attorneys for Intervenors-Defendants* |
| James M. Manley, Ariz. Bar. #031820<br>PACIFIC LEGAL FOUNDATION<br>3241 E Shea Boulevard, # 108<br>Phoenix, Arizona 85028<br>jmanley@pacificlegal.org<br>Telephone: (916) 419-7111<br>Facsimile: (916) 419-7747<br><br>*Attorneys for Defendant-Intervenors*<br>*Chantell and Michael Sackett* | Anthony L. François, Cal. Bar. #184100*<br>Charles T. Yates, Cal. Bar # 327704*<br>PACIFIC LEGAL FOUNDATION<br>930 G Street<br>Sacramento, California 95814<br>afrancois@pacificlegal.org<br>cyates@pacificlegal.org<br>Telephone: (916) 419-7111<br>Facsimile: (916) 419-7747<br><br>*Attorneys for Defendant-Intervenors*<br>*Chantell and Michael Sackett* |

s/ Stuart C. Gillespie