D. Lee Decker (Bar No. 013202)
Bradley J. Glass (Bar No. 022463)
Stuart S. Kimball (Bar No. 026681)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone:   (602) 530-8000
Facsimile:   (602) 530-8500
dld@gknet.com
brad.glass@gknet.com
stuart.kimball@gknet.com

Attorneys for Business-Intervenors-Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| PASQUA YAQUI TRIBE, *ET AL.*,<br><br>                 Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *ET AL.*,<br><br>                 Defendants,<br><br>and<br><br>ARIZONA ROCK PRODUCTS ASSOCIATION, *ET AL.*,<br><br>                 Business-Intervenors-Defendants,<br><br>and<br><br>CHANTELL SACKETT AND MICHAEL SACKETT,<br><br>                 Intervenors-Defendants. | No. 4:20-cv-00266-TUC-RM<br><br>**BUSINESS-INTERVENORS-DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL**<br><br>(Assigned to the Honorable Rosemary Márquez) |

Business-Intervenors-Defendants ("Business-Intervenors") respectfully submit their Reply in Support of their Motion for Stay the Court's Order dated August 30, 2021 ("Order") (Doc. 99) pending their appeal to the Ninth Circuit of the nationwide vacatur of the Navigable Waters Protection Rule ("NWPR") (85 Fed. Reg. 22,250 (Apr. 21, 2020)).

In resolving the stay motion, this Court is required to consider whether (1) Business-Intervenors have presented a substantial question that they will prevail on the appeal and (2) the harms to the parties if the stay is denied outweigh the harms if the stay is granted. Contrary to the arguments by Plaintiffs (Doc. 111) and the Agencies (Doc. 112), Business-Intervenors' appeal is about the nationwide vacatur of the NWPR, not the decision to remand or the merits of the NWPR. Business-Intervenors have explained that vacatur is improper absent a determination of the merits, and the Agencies candidly concede it is the normal rule that "in a voluntary remand context where the agency does not confess error, vacatur should be ordered only after the court has resolved the merits and that the scope of a vacatur order should be limited to providing relief to the parties in the proceeding." (Doc. 112, p. 8). There is no justification for departure from this rule in this case. Indeed, the only district court within the Ninth Circuit to consider the merits of the NWPR refused to preliminarily enjoin it (*California v. Wheeler*, 467 F. Supp. 3d 864 (N.D. Cal. 2020)). That same court recently concluded that remand of the NWPR to the Agencies *without vacatur* was proper (*California v. Regan*, No. 3:20-cv-03005-RS, Doc. 271 (N.D. Cal. Sept. 16, 2021)) because "there has been no evaluation of the merits—or concession by defendants—that would support a finding that the rule should be vacated." That conclusion is consistent with the statutory limits on a federal court's ability to "set aside" agency action (*see* 5 U.S.C. § 706(2)) and applies equally here.

This Court did not consider the merits of the NWPR and the Agencies have not conceded that the rule is unlawful and should be vacated. Instead, the Agencies have asserted only that they have identified some "concerns" with the rule and have requested remand to vest them with the authority to engage in rulemaking in line with the new priorities of the current Administration. But those circumstances do not warrant vacatur

of the NWPR pending that rulemaking, much less on a nationwide basis—relief that the Agencies never even requested. Nationwide vacatur is further inappropriate because it is not necessary to remedy any perceived harms to the particular Plaintiffs who brought this action. Under Ninth Circuit precedent and the statutory limitations on a federal court's ability to "set aside" agency action, neither of which were meaningfully addressed in the responses to the stay motion filed by Plaintiffs and the Agencies, Business-Intervenors are likely to succeed on their challenge to the vacatur of the NWPR.

Weighed in conjunction with the likelihood of success on the merits, Business-Intervenors have established that they will be irreparably injured absent a stay because specific projects, including many current and future infrastructure projects supported by the Biden Administration, will either be substantially delayed or eliminated due to the regulatory chaos created by the Order. In sharp contrast, Plaintiffs have offered nothing more than speculation that they would suffer undefined harm from leaving the NWPR in place, despite the fact that the NWPR has been in effect for more than a year. Further, the environmental harms alleged in the extra-record Agency Declarations (Docs. 72-1 and 72-2) are merely the unsubstantiated, policy-driven positions of a new federal administration that are not a substitute for evidence. In their response to the stay motion, the Agencies do not claim that any harm will occur from continued operation of the NWPR, only equivocating that they "shared some of Plaintiffs' concerns." (Doc. 112, p. 16).

Rather than focus on the merits of the vacatur, Plaintiffs and the Agencies concentrate on what they argue is the absence of appellate jurisdiction over the appeal. But the issue of appellate jurisdiction is a matter for the appellate court to decide on jurisdictional briefing, not an issue before this Court on the Motion for Stay. In any case, the Order is appealable under 28 U.S.C. § 1291 because it involves a separable legal issue (nationwide vacatur of the NWPR); it forces the Agencies to apply the pre-2015 regulatory regime, which the Supreme Court has already found to be erroneous in two separate decisions (*Solid Waste Agency of Northern Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159 (2001) ("*SWANCC*"); *Rapanos v. United States*, 547 U.S. 715

(2006)); and review of the decision to issue a nationwide vacatur of the NWPR would be foreclosed absent appeal now to the Ninth Circuit Court of Appeals.[1]

# I. ARGUMENT

### A. The Agencies acknowledge and support the basis for Business-Intervenors' appeal.

While the Agencies attempt to dance a thin line in arguing against Business-Intervenors' Motion for Stay, they acknowledge that they "generally agree with the proposition that, in a voluntary remand context where the agency does not confess error, vacatur should be ordered only after the court has resolved the merits and that the scope of a vacatur order should be limited to providing relief to the parties in the proceedings." (Doc. 112, p. 8). These statements support Business-Intervenors' appeal and Motion for Stay. The Agencies, without confessing error, moved for voluntary remand without vacatur of the NWPR. Although no party moved for vacatur, this Court granted relief beyond that requested and vacated the NWPR nationwide without reaching the merits of Plaintiffs' challenges to the NWPR or limiting the vacatur to the parties in the proceeding.

### B. Business-Intervenors are likely to succeed on the merits.

The Ninth Circuit has explained that a movant for a stay need not show that it is more likely than not to succeed on the merits, but must make a "substantial case for relief

---

[1] The Agencies complain that Business-Intervenors did not ask the Court to direct entry of a final judgment pursuant to Fed. R. Civ. P. 54(b). (Doc. 112, pp. 10-11). Business-Intervenors believe that the Order is an appealable final judgment; however, if the Court disagrees, they request that the Court enter final judgment pursuant to Rule 54(b) because there is no just reason to delay judgment or appeal of the vacatur decision. The Ninth Circuit has noted that the circumstances in which the entry of a Rule 54(b) certification is proper are "not well defined in our law." *Pakootas v. Teck Cominco Metals Ltd.*, 905 F.3d 565, 574 (9th Cir. 2018). That notwithstanding, the court explained that it uses a "pragmatic approach" that "must take into account judicial administrative interests as well as the equities involved." *Id.* at 575, 576 (internal quotation marks omitted). Here, the question of vacatur upon remand is a separable issue that rests on a distinct set of facts that is separable from other issues not presented by the appeal, such as whether voluntary remand is proper or the merits of Plaintiffs' challenges to the NWPR. Further, the equities support certifying the order under Rule 54(b) because otherwise the Business-Intervenors will never be able to appeal the vacatur decision and they will be harmed by the vacatur.

4

on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). Business-Intervenors have demonstrated more than a substantial case for relief that nationwide vacatur should not have been entered against the NWPR. After entry of the Order, other courts within this Circuit have considered the same general arguments raised by Plaintiffs and concluded that the NWPR should *not* be vacated without evaluating the merits. *See California v. Regan*, 2021 WL 4221583 at *1 (N.D. Cal. Sept. 16, 2021); *Waterkeeper Alliance, Inc. v. EPA*, No. 18-cv-03521-RS, Doc. 125 (N.D. Cal. Sept. 16, 2021).

Further, courts outside the Ninth Circuit have concluded that agency rules should not be vacated absent a full evaluation of the merits, including at least two decisions relating to review of the NWPR that were decided after this Court's Order. *See, e.g.*, *Pueblo of Laguna v. Regan*, 2021 WL 4290179 at *2 (D.N.M. Sept. 21, 2021) (agreeing with the line of reasoning expressed in *Waterkeeper Alliance* and *California v. Regan* regarding vacatur of the NWPR); *Conservation Law Foundation v. EPA*, No. 1:20-cv-10820, Doc. No. 122 (D.Mass. Sept. 1, 2021) (finding that "the most prudent step to resolve this case in this court is to grant the request for voluntary remand and dismiss this case without independently vacating the challenged Rule"); *see also Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993); *United Mine Workers v. Dole*, 870 F.2d 662, 673-74 (D.C. Cir. 1989); *Nat'l Parks Conservation Ass'n v. Salazar*, 660 F.Supp.2d 3, 5 (D.D.C. 2009); *accord Maine v. Wheeler*, 2018 WL 6304402, at *1 (D.Me., Dec. 3, 2018).

Central to those decisions is the plain statutory language of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), providing federal courts with jurisdiction to review the final actions of federal agencies and mandating that a reviewing court may "set aside" or vacate agency action *only* when the reviewing court has considered the whole record, the arguments of the parties, and whether any identified errors are prejudicial. Here, the Court did not review the whole administrative record or consider the arguments of all of the parties and therefore the APA does not permit vacatur. And, equity cannot be invoked to evade limits imposed by law. *See Owner-Operator Indep. Drivers Ass'n, Inc.*

*v. Swift Transp. Co. (AZ),* 632 F.3d 1111, 1121 (9th Cir. 2011) ("it 'is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.'").

For these reasons and those outlined in Business-Intervenors' Memorandum in Support of its Motion for Stay Pending Appeal (Doc. 105), Business-Intervenors have demonstrated a substantial case for relief and therefore a likelihood of success on the merits of its appeal challenging the nationwide vacatur of the NWPR.

Plaintiffs' citation (Doc. 111, pp. 6-7) to district court decisions within the Ninth Circuit suggesting that courts have authority to vacate agency action without first making a determination on the merits does not detract from the fact that Business-Intervenors have demonstrated a substantial case on the merits. These other cases stand only for the proposition that there is a split in opinion on the issue among district courts in the Ninth Circuit. But the rationale in the cited cases is questionable and Business-Intervenors' appeal is supported by the plain text of the APA. For example, while recognizing that the Ninth Circuit had not ruled on the ability of courts to vacate agency rules absent a full merits determination, the court in *In re Clean Water Act Rulemaking*, 2021 WL 4924844 (N.D. Cal. Oct. 21, 2021), stated that the Ninth Circuit's "holding that even a flawed rule need not be vacated supports the corollary proposition that a flaw need not be conclusively established to vacate a rule." *Id.* at *4. That twisted reasoning is irreconcilable with foundational principles of administrative law.

Plaintiffs (Doc. 111, p. 8) also argue that the application of the first *Allied-Signal* factor (*i.e.*, a determination of the severity of the agency's errors) does not require a merits determination. *See Allied–Signal*, 988 F.2d at 150–51. However, assessment of error can logically take place only after a court has concluded that legal error has occurred. *See id.* (applying the two-factor test after determining that the agency acted without "reasoned decision-making"). There is good reason for this well-established approach. Vacating a rule prior to adjudicating the merits affords plaintiffs (and federal defendants under a new administration) complete relief without ever proving the merits of their case, while also

6

1    circumventing the requirements of the APA.  *See Nat'l Parks Conservation Ass 'n v.*
2    *Salazar*, 660 F. Supp. 2d 3, 5 (D.D.C. 2009) ("[G]ranting vacatur here would allow the
3    Federal defendants to do what they cannot do under the APA, repeal a rule without public
4    notice and comment, without judicial consideration of the merits."); *accord Maine v.*
5    *Wheeler*, 2018 WL 6304402, at *3 (D.Me. Dec. 3, 2018); *California v. Regan*, 2021 WL
6    4221583, at *1 (N.D. Cal. Sept. 16, 2021).

7    Contrary to Plaintiffs' characterization of this Court's Order (Doc. 111, pp. 9-11),
8    assessing error requires consideration of all information before the Court.  In this case,
9    there was no consideration or discussion of the substantial briefing on the merits
10   submitted by Business-Intervenors (Docs. 79-81)[2], which contradicted each of the
11   "fundamental, substantive flaws" alleged by Plaintiffs and the extra-record Agency
12   Declarations.  Simply referencing or citing to allegations of error or policy disagreements
13   asserted by one side of an argument is not sufficient to meet the *Allied-Signal* test—
14   especially when substantive merits briefing from the other side in front of the Court
15   demonstrated the flaws of the Plaintiffs' arguments; confirmed that the NWPR was a
16   lawful interpretation of the CWA that complied with statutory language and Supreme
17   Court precedent; and demonstrated the NWPR was a reasonable and permissible exercise
18   of the Agencies' discretion.  If all that is required to meet the *Allied-Signal* test are
19   allegations or concerns by one side that an agency rule is somehow improper, the test
20   becomes meaningless because there has been no real assessment of legal error.

21   **C.    Business-Intervenors will be irreparably injured absent a stay.**

22   Business-Intervenors have provided the Court with concrete, specific examples of
23   how the Court's Order and vacatur have irreparably harmed their business interests and
24   property rights.  The economic and property harms caused by vacatur of the NWPR are

---

[2] Plaintiffs incorrectly claim that Business-Intervenors inaccurately stated that the parties were "still briefing" the merits in its Memorandum in Support of Motion for Stay Pending Appeal (Doc. 105, p. 8).  When this Court issued its Order on August 30, 2021, Business-Intervenors were in the process of preparing their reply in support of their cross-motion for summary judgment, which was not due until Oct. 5, 2021 under this Court's Scheduling Order (Doc. 24) that was never adjusted despite Plaintiffs' request to do so.

outlined in detail in six declarations (Doc. 105, Exhibits G-L) demonstrating precisely why the Court should enter a stay in this matter and alleviate the economic harm, regulatory uncertainty, and deprivation of rights under the APA that have been caused by the Order. Plaintiffs and Agencies attempt to minimize these harms by casting them as pecuniary. But the severe economic harm identified in the six declarations is irreparable. *See Phillip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010) (Scalia, J., in chambers) (granting stay: "If expenditures cannot be recouped, the resulting loss may be irreparable); *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015) (finding purely economic harms constituted irreparable harm because plaintiff would be barred from recovering monetary damages from the defendant due to tribal sovereign immunity). In addition to the economic harm, vacatur of the NWPR, especially without the Court reaching the merits and finding the NWPR unlawful, also has caused substantial uncertainty and has raised numerous questions with no clear answers for the regulated community regarding their property rights and their business interests. In light of these economic and property harms and regulatory uncertainty, Business-Intervenors have demonstrated that the Court should stay the Order pending their appeal.

In addition to these compelling harms, Business-Intervenors were irreparably harmed by the deprivation of their statutory rights under the APA. By vacating the NWPR, the Order permitted Plaintiffs and the Agencies to do an end-run around the statutory requirements and protections that apply to challenges to rules that are enacted after notice and comment. The APA requires the Agencies to provide public notice and opportunity to comment before enacting, amending, or repealing a rule. 5 U.S.C. §§ 553(b), 551(5); *Consumer Energy Council of Am. v. FERC,* 673 F.2d 425, 446 (D.C. Cir. 1982) ("[T]he APA expressly contemplates that notice and an opportunity to comment will be provided prior to agency decisions to repeal a rule."). These rules protect interested parties, especially the regulated community, which relies on the rules to govern how they operate their businesses. Vacatur without a determination on the merits bypasses these key features of the APA and has caused irreparable injury to Business-

8

Intervenors. *See Invenergy Renewables LLC v. United States*, 476 F. Supp. 3d 1323, 1353 (Ct. Int'l Trade 2020) ("A procedural violation [of the APA] can give rise to irreparable harm justifying injunctive relief because lack of process cannot be remedied with monetary damages or post-hoc relief by a court"); *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 17 (D.D.C. 2009) (finding irreparable harm based on violations of the APA's notice and comment provisions because "the damage done by [the] violation of the APA cannot be fully cured by later remedial action."). These harms warrant a stay.

### D. **Plaintiffs will not be substantially injured by a stay.**

Neither Plaintiffs nor the Agencies have provided any evidence of how the NWPR has caused or will cause them harm. In their Response, Plaintiffs continue to speculate about hypothetical harm and rely on the statistics about federal regulatory jurisdiction under the NWPR cited in the Agency Declarations.[3] The only concrete example of harm Plaintiffs try to provide is a reference to the Rosemont Project, which Plaintiffs know is in regulatory limbo. Various entities, including Plaintiffs the Tohono O'odham Nation and the Pasqua Yaqui Tribe, have sued the U.S. Forest Service and the U.S. Fish and Wildlife Service in this district court, challenging the key authorizations for the Rosemont Project. In 2019, Judge Soto ruled in favor of the plaintiffs, and vacated and remanded the U.S. Forest Service's Record of Decision for the Project. *Ctr. for Bio. Diversity v. U.S. Fish and Wildlife Serv.*, 409 F. Supp. 3d 738 (D.Ariz. 2019) (appeals pending). In 2020, Judge Soto also ruled in the plaintiffs' favor on challenges to the U.S. Fish and Wildlife Service's biological opinion for the Project, and vacated and remanded the biological opinion as to those issues. *Ctr. for Bio. Diversity v. U.S. Fish and Wildlife Serv.*, 441 F. Supp. 3d 843 (D.Ariz. 2020) (appeal pending). As result of these decisions, it is uncertain when the Rosemont Project will proceed and how the Project might impact Plaintiffs if it

---

[3] In a recent Congressional hearing, Assistant Administrator Fox was questioned by Senator Joni Ernst regarding the specific harms allegedly caused by the NWPR. She did not provide a single example of harm; again referred to the Agencies' data and statistics, which do not identify any specific harms; and referenced this Court's Order when explaining the Agencies' approach to repealing the NWPR. The testimony is available at https://www.youtube.com/watch?v=zkgyrHuErV8&t=25s (last visited Nov. 22, 2021).

does. There is certainly no imminent threat of irreparable harm to the Plaintiffs associated with the Project sufficient to outweigh the many concrete harms set forth by Business-Intervenors. Plaintiffs' failure to provide any evidence or concrete examples of the NWPR's harm weighs in favor of staying the Order pending appeal.

### E. The public interest supports a stay.

A stay advances the public interest. It is in the public interest to consider the merits of challenges to a rule issued after notice and comment before vacating the rule and undoing the substantial resources and thousands of hours of work that the Agencies, States, and interested parties put into promulgating and litigating that rule. It also is in the public interest that the procedures of the APA be observed, including an opportunity for public comment on any proposed repeal after a full, fair, and complete judicial review of the merits. Furthermore, it is not in the public interest to change the definition of WOTUS from one that provides regulatory certainty to a complicated approach that hinges on a very subjective significant nexus evaluation. Finally, both Plaintiffs and the Agencies argue that returning to the pre-2015 regulatory regime and status quo is in the public's interest. As noted above, however, the U.S. Supreme Court has already found the pre-2015 regulatory regime to be erroneous in two separate decisions (*SWANCC*, 531 U.S. 159 (2001); *Rapanos v. United States*, 547 U.S. 715 (2006)). It does not serve the public to go back to that convoluted regime marred by serious constitutional failings. For these reasons, staying the Order pending appeal is in the public interest.

### F. The Order is a "final decision" for purposes of 28 U.S.C. § 1291

Although this Court does not have authority to determine the scope of appellate jurisdiction, the arguments by both Plaintiffs and the Agencies that the Order vacating the NWPR is not a final decision for purposes of 28 U.S.C. § 1291 are not persuasive. It is important to recognize that Business-Intervenors are not appealing the remand of the NWPR, they are appealing the decision by the Court to vacate the NWPR nationwide without reaching the merits. Consequently, the cases cited by Plaintiffs and the Agencies

for the proposition that remand orders are not generally "final" for purposes of 28 U.S.C. § 1291 are inapposite to Business-Intervenors' appeal.

Further, the cases cited by both Plaintiffs and the Agencies clarify that even a remand order may be considered final for appellate purposes where "(1) the district court conclusively resolves a separable legal issue, (2) the remand order forces the agency to apply a potentially erroneous rule which may result in a wasted proceeding, and (3) review would, as a practical matter, be foreclosed if an immediate appeal were unavailable." *Alsea Valley Alliance v. Department of Commerce*, 358 F.3d 1181, 1184 (9th Cir. 2004) (quoting *Collord v. United States Dep't of the Interior*, 154 F.3d 933, 935 (9th Cir.1998)); *Crow Indian Tribe v. United States*, 965 F.3d 662, 676 (9th Cir. 2020). Although the above factors "are not 'strict prerequisites,' but merely 'considerations'" (*United States v. United States Board of Water Commissioners,* 893 F.3d 578, 594 (9th Cir. 2018) (quoting *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1175 (9th Cir. 2011)), proper application of the above factors to the Order confirms that it is a final decision for purposes of 28 U.S.C. § 1291.

First, the Order resulted from the Agencies' motion for voluntary remand without vacatur. The Agencies did not admit or concede any legal error as part of their request for voluntary remand. However, contrary to the Agencies' suggestion (Doc 112, p. 12), the Order went beyond this request; accepted allegations from Plaintiffs and the extra-record Agency Declarations as true without any evaluation or assessment or consideration of contrary arguments; and vacated the NWPR. Nationwide vacatur of the NWPR, with its drastic impacts to Business-Intervenors and other regulated parties across the nation, is a conclusively determined and separable legal issue apart from the order to remand the NWPR back to the Agencies.

Second, the Order has the effect of forcing the Agencies to reinstate the pre-2015 regulatory regime, a regime which the Supreme Court has found to be erroneous. *See, e.g., SWANCC,* 531 U.S. 159 (2001) (rejecting the Corps' assertion of jurisdiction over nonnavigable, isolated, intrastate waters under the pre-2015 regulatory definition of

11

"waters of the United States"); *Rapanos*, 547 U.S. 715 (2006) (rejecting the Corps' assertion of CWA jurisdiction under the pre-2015 regulatory definition of "waters of the United States" over four Michigan wetlands, located near ditches or man-made drains that eventually emptied into navigable waters over twenty miles away). The Agencies attempt to sidestep the result of the Order by arguing that it did not direct "the Agencies to take any particular actions on remand" (Doc. 112, p. 12). However, the Order vacated the NWPR, which had the effect of forcing the Agencies to revert back to the erroneous pre-2015 regulatory regime. The Agencies were left with no other choice.

Third, without the ability to appeal the vacatur of the NWPR, Business-Intervenors will be left without any legal recourse to challenge vacatur of the NWPR and the scope of the vacatur especially because the Agencies have refused to defend the NWPR as a result of the change from the Trump Administration to the Biden Administration. The suggestion that legal recourse is provided by the ability to participate in the Agencies' planned new rulemaking process is wrong. The new rulemaking process has nothing to do with the ability of a court to vacate a rule absent a consideration of the merits and replace that vacated rule with a regulatory regime already deemed to be erroneous by the Supreme Court.

In summary, the appeal issues raised by the Business-Intervenors are final for purposes of 28 U.S.C. § 1291 because they have been "conclusively determined by the [Court] and cannot be taken into account in the [Agencies'] proceedings upon remand." *Crow Indian Tribe*, 965 F.3d at 670. In the alternative, and as discussed *supra* in Footnote 1, if there is any question that jurisdiction is not proper under 28 U.S.C. § 1291, Business-Intervenors request that this Court certify the Order as an immediately appealable final judgment under Rule 54(b). *See Pakootas*, 905 F.3d at 574-76.

### III.  **CONCLUSION**

For the foregoing reasons, Business-Intervenors request that the Court stay the Order pending its appeal to the Ninth Circuit.

RESPECTFULLY SUBMITTED this 22nd day of November, 2021.

GALLAGHER & KENNEDY, P.A.


By: */s/ Bradley J. Glass*
    D. Lee Decker
    Bradley J. Glass
    Stuart S. Kimball
    2575 East Camelback Road
    Phoenix, Arizona 85016-9225

Attorneys for Business-Intervenors-Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2021, I electronically transmitted the foregoing Reply in Support of Motion for Stay Pending Appeal to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

                     */s/ Bradley J. Glass*

8733826v1/21054-0011